**TARTER KRINSKY & DROGIN LLP**
*Proposed Attorneys for ERBO Properties LLC, Gold Mezz LLC, KOVA 521, LLC*
*Debtors and Debtors-in-Possession*
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
Scott S. Markowitz, Esq.
Alex Spizz, Esq.
Rocco A. Cavaliere, Esq.
smarkowitz@tarterkrinsky.com
aspizz@tarterkrinsky.com
rcavaliere@tarterkrinksy.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 11 |
| ERBO PROPERTIES LLC, | : | |
| | : | Case No.: 23-10210 (LGB) |
| Debtor. | : | |

| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 11 |
| KOVA 521, LLC, | : | |
| | : | Case No.: 23-10211 (LGB) |
| Debtor. | : | |

| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 11 |
| GOLD MEZZ LLC, | : | |
| | : | Case No.: 23-10212 (LGB) |
| Debtor. | : | |

**DECLARATION OF ERNO BODEK PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2 OF THE LOCAL BANKRUPTCY RULES OF THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

I, Erno Bodek, declare, pursuant to section 1746 of title 28 of the United States Code, that:

089652\1\170081827.v4

1. I am the managing member of Erbo Properties LLC (the "Fee Owner"), Gold Mezz LLC (the "Mezzanine Borrower") and KOVA 521, LLC ("KOVA") (collectively, the "Debtors"), each New York limited liability companies. The Fee Owner owns the real property known as and located at 541-545 West 21st Street, New York, NY (the "Property"). The Debtors intend to file voluntary chapter 11 petitions with the Clerk of this Court on or about February 13, 2023 (the "Petition Date"). I am duly authorized to make this declaration (the "Declaration") on behalf of the Debtors.

2. I am generally familiar with the Debtors' day to day operations, business, and financial affairs, and books and records. I am above eighteen years of age, and I am competent to testify.

3. I submit this Declaration in accordance with Rule 1007-2 of the Local Rules of this court (the "Local Bankruptcy Rules") to assist this court (the "Court") and parties in interest in understanding the circumstances that compelled the commencement of these chapter 11 cases, and in support of the Debtors' petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

4. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, all documents available to me and my discussions with other members of the Debtors' management team as well as representatives from the Debtors' development manager and construction manager and counsel. If called as a witness, I could and would testify competently to the facts set forth in this Declaration.

5. Parts I through IV of this Declaration provide an overview of the Debtors' business, events giving rise to the commencement of these chapter 11 cases, the Debtors' capital structure and the Debtor's game plan in these Chapter 11 cases. Part V sets forth the information required by Local Bankruptcy Rule 1007-2.

I.       **THE DEBTORS' BUSINESSES**

6.      As set forth above, the Fee Owner owns the Property. The Mezzanine Borrower and KOVA own the equity in the Fee Owner.

7.      The Fee Owner acquired the Property in the early 1980s. The Property was utilized primarily as storage space for many years. As the real estate market changed in the West Chelsea neighborhood of Manhattan and with the development of The High Line, the Fee Owner embarked on a project to redevelop the Property into a first-class modern office building.

8.      Because I had no experience in redeveloping commercial property in Manhattan, in October 2018, I entered into a contract with an entity known as HigherGround 541, LLC ("HigherGround") pursuant to which HigherGround was retained to oversee and implement all aspects of the redevelopment of the Property (the "Development Management Agreement").

9.      HigherGround assisted the Fee Owner in securing loans from G-4 18190, LLC ("G-4"), a well-known middle market construction lender. The total amount of loans were approximately $57,000,000.00 which were broken into an acquisition loan, a building loan and a project loan.

10.      HigherGround also recommended the Fee Owner retain Cauldwell Wingate Co., LLC ("Cauldwell") as the construction manager with respect to the project. Based upon HigherGround's recommendation, in June 2019, the Fee Owner entered into a standard form AIA agreement between owner and construction manager with Cauldwell (the "CMA Agreement").

