**HEARING DATE: MAY 4, 2023**
**HEARING TIME: 11:00 A.M.**

**TARTER KRINSKY & DROGIN LLP**
*Attorneys for ERBO Properties LLC, KOVA 521, LLC and Gold Mezz LLC*
*Debtors and Debtors-in-Possession*
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
Scott S. Markowitz, Esq.
smarkowitz@tarterkrinsky.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:                                                       :
                                                             :   Chapter 11
                                                             :
ERBO PROPERTIES LLC, et al.[1]                               :   Case No.: 23-10210 (LGB)
                                                             :   (Jointly Administered)
                                    Debtors.                 :
------------------------------------------------------------x

**DEBTORS' OBJECTION TO MOTION OF 541 W 21 SME LLC
FOR AN ORDER TERMINATING THE AUTOMATIC STAY
PURSUANT TO 11 US.C. § 362 AND OTHER RELATED RELIEF**

Erbo Properties LLC ("Erbo"), KOVA 521, LLC ("KOVA"), and Gold Mezz LLC ("Gold Mezz", together with Erbo and KOVA, the "Debtors"), the above-captioned debtors and debtors-in-possession, hereby submit this objection (the "Objection") to the motion (the "Lift Stay Motion") filed by 541 W 21 SME LLC ("SME") for an order terminating the automatic stay pursuant to 11 U.S.C. § 362 and other related relief [Dkt. No. 54] and respectfully state as follows:

---

[1] The Debtors are ERBO Properties LLC (EIN x9179), Case No.: 23-10210, with a mailing address at 551 Bedford Avenue, Brooklyn, NY 11211; KOVA 521, LLC (EIN x9972), Case No.: 23-10211, with a mailing address at 551 Bedford Avenue, Brooklyn, NY 11211; and Gold Mezz LLC (EIN x4741), Case No.: 23-10212, with a mailing address at 551 Bedford Avenue, Brooklyn, NY 11211.

089896\1\170199662.v2

**PRELIMINARY STATEMENT**

1. SME's Lift Stay Motion seeks relief from stay in order to enforce rights under the Mezzanine Loan Agreement (as defined in the Lift Stay Motion)[2] with the stated intention of obtaining the interest in and control of KOVA and Erbo in order to allow SME to complete the Project, obtain the TCO and pay creditors. See Lift Stay Motion, § 32. In essence, if the Lift Stay Motion is granted and state law (UCC) relief was then implemented, SME would essentially become the debtor in possession in these cases, effectively replacing management and the Debtor's member, who would no longer be able to control the disposition of these cases. SME fails to consider the ramifications of the drastic relief it seeks and all of the responsibilities and fiduciary duties it would then owe to the estate (including all constituents) by virtue of "successfully" implementing their plan of action. SME has advised Erbo that it intends to continue to utilize Higher Ground and Cauldwell, the same contractors who have been in charge of the Project since inception and under whose stewardship the project has suffered tremendous delay and millions in cost overruns.

2. Aside from the ramifications of the relief requested in the Lift Stay Motion, which SME has not fully considered, the relief requested is neither necessary at this time nor supported by "cause" under section 362(d)(1) of the Bankruptcy Code. As the Court is aware from the short history of these Chapter 11 cases, Erbo has lost confidence in Higher Ground and Cauldwell, and have filed a motion to reject (the "Rejection Motion") the Development Management Agreement and Construction Management Agreement (each as

---

[2] Unless capitalized in this Objection, capitalized terms shall have the meanings ascribed to such terms in the Lift Stay Motion.

referenced in the Lift Stay Motion). The hearing to consider the Rejection Motion is May 4, 2023, the same day the Court is scheduled to consider SME's Lift Stay Motion. Further, while the Debtors could arguably enter into new construction related agreements in the ordinary course of business without the need for the filing of a motion, out of an abundance of caution, on April 21, 2023, Erbo filed a motion to enter into agreements with Irving Oak Management and Mabe Group to complete the construction of the Project (the "Replacement Contractor Motion"). In addition, through a capital contribution of $400,000 that will be deposited into the Debtors' law firm's trust account on prior to the May 4th hearing, there is funding available to pay the replacement contractors to obtain the TCO. The hearing on the Replacement Contractor Motion is May 10, 2023. SME rejected the Debtors' request to adjourn the hearing on SME's Lift Stay Motion to May 10, 2023. Ultimately, once the Replacement Contractor Motion is approved, Erbo will be on its way to completing the Project and maximizing the value of the Property for the benefit of all creditors, including SME, with the anticipation there will be a distribution to the Debtors' members and ultimate owners from the sale of the Property in the next 18 to 24 months.