11.      Construction commenced in or about July 2019. At such time, it was anticipated the redevelopment of the Property would be completed and the temporary certificate of occupancy would be obtained by the end of 2020. However, as set forth in more detail below, G-4 threatened to cease funding during the redevelopment phase unless I contributed additional equity monies or obtained additional debt financing.

## II. EVENTS LEADING TO THE CHAPTER 11 CASE

12. In 2021, G-4 started asserting the building loan was "out of balance" and threatened to cut off funding unless I contributed additional monies or borrowed additional monies. During this time, the Covid-19 pandemic caused substantial disruptions and delays in the New York City construction industry. This led to delays in completing the redevelopment of the Property. These delays increased the cost of the development as interest continued to accrue under the various loans, while hard and soft construction costs increased as a result of supply chain shortages. The Debtors believe they have valid claims against HigherGround for breach of the Development Management Agreement and potentially Cauldwell for breach of the CMA Agreement which resulted in cost overruns and delay damages.

13. In the summer of 2021, G-4 threatened to cease funding even though monies were still available under the building loan unless I contributed additional monies. I contributed approximately $1 million of additional equity monies to the project which required me to sell certain assets. Still, G-4 required additional monies as a condition of funding monies remaining in the building loan and I was introduced to a lender willing to make a mezzanine loan. In November 2021, two new entities were created, and the Debtors obtained a mezzanine loan from 541 West 21 SME LLC (the "Mezzanine Lender"). The Mezzanine Lender made a mezzanine loan secured by the membership interest in the newly created Mezzanine Borrower in the amount of $4.7 million (the "Mezzanine Loan"). Proceeds from the Mezzanine Loan were utilized primarily for interest payments to G-4 and to a lesser extent for the continued redevelopment of the Property.

14. The Debtors substantially completed the redevelopment of the Property in or about August 2022. However, G-4 again asserted the construction loan was "out of balance" and demanded the Debtors' equity owners contribute additional capital. I did not have the financial means to contribute additional capital and strongly disputed G-4's assertion the construction loan

was "out of balance". A stalemate ensued and G-4 improperly withheld funding even though there was availability under the building loan. Thus, without such funding and although the project was within weeks of obtaining a temporary certificate of occupancy from the City of New York Department of Buildings, work unfortunately stopped because, among other reasons, subcontractors were not receiving payments and Cauldwell and HigherGround essentially disengaged from the project.

15. Negotiations between the Debtors, G-4 and the Mezzanine Lender ensued, but were unsuccessful. In short, the Mezzanine Lender has made it clear it intends to take over the project depriving myself of substantial upside equity. As a result, the Mezzanine Lender as well as G-4 issued default letters and the Mezzanine Lender scheduled a UCC sale to foreclose on its collateral (KOVA's membership interest in Mezzanine Borrower) for January 16, 2023, which was postponed until February 14, 2023. Despite the Debtors' best efforts in attempting to reach a resolution, the Mezzanine Lender declined to postpone the February 14, 2023 UCC sale. As a result, in order to attempt to preserve the Debtors' equity in the Property and complete the construction, the Debtors elected to file these Chapter 11 cases.

III.    **PRE-PETITION CAPITAL STRUCTURE AND INDEBTEDNESS**

16. The Debtors are privately held limited liability companies. An organizational chart reflecting the corporate structure is annexed hereto as **Exhibit A**. G-4 holds a senior mortgage secured by the Property and is owed approximately $50.5 million.[1] The Mezzanine Lender is owed approximately $4.6 million and is secured by the membership interest in the Mezzanine Borrower. Aside from the monies owed to G-4 and the Mezzanine Lender, the Fee Owner owes a few million dollars either to Cauldwell or other contractors whom the Fee Owner

---

[1] G-4 asserts it is owed close to $57 million. The amount of G-4's claim is in dispute.

contracted with, directly. In addition, HigherGround asserts that it is owed monies under the Development Management Agreement which the Debtors dispute.