3. As will be demonstrated, there is no "cause" to grant relief from stay under section 362(d)(1) of the Bankruptcy Code, nor is there "cause" to grant any other relief such as termination of exclusivity. Curiously, although Erbo's bankruptcy petition makes clear it is a "single asset real estate" case, SME has limited the relief it is seeking in the Lift Stay Motion to "cause" under section 362(d)(1) and 362(d)(2), rather than the specific single asset real estate provision in section 362(d)(3). Regardless of the foregoing, another reason why the Lift Stay Motion should be denied is because the Debtors intend on filing a

plan of reorganization (the "Plan") on or before May 14, 2023[3] (i.e. within 90 days of the Petition Date) because failing to do so would allow SME and any other party in interest to file a renewed motion under section 362(d)(3) to terminate the stay for failing to file a plan of reorganization or otherwise begin making monthly payments to those creditors (i.e. G4) having a lien on the Property.

4.  In sum, the Debtors have made substantial progress, including identifying replacement contractors within one week of the Filing Date and securing monies needed to pay such contractors, with additional progress to come with a Plan to be filed no later than May 15, 2023.[4] The delays here have been caused by the various objections filed to the Rejection Motion which is ordinarily a summary proceeding and noncontroversial.[5] As such, the relief requested in the Lift Stay Motion should be denied at the upcoming hearing, or alternatively the hearing on the Lift Stay Motion should be adjourned until a future date after the Court and creditors have had an opportunity to consider and review the Debtors' Plan and Disclosure Statement and to address any evidentiary issues that may be relevant to the Lift Stay Motion.

## OBJECTION TO LIFT STAY MOTION

5.  As primary support for the Lift Stay Motion, SME cites to section 362(d)(1) which reads, in relevant part:

---

[3] As May 14, 2023 is a Sunday, by virtue of Bankruptcy Rule 9006, the deadline for filing a plan in order to avoid the consequences of section 362(d)(3) is May 15, 2023.

[4] The Bar Date is May 5, 2023. The Debtor expects additional claims by contractors and others prior to the Bar Date. The Debtor will need approximately one week to review the claims in order to include a claims analysis and discussion in the Disclosure Statement and determining the proper classification of claims under the Plan.

[5] SME's arguments regarding delay and lack of progress are a bit disingenuous as SME continues to prosecute its objection to the Debtor's efforts to replace Higher Ground and Cauldwell even though Higher Ground and Caudwell have been uncooperative and provided very inconsistent information regarding the cost to complete the Project.

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay-
>
>> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest.

11 U.S.C. § 362(d)(1). See generally, Lift Stay Motion, ¶¶ 34 to 40 (including references to section 362(d)(1) and case law interpreting "cause" and "adequate protection", among other things).[6]

6. First, as noted by SME, as the party filing the Lift Stay Motion, SME "has the burden to make a *prima facie* showing that '*cause*' exists for relief from the stay." In re Sonnax Indus., Inc., 907 F.2d 1280, 1285 (2d Cir. 1990) (emphasis added). For the reasons set forth herein, SME has not satisfied this initial burden of demonstrating "cause".[7] Many of the stated reasons for "cause" in the Lift Stay Motion have become moot as a result of the Debtors' actions since the filing of the Lift Stay Motion. Namely, SME complains the Debtors have not filed a motion to retain replacement contractors and have failed to obtain financing. See Lift Stay Motion, ¶ 44. SME further complains that "the principals of the Debtors refuse to contribute the $400,000 to $500,000 to complete the Project." See Lift Stay Motion, ¶ 48. This is simply inaccurate. SME fails to disclose to the Court that at a meeting with counsel present on March 23, Erbo made it clear its owners would contribute the monies necessary to obtain the TCO using the Replacement Contractors. As referenced

---

[6] Notably, although Erbo, one of the Debtors, is a "single asset real estate" debtor, as defined under the Bankruptcy Code, the Lift Stay Motion does not request any relief under section 362(d)(3), and thus, there has been no "notice and a hearing" allowing the Court to grant such relief under such section of the Code.
[7] In paragraph 19 of the Lift Stay Motion, SME asserts it is owed approximately $9 million dollars. SME lent Gold Mezz $4.5 million dollars. For reasons which are not clear, SME has been paying the monthly non default interest to G4. Erbo's owners believe SME is in cahoots with G4 to squeeze out the Debtors' equity owners, and generate a significant profit from the sale of the Property. If SME was really concerned about its ability to be made whole, why is SME paying G4 approximately $250,000 per month?

in the Replacement Contractor Motion, which is now on file, Erbo has selected replacement contractors, and $400,000 is being contributed as a capital contribution, if the Court permits Erbo in the exercise of its business judgment to hire the replacement contractors. SME also complains the Debtors have not yet retained a broker to sell the Property or obtain tenants for the Property. See Lift Stay Motion, ¶ 48. However, SME is well aware and was involved in several conversations prior to the Filing Date with Erbo's management pertaining to hiring a leasing broker. See **Exhibit "A"**. Thus, SME's arguments in this regard are not persuasive. The Debtors' Plan and disclosure statement, to be filed in approximately 2 -3 weeks, will address the timing of the procurement of a broker who Erbo will select after a careful interview process.[8] In sum, in light of all of the foregoing, there is no merit whatsoever to the contention that "the viability of the Project is in question absent SME exercising its right to enforce its security interests and seeking possession of the Pledged Interests." See Lift Stay Motion, ¶ 47. In fact, quite the contrary is true. SME's efforts to interfere with Erbo's reasonable business judgment in rejecting the DMA and CMA has caused unnecessary delay.