17. Although the Fee Owner has not obtained a recent formal appraisal of the Property, I understand, based upon broker opinion letters, the Property would have a stabilized value of at least $80 million.

### IV.   THE DEBTORS' GAME PLAN IN THE CHAPTER 11 CASES

18. As set forth above, the Debtors need monies to complete the redevelopment of the Property and obtain a temporary certificate of occupancy so the Property can be leased. To implement this, the Debtors intend to retain a new construction manager/general contractor which has recently toured the Property and reviewed the plans and the current status of the project. I have been advised the new construction manager believes a temporary certificate of occupancy can be obtained within three to six months at the cost of less than $500,000.00.

19. G-4 does not appear willing to lend the Debtors any additional monies to complete the project. As such, the Debtors have reached out to various companies which customarily make debtor-in-possession loans. The Debtors have obtained term sheets for DIP loans on a section 364(d)(4) priming basis in an amount sufficient to complete construction and obtain a temporary certificate of occupancy. In addition, all of the proposed DIP lenders that are being considered are also willing to fund tenant improvements and leasing commissions to facilitate the leasing of the completed building. Although the office building sector has been weakened as the result of the Covid-19 pandemic and remote working, there is still a significant demand for newly constructed class A office space, especially near The High Line.

20. The Debtors intend to promptly finalize a debtor in possession loan agreement with the most favorable DIP lender and file a motion with the Court to approve same.[2] Assuming the Court approves a debtor-in-possession loan, the Debtors intend to proceed with the new construction manager/general contractor and expects to complete the redevelopment and obtain a temporary certificate of occupancy within three to six months. The Debtors are also in discussions with potential CRO candidates to assist the Debtors in shepherding through these Chapter 11 cases.

V.   **INFORMATION REQUIRED BY LOCAL BANKRUPTCY RULE 1007-2**

21. I have been advised that Local Bankruptcy Rule 1007-2 requires certain information related to the Debtors which is set forth below.

22. In accordance with Local Bankruptcy Rule 1007-2(a)(3), there has been no prepetition committee of creditors formed in these chapter 11 cases.

23. In accordance with Local Bankruptcy Rule 1007-2(a)(4), **Exhibit B** hereto is a list containing the names, addresses, and, where available, telephone and facsimile numbers of the creditors holding the twenty (20) largest unsecured claims (excluding insiders) against the Debtors.

24. In accordance with Local Bankruptcy Rule 1007-2(a)(5), **Exhibit C** hereto is a list containing the names, addresses, and, where available, telephone and facsimile numbers of the creditors holding the five (5) largest secured claims against the Debtors.

25. In accordance with Local Bankruptcy Rule 1007-2(a)(6), **Exhibit D** hereto is a list containing a summary of the Debtors' assets and liabilities.

---

[2] The Debtors may seek to obtain debtor-in-possession financing in two tranches. The first tranche will be utilized to finish the construction and obtain a temporary certificate of occupancy. The second tranche will be utilized to pay for tenant improvements and leasing commissions.

26. To the best of my knowledge, none of the Debtors' property is in the possession or control of any custodian, public officer, mortgagee, pledgee, assignee of rents, or secured creditor, or agent for any such entity.

27. In accordance with Local Bankruptcy Rule 1007-2(a)(10), **Exhibit E** hereto is a list providing the location of the Debtors' substantial assets, the location of its books and records, and the value of any assets held by the Debtors outside the territorial limits of the United States.

28. To the best of my knowledge there is no litigation filed against the Debtors.

29. It is difficult to estimate the cash receipts and disbursements for the 30-day period following the filing of the Chapter 11 cases as it entirely depends upon whether and to what extent the Court authorizes a debtor-in-possession loan and/or the timing on the resumption of construction.

30. The Debtors' officers, directors, and members will receive no payroll for the 30-day period following the commencement of the Debtors' chapter 11 cases.

Under 28 U.S.C. § 1746, I declare under penalty of perjury the foregoing is true and correct to the best of my knowledge and belief.