7. Second, SME spends considerable time arguing there is no "adequate protection" to SME. However, while complaining the "Debtors have provided no evidence that [an] equity cushion exists" [see Lift Stay Motion, ¶ 49], section 362(g) is clear that "the party requesting such relief has the burden of proof on the issue of the debtor's equity in property." Thus, SME is required to demonstrate they are not adequately protected by the Debtors' equity in the Property or otherwise. There is no broker price opinion,

---

[8] Recommendations from SME and others regarding the identity of a broker would course, be considered, as the Debtors evaluate the best choice for the engagement.

appraisal or expert valuation report for the Court to consider, nor is there any fact or expert witness that has been identified for Erbo to cross examine on the alleged lack of adequate protection. As such, SME has failed to establish the Property is declining in value and that SME is not adequately protected.[9] To the extent that SME produces such information in a reply to this Objection, the Debtors would need time to analyze such information and take discovery and depositions concerning the Property's valuation, meaning the hearing would need to be adjourned until such time as the Court can hold an evidentiary hearing. See Bankruptcy Rule 9014-2 ("The first scheduled hearing in a contested matter will not be an evidentiary hearing at which witnesses may testify, unless: (a) the Court gives prior notice to the parties that such hearing will be an evidentiary hearing…").

8. <u>Third</u>, SME contends that stay relief is also warranted under section 362(d)(2), stating that "a debtor's inability to confirm a Chapter 11 plan may also provide the basis to grant relief from the automatic stay under section 362(d)(2)." See Lift Stay Motion, ¶ 53. However, that statement is inconsistent with the actual language to section 362(d)(2) which allows for relief from stay under this subsection if "(A) the debtor does not have any equity in such property, **and** (B) such property is not necessary to an effective reorganization." See 11 U.S.C. 362(d)(2) (emphasis added). As indicated, there is no proof there is no equity in the Property. Further, as a single asset real estate case, there is no basis to claim the Property is not necessary to an effective reorganization. SME claims it will not support a plan that fails to include terms for completing the construction on the Property and the ultimate sale of the Property. See Lift Stay Motion, ¶ 53. However, that is

---

[9] SME also complains that there is a tax due on April 3, 2023 of $813,640.59. However, a review of the New York City Department of Finance's proof of claim refers to such amounts as prepetition claims. The Plan will address the payment of such real estate taxes.

exactly what the Debtors are trying to do as referenced by the Replacement Contractor Motion and ownership intends to deposit into escrow of sufficient monies to cover the construction costs. Further, the Plan and disclosure statement the Debtors intend to file in the next 2-3 weeks will confirm the Debtors' intentions with respect to the timing of the retention of brokers and a value maximizing sale process. Meanwhile, in each of the cases relied upon by SME in which a court granted relief from stay under section 362(d)(2) (at least in part), there were plans on file in which a court was able to assess the merits of such plans at the same time such court considers a creditor's request for relief from stay. As the hearing on the Lift Stay Motion is on for May 4, 2023 and the Debtors' Plan will be filed approximately ten days after such hearing, at the upcoming hearing, SME may not rely on section 362(d)(2) to support the relief requested in the Lift Stay Motion.

9.  **Fourth**, as noted at the outset, despite the fact Erbo's Chapter 11 case is a single asset real estate case, the Lift Stay Motion does not seek relief under section 362(d)(3) and any belated effort to seek such relief would fail, absent notice and a hearing, to consider such additional relief. In any event, as the Debtors will be filing a Plan by May 15, 2023, even if the Lift Stay Motion had sought relief under section 362(d)(3), that aspect of the Lift Stay Motion would have become moot upon the Debtors' filing of a Plan.[10]

10. **Fifth**, in footnote 6 of the Lift Stay Motion, SME also asks the Court to consider a reduction of the 120-day exclusive period to allow SME to proceed with a consensual plan. As an initial matter, the relief requested, relegated to a mere footnote in the Lift Stay Motion, will become moot once the Debtors file their Plan and Disclosure

---

[10] As a practical matter, even if stay relief were granted, Debtors would be well on their way towards confirmation of their Plan before SME was able to overcome objections to a UCC Sale and its intended acquisition of Pledged Interests