Executed this 13th day of February 2023

/s/ Erno Bodek
Erno Bodek
*Managing Member of ERBO Properties LLC, Gold Mezz LLC, and KOVA 521, LLC*

**EXHIBIT A**

SCHEDULE II

ORGANIZATIONAL CHART OF BORROWER



541 West 21st Street – Organizational Structure

9211/29/8476163.v1

**EXHIBIT B**

Fill in this information to identify the case:

Debtor name: **ERBO Properties LLC**
United States Bankruptcy Court for the: **SOUTHERN DISTRICT OF NEW YORK**
Case number (if known): 23-10210

☐ Check if this is an amended filing

## Official Form 204
### Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders
12/15

A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim — Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
|---|---|---|---|---|---|---|
| Cauldwell Wingate Co., LLC<br>380 Lexington Avenue<br>52nd Floor<br>New York, NY 10168 | | Construction Manager Agreement | Unliquidated Disputed | | | $2,000,000.00 |
| HigherGround 541, LLC<br>c/o CIA Group<br>41 Madison Avenue, 31st Floor<br>New York, NY 10010 | | Development Agreement | Unliquidated Disputed | | | $500,000.00 |
| Advanced Facade<br>13-75 Redfern Ave<br>Far Rockaway, NY 11691 | | Facade - Window Installation Lobby - Chandilieres | Unliquidated | | | $90,000.00 |
| High Concrete Group<br>125 Denver Rd<br>Denver, PA 17517 | | Facade - Engineering, Manufacturing and Delivery | Unliquidated | | | $86,634.85 |
| Mancini Duffy<br>275 7th Avenue<br>New York, NY 10001 | | Architectural Design Services and Construction Administration | Unliquidated | | | $58,148.40 |
| Lilker Associates<br>1001 6th Ave #9<br>New York, NY 10018 | | Mrchanical, Electrical, Plumbing, Sprinkler, Fire Alarm and BMS Design Services and Construction Administration | Unliquidated | | | $27,945.00 |
| Urban Umbrella<br>20 Harrison St<br>New York, NY 10013 | | Sidewalk Shed | Unliquidated | | | $9,491.12 |

Debtor **ERBO Properties LLC**  Case number *(if known)* 23-10210
Name

| Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim — If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| **KM Associates of NY, Inc.**<br>**158 West 29 Street**<br>**Fl. 7**<br>**New York, NY 10001** | | **Permits & Filing Fees** | **Unliquidated** | | | $6,331.45 |
| **Gilsanz Murray Steficek**<br>**129 W 27th St 5th floor**<br>**New York, NY 10001** | | **Structural Design and Construction Administration** | **Unliquidated** | | | $4,425.00 |

# EXHIBIT C

## ERBO PROPERTIES LLC; GOLD MEZZ LLC; KOVA 521, LLC

## LIST OF FIVE (5) LARGEST SECURED CREDITORS

**TARTER KRINSKY & DROGIN LLP**
*Proposed Attorneys for ERBO Properties LLC, Gold Mezz LLC, KOVA 521, LLC*
*Debtors and Debtors-in-Possession*
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
Scott S. Markowitz, Esq.
Alex Spizz, Esq.
Rocco A. Cavaliere, Esq.
smarkowitz@tarterkrinsky.com
aspizz@tarterkrinsky.com
rcavaliere@tarterkrinksy.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
In re:                                          :
                                                :    Chapter 11
                                                :
ERBO PROPERTIES LLC,                            :
                                                :    Case No.: 23-10210 (LGB)
               Debtor.                          :
---------------------------------------------------------------x
                                                :
In re:                                          :    Chapter 11
                                                :
KOVA 521, LLC,                                  :    Case No.: 23-10211 (LGB)
                                                :
                                                :
               Debtor.                          :
--------------------------------------------------------------  x
                                                :
In re:                                          :    Chapter 11
                                                :
GOLD MEZZ LLC,                                  :    Case No.: 23-10212 (LGB)
                                                :
                                                :
               Debtor.                          :
--------------------------------------------------------------  x