Statement in the next 2-3 weeks. Furthermore, even if the Debtors did not file their Plan, as expected by May 15, 2023, SME's requested relief must fail as they do not even try to satisfy their burden of demonstrating "cause" for terminating exclusivity by applying the relevant factors considered by courts in this District. See In re Adelphia Communications Corp., 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006) (citing to ten common factors for extension and reduction of the exclusivity period under section 1121(d)). In evaluating the burdens of the moving parties under section 1121(d), bankruptcy courts have indicated the "debtor's burden gets heavier with each extension it seeks as well as the longer the period of exclusivity lasts; and a creditor's burden to terminate gets lighter with the passage of time." In re Dow Corning Corp., 208 B.R. 661, 664 Bankr. E.D. Mich. 1997). Likewise, the debtor's burden to obtain a first extension of exclusivity is lighter in the early stage of a case while a creditor's burden to terminate exclusivity is heavier in the earliest stages of the case.

11.     Lastly, the Lift Stay Motion requests the Court waive the requirement that any order granting relief from stay be stayed for 14 days. In making this request, SME fails to specify any reasons why such relief is necessary or appropriate. As SME has failed to articulate the basis to support the need for a waiver of the 14 day stay, such request should be denied in the event that this Court were to grant relief from stay. See e.g. In re Caisson Laboratories, Inc., 2015 WL 1239216 (Bankr. D. Utah March 13, 2015) (granting relief from stay to allow creditor to pursue eviction proceeding but denying request for 14 day stay); In re Topfer, 587 B.R 622, 637 (Bankr. M.D. Pa. 2018) (finding insufficient cause to waive the fourteen day stay imposed by Bankruptcy Rule 4001(a)(3), nothing that there was no evidence of "unclean hands" or "misuse of the bankruptcy system"); In re

Éclair Bakery, Ltd., 255 B.R. 121, 143 fn. 42 (Bankr. S.D.N.Y. 2000), (finding that based on Debtor bouncing postpetition check to landlord and exhibit "unclean hands", bankruptcy court reduced the stay under Rule 4001(a)(3) to three business days)

### **RESERVATION OF RIGHTS**

12. The Debtors reserve the right to amend or supplement this Objection at or before the May 4 Hearing and raise additional arguments at the upcoming May 4 Hearing.

13. To the extent SME seeks to supplement the Lift Stay Motion with "evidence", the Debtors reserve the right to request the Court consider the May 4, 2023 date as a status conference and schedule a future evidentiary hearing on the Lift Stay Motion, as contemplated by Local Bankruptcy Rule 9014-2.

**WHEREFORE**, the Debtors respectfully request that the Court deny the Lift Stay Motion and grant such other and further relief as this Court deems just and proper.

Dated: New York, New York
April 27, 2023

                                               **TARTER KRINSKY & DROGIN LLP**
*Attorneys for Erbo Properties LLC, Kova 521, LLC and Gold Mezz LLC*
*Debtors and Debtors-in-Possession*

By:   /s/ Scott S. Markowitz
       Scott S. Markowitz, Esq.
       1350 Broadway, 11th Floor
       New York, New York 10018
       (212) 216-8000
       smarkowitz@tarterkrinsky.com

**EXHIBIT A**

# Hershel Klein

| | |
|---|---|
| **From:** | Gabriel Silverstein <gabriel.silverstein@svn.com> |
| **Sent:** | Friday, December 23, 2022 5:11 PM |
| **To:** | Eran Silverberg |
| **Cc:** | Hershel Klein |
| **Subject:** | leasing |
| **Attachments:** | Helmsley Spear - Overview .pdf; Untitled attachment 00073.htm |

There is a team at Helmsley-Spear that I'd like you to meet with regards to leasing.  I think they will give it the right attention, and the owner, Kent Swig (who also owns about 15 million SF in Manhattan) is a long-time friend of mine.  They also have their own construction company, Falcon Pacific, which I think gives a meaningful edge when the majority of tenants of the size this building is after do not have construction or real estate departments and need things to be turnkey (maybe even a spec floor buildout) and getting that done today is not easy, for a smaller job, without having that team in-house.  I'm sure that's even more so the case given the building's recent construction payment history.

What is your calendar like early next week to do a call with them?

thanks,

1

# Hershel Klein

| | |
|---|---|
| **From:** | Gabriel Silverstein <gabriel.silverstein@svn.com> |
| **Sent:** | Wednesday, January 4, 2023 10:56 PM |
| **To:** | Eran Silverberg |
| **Cc:** | Hershel Klein |
| **Subject:** | Falcon Pacific info FYI (Helmsley Spear related company that does construction) |
| **Attachments:** | Falcon Pacific Overview.pdf; Untitled attachment 00082.htm |

I forgot to get this to you guys as follow up to the call with Helmsley Spear.

Eran, still no time we can get on with Newmark?