## LIST OF CREDITORS HOLDING 5 LARGEST SECURED CLAIMS

    *Following is a list of the Debtors' creditors holding the 5 largest secured claims. The list is prepared in accordance with Rule 1007-2(a)(5) of the Local Rules of this Court for the filing in these Chapter 11 cases.*

089652\1\170107910.v1

| NAME OF CREDITORS AND COMPLETE MAILING ADDRESS (INCLUDING ZIP CODE) | NAME, TELEPHONE NUMBER AND COMPLETE MAILING ADDRESS (INCLUDING ZIP CODE) OF EMPLOYEE, AGENT, OR DEPARTMENT (IF DIFFERENT FROM MAILING ADDRESS) OF CREDITOR FAMILIAR WITH CLAIM | AMOUNT OF CLAIM | DESCRIPTION AND EST. VALUE OF COLLATERAL SECURING CLAIM |
|---|---|---|---|
| G4 18190, LLC<br>14 Skillman Street<br>Roslyn, NY 11576 | Jason Behfarin<br>14 Skillman Street<br>Roslyn, NY 11576<br>Tel: (212) 257-1918<br>Email: jason@g4cap.com | $57,000,000.00 | Various loans secured by senior lien on the real property located at 541 West 21st Street, New York, NY 10011 |
| Alpine Enterprises NY Ltd.<br>4608 Third Avenue<br>Brooklyn, NY 11220 | Vadim Rojavski<br>4608 Third Avenue<br>Brooklyn, NY 11220<br>Tel: (929) 457-6204 | $431,064.33 | Mechanic's Lien |
| 541 West 21 SME LLC<br>c/o SME Capital Ventures LLC<br>200 Park Avenue<br>New York, NY 10166 | Eran Silverberg<br>c/o SME Capital Ventures LLC<br>200 Park Avenue<br>New York, NY 10166<br>Email: esilverberg@sme-capital.com | $4,750,000.00 | Mezzanine loan secured by pledge of membership interest. |

## DECLARATION UNDER PENALTY OF PERJURY

I, Erno Bodek, the managing member of the Debtors in the above-captioned cases, declare under penalty of perjury that I have read the foregoing list of creditors holding the five (5) largest secured claims and that it is true and correct to the best of my information and belief.

Dated:  New York, New York
        February 13, 2023

*/s/ Erno Bodek*
Erno Bodek
*Managing Member of ERBO Properties LLC, Gold Mezz LLC, and KOVA 521, LLC*

089652\1\170107910.v1

# EXHIBIT D

# ERBO PROPERTIES LLC; GOLD MEZZ LLC; KOVA 521, LLC

## SUMMARY OF ESTIMATED ASSETS AND LIABILITIES (UNAUDITED)

### ASSETS

| | |
|---|---:|
| Real Property located at 541 West 21st Street, New York, NY | $80,000,000.00 |
| **Total Assets** | **$80,000,000.00** |

### LIABILITIES

| | |
|---|---:|
| Mortgage Payable (Secured) | $56,000,000.00 |
| Real Estate Taxes | $786,041.60 |
| Unsecured Trade Claims | $2,800,000.00 |
| **Total Liabilities** | **$59,586,041.60** |

# EXHIBIT E

## ERBO PROPERTIES LLC; GOLD MEZZ LLC; KOVA 521, LLC

| Location of Debtor's Substantial Assets |
|---|
| 541 West 21st Street<br>New York, NY 10011 |

| Location of Debtor's Books and Records |
|---|
| Cauldwell Wingate Co., LLC<br>380 Lexington Avenue<br>52nd Floor<br>New York, NY 10168<br><br>Erno Bodek<br>551 Bedford Avenue<br>Brooklyn, NY 11211<br><br>Higher Ground 541 LLC<br>c/o CIA Group<br>41 Madison Avenue<br>31st Floor<br>New York, NY 10010 |