**HEARING DATE: MAY 4, 2023**
**HEARING TIME: 11:00 A.M.**

**TARTER KRINSKY & DROGIN LLP**
*Attorneys for ERBO Properties LLC, KOVA 521, LLC and Gold Mezz LLC*
*Debtors and Debtors-in-Possession*
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
Scott S. Markowitz, Esq.
smarkowitz@tarterkrinsky.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 11 |
| | : | |
| ERBO PROPERTIES LLC, et al.[1] | : | Case No.: 23-10210 (LGB) |
| | : | (Jointly Administered) |
| Debtors. | : | |

------------------------------------------------------------x

**DEBTOR ERBO PROPERTIES LLC'S OMNIBUS REPLY TO (I)  HIGHER
GROUND 541 LLC'S OPPOSITION TO THE DEBTOR'S MOTION TO REJECT
THE DMA, (II) CAULDWELL WINGATE COMPANY LLC'S RESPONSE, (III) G-
4 18190, LLC'S OBJECTION AND (IV) 541 W 21 SME LLC'S OBJECTION**

Erbo Properties LLC, the above-captioned debtor and debtor-in-possession (the

"Debtor" or "Erbo"), hereby submits this Omnibus Reply ("Reply") to: (i) Higher Ground

541 LLC's Opposition to the Debtor's Motion to Reject the DMA (the "Higher Ground

Objection") [ECF Dkt No. 34], (ii) Cauldwell Wingate Company LLC's Response (the

"Response") [ECF Dkt. 35], (iii) G-4 18190, LLC's Objection (the "G-4 Objection") [ECF

---

[1] The Debtors are ERBO Properties LLC (EIN x9179), Case No.: 23-10210, with a mailing address at 551
Bedford Avenue, Brooklyn, NY 11211; KOVA 521, LLC (EIN x9972), Case No.: 23-10211, with a mailing
address at 551 Bedford Avenue, Brooklyn, NY 11211; and Gold Mezz LLC (EIN x4741), Case No.: 23-
10212, with a mailing address at 551 Bedford Avenue, Brooklyn, NY 11211.

Dkt. No. 36], and (iv) 541 W 21 SME LLC's Objection (the "SME Objection") [ECF Dkt No. 37] (collectively, the "Objections"), and respectfully states as follows:

**PRELIMINARY STATEMENT**

1. The Objections all have the same common theme. The Debtor's business decision to reject the DMA and the CMA[2] is irrational and/or an abuse of discretion. The main concerns asserted in the Objections can be summarized as follows:

    a. Irving Oak Management ("Irving") is not qualified to replace Higher Ground and Cauldwell and the Debtor has provided no information regarding Irving's credentials and experience;

    b. Replacing Higher Ground and Cauldwell at this late stage of the Project would be inefficient and Irving or any replacement contractor will have a difficult time securing cooperation from the subcontractors and obtaining DOB signoffs; and

    c. The Debtor has not demonstrated it has the financial wherewithal to complete the remaining work necessary to obtain the TCO.

2. All of the contentions asserted in the Objections are without merit or overblown concerns as will be demonstrated in this Reply and to be more fully addressed at the upcoming hearing.[3] In short, the Debtor should be given an opportunity to reorganize which includes hiring professionals of its choosing to complete the project and submit a plan of reorganization (the "Plan") and seek to obtain confirmation of such Plan.

---

[2] All capitalized terms not defined herein, shall have the meaning ascribed to such terms in the Debtor's Motion Seeking Rejection of the Development Management Agreement and the Construction Management Agreement (the "Rejection Motion") filed under ECF Dkt. No. 13.

[3] Erbo has filed a separate motion to enter into agreements with Irving and Mabe Group Inc. ("Mabe") to complete the Project which is currently scheduled to be heard on May 10, 2023.

## **REPLY TO OBJECTIONS**

3.      In the interest of time and in light of the summary nature of a motion to reject an executory contract, the Debtor will be brief in its Reply in responding to the various contentions set forth in the Objections. By not addressing each and every contention set forth in the Objections, the Debtor does not implicitly agree with such contentions. Instead, the Debtor looks forward to supplementing its legal analysis as well as presenting an appropriate evidentiary record at the upcoming hearing on May 4, 2023 (the "May 4 Hearing") as well as the May 10, 2023 hearing (the "May 10 Hearing") on the Debtor's motion to hire Irving and Mabe.

**A.      Irving and its Owner Have the Requisite Experience and
is Now Fully Familiar with the Project**

4.      Prior to the Filing Date, the Debtor's management attempted to engage with Higher Ground in order to ascertain the nature and scope of the work required to obtain a partial TCO for the Project. Unfortunately, Higher Ground and its owners, Peter and Ray Cecora were less than cooperative. See **Exhibit "A."**

5.      In part, because of the Higher Ground's lack of cooperation, the Debtor's management sought help from other experienced construction professionals. Irving was recommended to the Debtor's management. Irving's owner is Eliezer Fried ("Fried"). Fried has substantial experience both in managing construction projects in New York City and managing properties in general.

6.      Irving and its team led by Fried, has spent several weeks performing due diligence with respect to the Project. This due diligence includes, inter alia, contacting all of the subcontractors whether hired by Cauldwell or Higher Ground and requesting

estimates to conclude their work. Not surprisingly, Irving has experienced some delays as not all of the subcontractors were cooperative and Irving was required to seek bids from other subcontractors necessary for certain work required to obtain the TCO.  However, Irving and Fried are now fully familiar with the status of the Project and have prepared a status report reflecting the current status of the Project. A copy of the status report and Irving's qualifications is annexed hereto as **Exhibit "B."**

7.      Irving has also prepared a contract which includes an estimate and timeline to complete the Project. Irving will be acting as the Debtor's owner's rep and project manager and the Debtor, at Irving's suggestion, will hire Mabe to act as general contractor. Mabe is a licensed general contractor with substantial experience with the New York City Department of Buildings. Irving has also retained an experienced expediter, BAC Group, to facilitate the various filings required by the NYC Department of Buildings to obtain a TCO.  A copy of Irving's proposed contract which includes a summary and the cost of the work necessary to obtain the TCO as well as the timeline is annexed hereto as **Exhibit "C."**

8.      The Debtor submits Irving and Fried are well-qualified. In addition, based upon several weeks of due diligence, the Debtor's management is confident Irving with Mabe's assistance, will be able to promptly obtain a TCO for the Project.  Fried will be made available at the hearing for cross examination.

**B.      Replacing Higher Ground and Cauldwell is a Valid Exercise of the Debtor's Business Judgment**

9.      In Cauldwell's Response [ECF Dkt. No. 35], Cauldwell (while not objecting to rejection of the CMA) states Cauldwell is at the "finish line." Cauldwell goes on to state

and estimates, it will cost approximately $400,000 - $500,000 and take approximately three (3) months to obtain the partial TCO. Cauldwell also states it is owed over $2 million which includes monies owed to Cauldwell as well as subcontractors.

10.     Based upon the Objections, the Debtor's management requested Cauldwell provide an updated estimate on the cost to obtain the TCO in order to compare to the Irving's estimate. Remarkably, Cauldwell's updated estimate is now more than twice the amount of its estimate set forth in the Response.[4] See **Exhibit "D."** Irving's estimate is between $300,000 and $400,000 and based upon substantial due diligence which factors bids from qualified replacement subcontractors.[5]

11.     The Debtor's ultimate equity owner and/or his family members will deposit $400,000 in Debtor's counsel's trust account which funds shall be earmarked and released to pay for the work necessary to obtain the TCO for the Project assuming the Court grants Erbo's motion to reject the DMA and CMA and hire Irving and Mabe to complete the Project. These funds will be contributed as an equity contribution and avoid the necessity at this stage for a further contested hearing seeking debtor-in-possession financing.

12.     In the G-4 Objection, at ¶ 12 [ECF Dkt. No. 36], G-4 asserts it is not aware of the current status of the construction and asserts it requested access to inspect the status of the Property and construction. The Debtor arranged for a site visit with G-4's construction

---

[4] Under Cauldwell's and Higher Ground's stewardship, the Project has been delayed for over two (2) years and Cauldwell has invoiced the Debtor more than $2 million above its original budget. In total, the Project has experienced cost overruns of approximately $8 million and it is still not complete. Even Cauldwell's most recent $915,000 estimate to obtain the TCO does not include certain items such as oil tank signoffs, TR inspections and removal of various violations.

[5] Higher Ground's estimates to complete the Project have been wildly inconsistent. See email date November 16, 2022 from Ray Cecora to Rachel Bodek indicating Cauldwell's balance to finish is $128,785.33. See **Exhibit E**.

consultant and Fried.   Upon information and belief, G-4's construction consultant was satisfied with the condition of the Property and Fried's game plan to obtain the TCO.

13.     The Higher Ground Objection argues rejection is not beneficial to the estate as Higher Ground retains a lien, somehow implying the Debtor should be required to pay all of the unpaid claims asserted by either Higher Ground, Cauldwell or subcontractors in order to complete the Project.   The Debtor's disagrees with Higher Ground's arguments as most prepetition claims against a Chapter 11 debtor, await payment until confirmation of a plan of reorganization. Additionally, Higher Ground is essentially arguing Erbo should be required to continue to use Higher Ground when during Higher Ground's tenure the Project suffered substantial delays, millions in cost overruns and has not yet even applied for a TCO. Potentially more troubling is Higher Ground's statement in ¶ 20 of the Higher Ground Objection. Higher Ground argues it will no longer be bound by certain provisions of the DMA waiving its lien rights, asserting this provision may be against public policy.  A review of the DMA reflects the law firm of Goldberg Weprin Finkel Goldstein LLP, the same law firm now representing Higher Ground in this dispute, represented Erbo in preparing and drafting the DMA.  See Article IX, page 23 of the DMA, attached as Exhibit A to the Higher Ground Objection.  The Court should view Higher Ground Objection through this lens.

## **RESERVATION OF RIGHTS**

14.     The Debtor reserves the right to amend or supplement this Reply at or before the May 4 Hearing and raise additional arguments at the upcoming May 4 Hearing.

15.     The Debtor believes the legal analysis set forth in the Rejection Motion, this Reply and/or oral arguments as well as evidentiary record comprised of the Debtor's supporting declarations and exhibits, as well as the upcoming testimony of its witnesses,

will demonstrate the Rejection Motion should be approved as a valid exercise of the

Debtor's business judgment.

WHEREFORE, for the reasons stated above as well as in the Rejection Motion,

the Debtor requests the Court grant the Rejection Motion, overrule the Objections and

grant such other and further relief as this Court deems just and proper.

Dated:  New York, New York
         May 1, 2023

TARTER KRINSKY & DROGIN LLP
*Attorneys for Erbo Properties LLC, Kova 521,*
*LLC and Gold Mezz LLC*
*Debtors and Debtors-in-Possession*


By:   /s/ Scott S. Markowitz
         Scott S. Markowitz, Esq.
         1350 Broadway, 11th Floor
         New York, New York 10018
         (212) 216-8000
         smarkowitz@tarterkrinsky.com

**EXHIBIT A**

*Hirky*

## Hershel Klein

| | |
|---|---|
| **From:** | Hershel Klein <h9172047835@gmail.com> |
| **Sent:** | Sunday, January 15, 2023 5:29 PM |
| **To:** | COULDBEREACHED; Eran Silverberg; Gabriel Silverstein; Jason Behfarin; Peter Cecora (peter@541w21.com); Rachel Bodek; Ray Cecora; Scott Markowitz; victoriasales |
| **Subject:** | Clarification of calculations |

Hi Ray and Peter,

Hope you are doing well.

I'm writing this email in the name of my FIL Erno Bodek who is copied in this email.

We are asking to please set up a zoom meeting at your "earliest convenience" so that we can review the spreadsheets you have previously provided and get a clear understanding of the money owed to contractors for work already performed, and also get a clear picture of the amount of money that still needs to be paid for new work that is needed to complete in order to get a TCO.

Thanks for sending the spreadsheets but as much as we have tried , none of us can figure out exactly how to read the spreadsheets you have previously provided.

Time is of the essence and we ask that you pls accommodate our request for this zoom meeting as quickly as possible so that we can hopefully get this project back on track with the required funding.

Thank you for your anticipated cooperation and availability.

Sincerely
Hershel Klein
--
Best regards, Hershel Klein

1

ı ا

## Hershel Klein

| | |
|---|---|
| **From:** | Ray Cecora <ray@541w21.com> |
| **Sent:** | Tuesday, January 17, 2023 10:31 AM |
| **To:** | Hershel Klein |
| **Cc:** | COULDBEREACHED; Eran Silverberg; Gabriel Silverstein; Jason Behfarin; Peter Cecora (peter@541w21.com); Rachel Bodek; Scott Markowitz; victoriasales |
| **Subject:** | Re: Clarification of calculations |

Hello Herschel

Pleasure to e-meet you.

We would be willing to accommodate the request once we've been paid.

Since we've never met or spoken, I'm not sure how much you know. Just to set a brief context, we have not been compensated in over two years. During this period we provided all the services we'd been hired for as well as additional services outside the scope of our developer Managment agreement.

In addition to this, we've advanced hundreds of thousands of dollars (not a requirement of our dma) on behalf of the Bodek's with a simple promise to be repaid. Currently we've not been reimbursed for approx $100k.

As an alternative to being paid what we're owed in full, perhaps we would consider a partial payment, revised payment terms for the remaining balance along with making us a secured creditor.

Regards,

Ray

On Jan 15, 2023, at 5:29 PM, Hershel Klein <h9172047835@gmail.com> wrote:

Hi Ray and Peter,

Hope you are doing well.

I'm writing this email in the name of my FIL Erno Bodek who is copied in this email.

We are asking to please set up a zoom meeting at your "earliest convenience" so that we can review the spreadsheets you have previously provided and get a clear understanding of the money owed to contractors for work already performed, and also get a clear picture of the amount of money that still needs to be paid for new work that is needed to complete in order to get a TCO.

Thanks for sending the spreadsheets but as much as we have tried , none of us can figure out exactly how to read the spreadsheets you have previously provided.

Time is of the essence and we ask that you pls accommodate our request for this zoom meeting as quickly as possible so that we can hopefully get this project back on track with the required funding.

1

Thank you for your anticipated cooperation and availability.

Sincerely
Hershel Klein
--
Best regards, Hershel Klein

**EXHIBIT B**



**Date:** 4/18/2023
**Re:** **Irving Oak Management Construction Report**
**Address:** **541 West 21st Street**
**New York, NY**

    Irving Oak Management is a property management and construction coordination company that has been serving the New York City area for seven years overseeing projects totaling more than 800k square feet. We provide comprehensive services to our clients as an owner's representative, coordinating all needs in construction or management for buildings in the city.

Our team at Irving Oak Management is highly experienced and knowledgeable in this industry, and we take great pride in the quality of our work. We have a proven track record of success and have earned a strong reputation for our commitment to excellence. Our clients can rest assured that Irving Oak Management has the expertise to oversee their needs.

It is clear that Irving Oak Management is the ideal choice for anyone looking for reliable property management and construction services in the New York City area. Our dedication to providing the highest level of service is unparalleled, and our commitment to excellence is evident in every project we undertake.

**Date:**    **4/18/2023**
**Re:**    **Irving Oak Management Construction Report**
**Address:**    **541 West 21ˢᵗ Street**
    **New York, NY**



See the below chart outlining past and current projects that Irving Oak has been involved in, along with our responsibility on each project.

| | Address | Type | SQ Footage | Project |
|---|---|---|---|---|
| Past Projects | | | | |
| | Bogart St, Brooklyn NY | Commercial | 159,998.00 | Construction and Project Management |
| | Spencer St, Brooklyn NY | Commercial | 52,643.00 | TI and Project Management |
| | Forrest St, Brooklyn NY | Commercial Conversion to Residential | 32,197.00 | Construction and Management |
| | Kingsland Ave, Brooklyn NY | Commercial | 22,930.00 | Construction and Management |
| | 19th St, Brooklyn NY | Commercial | 10,000.00 | Construction |
| | 108 St, Queens NY | School | 10,000.00 | Construction |
| | Broadway, Brooklyn NY | Commercial | 52,714.00 | Project Management |
| | Roebling St, Brooklyn NY | Mixed Use | 40,469.00 | Construction and Project Management |
| | Wyckoff Ave, Brooklyn NY | Commercial | 38,794.00 | Construction and Management |
| | | | | |
| Current Projects | | | | |
| | Wyckoff Ave, Queens NY | Commercial | 48,762.00 | Management |
| | Irving Ave, Queens NY | Commercial | 19,116.00 | Construction and Management |
| | Thames St, Brooklyn | Mixed Use | 63,630.00 | Management |
| | South 2nd St, Brooklyn NY | Mixed Use | 33,570.00 | Construction and Management |
| | Marcy Ave, Brooklyn NY | Commercial | 57,483.00 | Management |
| | Melrose St, Brooklyn | Commercial | 13,497.00 | Construction |
| | East 40th St, Manhattan NY | Hotel | 3,092.00 | Construction |
| | Troutman St, Brooklyn NY | Commercial | 57,067.00 | Management |
| | 1st Ave, Manhattan NY | Mixed Use | 5,215.00 | Construction and Management |
| | Albany Ave, Brooklyn NY | Commercial | 35,775.00 | Management |
| | North 13th St, Brooklyn NY | Commercial | 68,750.00 | Management |
| | | | | |
| Chapter 11 Project | | | | |
| | Howard Ave, Brooklyn NY | Residential | 12,792.00 | Management |

**Date:**      4/18/2023
**Re:**        **Irving Oak Management Construction Report**
**Address:**   **541 West 21st Street**
               **New York, NY**



As the owner's representative now hired for 541 West 21st Street, we have to date done the following.

- Secured the building via 24-hour electronic surveillance

- Daily walk thru inspections on all major mechanical systems and general building requirements

- Reviewed all current building plans filed with the building department

- We signed up for all city alerts to keep us updated on any developments

- Reviewed all open permits and sign off requirements. Hired experienced expeditor (BAC Group) that reviewed and provided a full comprehensive list of requirements to TCO

- Inspected the current job conditions versus what's needed to complete for TCO

- We will be hiring the well experienced "Mabe Group" as the new Licensed GC to oversee the job and signoffs. We have worked with the Mabe Group on 7 prior and current projects.

- Reviewed the open contracts and list of current subs and then reached out to them for possible continuation and completion. The existing elevator company Kone Inc. has provided us with a cost & timeline for both pre-inspection and sign-off & inspection. The existing Fire alarm company, Cross fire has presented a cost and timeline to complete the job and sign offs

- For all non-cooperating current subs, we sent out "job completion requirements" for bidding to alternate high quality subs to replace and supersede the current sub.

- Upon working on this job, we came across many open violations on the site which we will be hiring a company for, and we'll work on dismissing it and negotiating on the penalties.

**Date:** 4/18/2023
**Re:** Irving Oak Management Construction Report
**Address:** 541 West 21st Street
New York, NY



IRVING OAK
MANAGEMENT

This all is a positive step forward for the project and will help to guarantee that the job is done properly and efficiently. We will also help to ensure that the project is completed on time and within budget. This will be beneficial for all parties involved, as it will reduce the costs and time associated with the project.

We are pleased with the progress we have made and are confident that we will achieve our desired results. Our team is committed to making sure that the job is done to the highest standards and that all parties involved are satisfied with the results. We are looking forward to seeing the successful completion of this project.

The estimated timeline to complete, from approval of funding (pending DOB Holdups) is 3-5 months

- Please find below the list of open items to complete. These items are part of the above-mentioned cost requirements.

**541 West 21 Street** — block # 693, lot # 10, bin # 1012308

**Alt 2 MH**

| Alt 2 Permit# | Item | Status | Responsibility |
|---|---|---|---|
| 100310940 | PW-1 to withdraw application once alt 1 is signed off in alt 1 | Pending | owner to sign |

**Alt 3-BPP**

| Alt 3 Permit # | Item | Status | Responsibility |
|---|---|---|---|
| 140881589 | Reinstate application | Pending | BAC to coordinate |
| | street tree receipt | Pending | BAC to receive |
| | BPP-11 | Pending | Applicant to sign |
| | Final Survey | Pending | surveyor |
| | Street tree signoff | Pending | BAC to coordinate |
| | BPP photos | Pending | Owner to provide |
| | BPP inspection | Pending | BAC to coordinate |

**Shed**

| Alt 3 Permit# | Item | Status | Responsibility |
|---|---|---|---|
| 104734904 | PW-1 to withdraw application once alt 1 is signed off in dob now | Pending | owner to sign |

**Shed**

| Alt 3 Permit# | Item | Status | Responsibility |
|---|---|---|---|
| 140136984 | PW-1 to withdraw application once alt 1 is signed off in dob now | Pending | owner to sign |

**Alt 2-Sprinkler Removal**   2 OT-GC

| ALT 2 Permit # | Item | Status | Responsibility |
|---|---|---|---|
| 104755506 | PW-1 to withdraw, application 103679397 is signed off | Pending | owner to sign |

**Structure advertising sign**

| Alt 3 Permit# | Item | Status | Responsibility |
|---|---|---|---|
| | | | |

**Date:** 4/18/2023
**Re:** Irving Oak Management Construction Report
**Address:** 541 West 21st Street
New York, NY



IRVING OAK
MANAGEMENT

**Structure advertising sign**

| ALT 3 Permit # | Item | Status | Responsibility |
|---|---|---|---|
| 121443410 | PW-1 to withdraw application with inspection | Pending | BAC to coordinate |

**Alt 1 OT-MH-PL-ST-SP-SD-** 1 OT-MH-PL-ST-SD-SP

| Alt 1 Permit # | Item | Status | Responsibility |
|---|---|---|---|
| | Final TR-1 & 8 | Pending | Special Inspector to sign |
| | TR-2 report | Pending | Special Inspector to sign |
| | Sustainable roof zone form signoff by examiner | Pending | Architect to sign |
| | Final Survey | Pending | Surveyor |
| | AI-1 to certify survey | Pending | Architect to  sign |
| | BPP signoff | Pending | BAC to coordinate |
| | Street tree signoff | Pending | BAC to coordinate with Parks Department |
| | EN2 | Pending | Special Inspector to sign |
| | Final Construction Inspection and signoff | Pending | BAC to coordinate |
| | Final Plumbing Inspection and signoff | Pending | Master Plumber |
| 121204990 | Final Elevator Inspection and signoff | Pending | Elevator Co |
| | Final Electrical Inspection and signoff | Pending | Licensed Electrician |
| | Sprinkler signoff | Pending | Master Plumber |
| | Standpipe signoff | Pending | Fire suppression contractor |
| | Cost affidavit PW-3 | Pending | Architect & owner to sign |
| | Verify tax lot | Pending | BAC to receive |
| | Topo Stamp | Pending | BAC to receive |
| | Violation Search | Pending | to be received by final CO |
| | Doc 7 is disapproved, approve or withdraw | Pending | BAC to coordinate |
| | Approve doc # 9 | Pending | BAC to coordinate |
| | FA signoff  do  you have an application? | Pending | FA CO |
| | Smoke detector letter | Pending | Electrician to sign |
| | DOB NOW review | Pending | DOB NOW applications to be signed off |

**Alt 2 OT-GC**

| DOB NOW permit# | Item | Status | Responsibility |
|---|---|---|---|
| | Cost affidavit PW-3 | Pending | Architect & owner to sign |
| 123804491 | final TR-1 & tr8 | Pending | special inspector |
| | EN2 | Pending | Special Inspector to sign |

**Date:**   4/18/2023
**Re:**   **Irving Oak Management Construction Report**
**Address:**   **541 West 21ˢᵗ Street**
**New York, NY**



**Structure advertising sign**

| | Alt 3 Permit# | | Status | Responsibility |
|---|---|---|---|---|
| | 121446765 | PW-1 to withdraw application with inspection | Pending | BAC to coordinate |

**Sign**

| | Alt 3 Permit # | Item | Status | Responsibility |
|---|---|---|---|---|
| | 121446809 | PW-1 to withdraw application with inspection | Pending | BAC to coordinate |

**Sign**

| | Alt 3 Permit # | Item | Status | Responsibility |
|---|---|---|---|---|
| | 121446818 | PW-1 to withdraw application with inspection | Pending | BAC to coordinate |

**Sign**

| | Alt 3 Permit # | Item | Status | Responsibility |
|---|---|---|---|---|
| | 121446792 | PW-1 to withdraw application with inspection | Pending | BAC to coordinate |

**DOB applications**

| PMM | | Status |
|---|---|---|
| | M00602528 | |
| Sprinkler | M00266884 | permit issued |

| Construction Equipment | | |
|---|---|---|
| M00492920 | construction fence | permit issued |
| M00492910 | shed | permit issued |
| B00631849 | shed | permit issued |
| M00338172 | shed | permit issued |
| M00405073 | scaffold | permit issued |
| M00329624 | scaffold | permit issued |

| Elevator Applications | | |
|---|---|---|

| M00329268 | Permit issued | |
|---|---|---|

| Electrical Applications | | |
|---|---|---|
| M00490016 | shed wiring | permit issued |
| M00385306 | shed wiring | permit issued |
| M00328203 | elevator electrical | permit issued |
| M00308687 | general wiring | permit issued |
| M00258523 | general wiring | permit issued |
| M00250317 | lighting sidewalk shed | permit issued |

| Violations | | |
|---|---|---|
| 41 DOB violations | owners responsibility | |
| 12 Ecb violations | owners responsibility | |

**EXHIBIT C**

## CONSTRUCTION CONTRACT

This Construction Contract (the "Contract" or "Agreement") is made as of May 01, 2023 (the "Effective Date") by and between Erbo Properties of 541 West 21 Street New York, NY 10011, and Irving Oak Management of 670 Myrtle Ave, #165, Brooklyn, New York 11205.

Irving Oak Management desires to provide Construction services to Erbo Properties and Erbo Properties desires to obtain such services from Irving Oak Management.

THEREFORE, in consideration of the mutual promises set forth below, the parties agree as follows:

1.      DESCRIPTION OF SERVICES. Beginning on May 01 , 2023, Irving oak Management will provide to Erbo Properties the services described in the attached Exhibit A (collectively, the "Services").

2.      SCOPE OF WORK. Irving Oak Management will provide all services, materials and labor for the construction of Commercial described in the attached Exhibit A at the property of Erbo Properties located at:
541 West 21 Street, New York, New York, 10011 hereinafter referred to as ("Worksite").
Obtaining TCO and maintaining structure conduct Tenant improvements.

This includes building and construction materials, necessary labor and site security, and all required tools and machinery needed for completion of construction.

Irving Oak Management is only responsible for furnishing any building improvements related to construction of the structure, but not related to landscaping, grading, walkways, painting, sewer or water systems, steps, driveways, patios and aprons, etc., unless they are specifically agreed to in writing.

3.      PLANS, SPECIFICATIONS AND CONSTRUCTION DOCUMENTS. Erbo Properties will make available to Irving Oak Management all plans, specifications, drawings, blueprints, and similar construction documents necessary for Irving Oak Management to provide the Services described herein. Any such materials shall remain the property of Erbo Properties. Irving Oak Management will promptly return all such materials to Erbo Properties upon completion of the Services.

4.      COMPLIANCE WITH LAWS. Irving oak Management shall provide the Services in a workmanlike manner; and in compliance with all applicable federal, state and local laws and regulations, including, but not limited to all provisions of the Fair Labor Standards Act, the Americans with Disabilities Act, and the Federal Family and Medical Leave Act.

5.      WORK SITE. Erbo Properties warrants that Erbo Properties owns the property herein described and is authorized to enter into this contract. Prior to the start of construction, Erbo Properties shall provide an easily accessible building site, which meets all zoning requirements for the structure, and in which the boundaries of Erbo Properties' property will be clearly identified by stakes at all corners of the property. Erbo Properties shall maintain these stakes in proper position throughout construction.

6.      MATERIALS AND/OR LABOR PROVIDED. Irving oak Management shall provide to Erbo Properties a List of each and every party furnishing materials and/or labor to Irving Oak Management as part of the Services, and the dollar amounts due or expected to be due with regards to provision of the Services herein described. This List of materials and/or labor shall be attached to this Agreement as Exhibit B. Irving Oak Management declares, under the laws of the State of New York, that this List is a true and

correct statement of each and every party providing materials and/or labor as part of the Services herein described.

Irving Oak Management may substitute materials only with the express written approval of Erbo Properties, provided that the substituted materials are no lesser quality than those previously agreed upon by Erbo Properties and Irving Oak Management.

7.    PRICE. $60,000 for managing all construction coordination (as per separately quoted job budget) and overseeing TCO completion and managing of property for 8 months starting May 1 2023

8.    PAYMENT. Payment shall be made to Irving Oak Management, Brooklyn, New York 11205.

In addition to any other right or remedy provided by law, if Erbo Properties fails to pay for the Services when due, Irving Oak Management has the option to treat such failure to pay as a material breach of this Contract, and may cancel this Agreement and/or seek legal remedies.

9.    TERM. Irving Oak Management shall commence the work within 30 days of Court Approval of Appointment and shall complete the work within 6 months providing receiving TCO signoffs from City.

Upon completion of the project, Erbo Properties agrees to sign a Notice of Completion within ten (10) days after the completion of the contract. If the project passes its final inspection and Erbo Properties does not provide the Notice, Irving Oak Management may sign the Notice of Completion on behalf of Erbo Properties.

10.    PERMITS. Erbo Properties shall obtain all necessary building permits. Irving Oak Management shall apply for and obtain any other necessary permits and licenses required by the local municipal/county government to do the work, the cost thereof shall be included as part of the Payment to Irving Oak Management under this Contract.

11.    INSURANCE. Before work begins under this Contract, Irving Oak Management shall furnish certificates of insurance to Erbo Properties substantiating that Irving Oak Management has placed in force valid insurance covering its full liability under the Workers' Compensation laws of the State of New York and shall furnish and maintain general liability insurance, and builder's risk insurance for injury to or death of a person or persons, and for personal injury or death suffered in any construction related accident and property damage incurred in rendering the Services.

Upon termination of this Contract, Irving Oak Management will return to Erbo Properties all records, notes, documentation and other items that were used, created, or controlled by Irving Oak Management during the term of this Contract.

12.    WARRANTY. Irving Oak Management shall provide its services and meet its obligations under this Contract in a timely and workmanlike manner, using knowledge and recommendations for performing the services which meet generally acceptable standards in Irving Oak Management's community and region, and will provide a standard of care equal to, or superior to, care used by service providers similar to Irving Oak Management on similar projects. Irving Oak Management shall construct the structure in conformance with the plans, specifications, and any breakdown and binder receipt signed by Irving Oak Management and Erbo Properties.

13.    FREE ACCESS TO WORKSITE. Erbo Properties will allow free access to work areas for workers and vehicles and will allow areas for the storage of materials and debris. Driveways will be kept clear for the movement of vehicles during work hours. Irving Oak Management will make reasonable efforts to

protect driveways, lawns, shrubs, and other vegetation. Irving Oak Management also agrees to keep the Worksite clean and orderly and to remove all debris as needed during the hours of work in order to maintain work conditions which do not cause health or safety hazards.

14.    UTILITIES. Erbo Properties shall provide and maintain water and electrical service, connect permanent electrical service, gas service or oil service, whichever is applicable, and tanks and lines to the building constructed under this Agreement after an acceptable cover inspection has been completed, and prior to the installation of any inside wall cover. Erbo Properties shall, at Erbo Properties' expense, connect sewage disposal and water lines to said building prior to the start of construction, and at all times maintain sewage disposal and water lines during construction as applicable. Erbo Properties shall permit Irving Oak Management to use, at no cost, any electrical power and water use necessary to carry out and complete the work.

15.    INSPECTION. Erbo Properties shall have the right to inspect all work performed under this Contract. All defects and uncompleted items shall be reported immediately. All work that needs to be inspected or tested and certified by an engineer as a condition of any government departments or other state agency, or inspected and certified by the local health officer, shall be done at each necessary stage of construction and before further construction can continue. All inspection and certification will be done at Erbo Properties' expense.

16.    DEFAULT. The occurrence of any of the following shall constitute a material default under this Contract:

    a.  The failure of Erbo Properties to make a required payment when due.

    b.  A lawsuit is brought on any claim, seizure, lien or levy for labor performed or materials used on or furnished to the project by either party, or there is a general assignment for the benefit of creditors, application or sale for or by any creditor or government agency brought against either party.

    c.  The failure of Erbo Properties to make the building site available or the failure of Irving Oak Management to deliver the Services in the time and manner provided for in this Agreement.

17.    REMEDIES. In addition to any and all other rights a party may have available according to law of the State of New York, if a party defaults by failing to substantially perform any provision, term or condition of this Contract (including without limitation the failure to make a monetary payment when due), the other party may terminate the Contract by providing written notice to the defaulting party. This notice shall describe with sufficient detail the nature of the default. The party receiving said notice shall have 10 days from the effective date of said notice to cure the default(s) or begin substantial completion if completion cannot be made in 10 days. Unless waived by a party providing notice, the failure to cure or begin curing the default(s) within such time period shall result in the automatic termination of this Contract.

18.    FORCE MAJEURE. If performance of this Contract or any obligation thereunder is prevented, restricted, or interfered with by causes beyond either party's reasonable control ("Force Majeure"), and if the party unable to carry out its obligations gives the other party prompt written notice of such event, then

the obligations of the party invoking this provision shall be suspended to the extent necessary by such event. The term Force Majeure shall include, but not be limited to, acts of God, plague, epidemic, pandemic, outbreaks of infectious disease or any other public health crisis, including quarantine or other employee restrictions, fire, explosion, vandalism, storm, casualty, illness, injury, general unavailability of materials or other similar occurrence, orders or acts of military or civil authority, or by national emergencies, insurrections, riots, or wars, or strikes, lock-outs, work stoppages. The excused party shall use reasonable efforts under the circumstances to avoid or remove such causes of non-performance and shall proceed to perform with reasonable dispatch whenever such causes are removed or ceased. An act or omission shall be deemed within the reasonable control of a party if committed, omitted, or caused by such party, or its employees, officers, agents, or affiliates.

19.    ENTIRE AGREEMENT. This Contract contains the entire Agreement of the parties, and there are no other promises or conditions in any other contract or agreement whether oral or written concerning the subject matter of this Agreement. Any amendments must be in writing and signed by each party. This Agreement supersedes any prior written or oral agreements between the parties.

20.    SEVERABILITY. If any provision of this Agreement will be held to be invalid or unenforceable for any reason, the remaining provisions will continue to be valid and enforceable. If a court finds that any provision of this Agreement is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision will be deemed to be written, construed, and enforced as so limited.

21.    AMENDMENT. This Agreement may be modified or amended in writing, if the writing is signed by each party.

22.    GOVERNING LAW. This Agreement shall be construed in accordance with and governed by the laws of the State of New York, without regard to any choice of law provisions of New York or any other jurisdiction.

23.    NOTICE. Any notice or communication required or permitted under this Agreement shall be sufficiently given if delivered in person or by certified mail, return receipt requested, to the address set forth in the opening paragraph or to such other address as one party may have furnished to the other in writing.

24.    WAIVER OF CONTRACTUAL RIGHT. The failure of either party to enforce any provision of this Contract shall not be construed as a waiver or limitation of that party's right to subsequently enforce and compel strict compliance with every provision of this Contract.

25.    SIGNATORIES. This Agreement shall be signed by Erno Bodek on behalf of Erbo Properties and by Lazer Fried on behalf of Irving Oak Management and shall be effective as of the date written below.

Owner:
Erbo Properties

By: _____      Date: 4/3/23

Contractor:
Irving Oak Management

By: _____      Date:  4/3/23

Date: **4/18/2023**
Re: **Irving Oak Management Construction Report**
Address: **541 West 21st Street**
**New York, NY**



IRVING OAK
MANAGEMENT

- Below please find the table of the current completion requirement and estimated cost to complete. There are a few line items still in the progress of being modified & completed

| Open Line Item | New Vendor | Estimated Cost |
|---|---|---|
| | | |
| **Hard Costs** | - | - |
| **General Contractor** | Mabe Group Inc | 10% Total HC |
| **Electric** | Brooklyn Power | $48,000.00 |
| **Plumbing** | - | - |
| Plumbing / Roughing/ Sprinkler System | S&Z Mechanics | $40,000.00 |
| Water tank, Roof Tower | We Tank NY | $19,725.00 |
| Standpipe/ sprinkler annual inspection | Be Safe | $1,600.00 |
| **Fire alarm** | Cross Fire | $19,000.00 |
| **Elevators** | - | - |
| Basic operation/signoff | Kone | $11,000.00 |
| Fire curtain | ModernfoldStyles | TBA |
| **HVAC** | Epic Air | TBA |
| **Oil tank** | RSK & Environmental Oil | $1,000.00 |
| **Canopy (Revision in progress)** | | TBA |
| **Generators** | | TBA |
| **TR inspections** | Regional Inspections | $8,000.00 |
| **Cleaning** | *Estimated* | $15,000.00 |
| **Locksmith** | Lokt | $2,476.91 |
| | | |
| **Soft Costs** | - | - |
| **Owners Rep and Project Management for 8 months** | Irving Oak | $60,000.00 |
| Expediting | BAC Group | $42,000.00 |
| **Violations** | - | - |
| Violations Removal | TBA | TBA |
| Violation Fees | NYC City Pay | TBA |
| | | |
| **10% Contingency** | | $26,780.19 |
| | | |
| **Total Hard Cost** | | **$165,801.91** |
| **Total Soft Cost** | | **$102,000.00** |
| | | |
| **Total Project Cost** | | **$294,582.10** |

Date:       4/18/2023
Re:         **Irving Oak Management Construction Report**
Address:    **541 West 21st Street**
            **New York, NY**



Below please find the timeline for project completion and TCO.



**EXHIBIT D**

## [EXT] Project Costs - 541 West 21 Street - partial TCO

Zourigui, Jennifer B. <jzourigui@ingramllp.com>
Thu 4/13/2023 9:28 AM
To: Scott Markowitz <SMarkowitz@tarterkrinsky.com>

📎 3 attachments (7 MB)
Project Costs.pdf; GC's January Summary.pdf; GC's February Summary.pdf;

Scott,

Per your request, attached is an estimate of costs to get to a partial TCO. This assumes and includes payment of the Lien amount. A breakdown of the lien amount is included at the end. The Project Costs document also refers to General Conditions for January and February/March which were not included in the Lien amount. I'm attaching summaries for those as well.

Please let me know if you have any questions. And please keep me posted as to your discussions with the Mezz Lender.

Thanks,
Jennifer

**Jennifer B. Zourigui** | Partner


INGRAM
YUZEK · GAINEN · CARROLL · BERTOLOTTI · LLP

150 East 42nd Street, 19th Floor
New York, New York 10017
212.907.9614 | jzourigui@ingramllp.com

Confidentiality Notice:
The information contained in this e-mail and any attachments to it is privileged, confidential, and protected from disclosure. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or duplication of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately, and delete it from your network server and/or hard drive.

Please visit our web site at...
www.ingramllp.com

## Project Costs

**Costs to get a partial TCO.** After **$2,202,185.04** Lien amount paid in full.
This will include the Cellar, 1st Floor Lobby, 6th Floor, 8th Floor & Roof.

- HVAC & BMS Controls (Alpine) – $125,000
    - o The BMS controls vendor will request an additional $75,000 because he will have to hire another electrician to run conduit and wires for their controls work.
    - o Alpine has requested $50,000 to remobilize to complete and startup equipment.

- Plumber (Emerald) - $110,000
    - o The owners rep (Higher Ground) promised to pay Emerald directly for repair work associated with charges that would be charged to the owners contractors. He has approx. $60,000 in open tickets. He will also need $50,000 to remobilize and update his permits, fees & signoffs.

- Electrician (Recon) - $175,000
    - o CWC has a contract with them for $143,950 to finish the Nova contract work. Estimating will have at least another $25k in unforeseen. Such as equipment not wired correctly.

- Fire Alarm (Cross Fire) - $75,000
    - o CWC has a contract with them for $59,736 to finish what they didn't finish under Nova's contract work. This contract includes using the material onsite. CWC not sure what is there anymore since it can't access the building.

- Elevator (Kone) – $30,000
    - o They are owed $6,000 in operator time used for Fire Alarm inspections prior to the shut down. CWC will need more operator time to get into the shaft to get final sign-off.

- Water Tank (Rosenwach) - $10,000
    - o CWC will need them to come out again and do some additional work for BMS and Fire Alarm to get signed off.

- Carpenter (Hudson) - $50,000
    - o They also have approx. $20,000 in open tickets that the owners rep (Higher Ground) was going to pay directly because they were items associated for the contracts it carried. He requested $30,000 to remobilize.

**Total - $575,000 additional for subcontractors to complete work to get the partial TCO.**

- General Conditions (CWC) – **$340,000**
    - o In addition to the months of GC's included in the lien (listed above in #1) CWC also had 2 more months of costs for $92,609.82. (See GC's Summary 1 and GC's Summary 2 - these were also sent to the owners rep (Higher Ground).) 80% of this is for site security.
    - o CWC estimates that it will need approximately 3 months to get partial TCO once everyone is remobilized. It will take 6 weeks to get FDNY in to reinspect Fire Alarm. Once that is done, CWC will have some start-up and balancing to perform for other items needed for TCO.

- o Total of $240,000 for 3 months of GC's to get partial TCO. The GC's will include the following:
    - Superintendent (50%)
    - PM (100%)
    - Laborer (50%)
    - Security (3pm – 7am)
    - Permits (DOT & AHV)
    - Carting

**\*\*\* Total - $915,000 additional to get partial TCO including subcontractor trades costs & General Conditions for 3 months (including the $93k not included in the lien)**

**\*\*\*\* Grand Total - $3,117,185.04**
**$2,202,185.04 Lien amount and $915,000 additional to get partial TCO**

Lien Breakdown:

– The breakdown of the Lien for **$2,202,185.04**
- March 2022 thru Sept 2022 submitted unpaid requisitions = Total - $1,581,512.84
    - o Subcontractors - $1,151,889.40
    - o CWC (GC's) - $429,623.44
- Remaining retainage = Total - $372,155.57
- Additional GC's = Total - $187,891.11 ($66,947.82 is for project security)
    - o Aug - $58,073.80
    - o Sept - $50,413.84
    - o Oct - $30,435.45
    - o Nov - $48,968.02
- Unsigned Subcontractor Change Orders (work completed) = Total $60,626.12

\*\*\*So, of the **$2,202,185.04** Lien $1,584,671.09 is for the subcontractors and $617,514.55 is for the GC's (CWC).

2

**EXHIBIT E**

**From:** Ray Cecora <ray@541w21.com>
**Date:** November 16, 2022 at 10:02:05 AM EST
**To:** Rachel Bodek <rachelmazel@gmail.com>
**Subject: Fwd: Cost to complete; 541 West 21st**

Existing Total Loan facilities/Sources; $62,000,000.00

G4; 50,574,188.80
SME; $4,486,407.34
Total drawn to date; $55,060,596.14
Balance remaining of the $62mm Sources; $6,939,403.86 (ear marked and budgeted for TI & LC in the G4 loan)
Cost to Complete including TI & LC Below : (see spreadsheet for further detail re the Hard Costs to complete)

| | |
|---|---|
| Developer Fee: | $ 800,000.00 |
| Remaining Access Agreements Costs: | $ 83,573.50 |
| Insurance: | $ 135,400.21 |
| R.E. Taxes - July 2022, Jan 2023, July 2023: | $ 1,042,101.00 |
| Tenant Improvement Allowance: | $ 4,457,650.00 |
| Interest Reserve: | $ - |
| Leasing Commission: | $ 2,140,000.00 |
| **Soft Costs to Complete (lines above):** | **$ 8,658,724.71** |
| | |
| **Remaining Hard Costs to Complete (lines below)** | **$ 2,373,589.41** |
| | |
| Cauldwell Balance to finish: | $ 128,785.33 |
| Cauldwell Retainage | $ 1,212,070.76 |
| Total Remaining to Cauldwell: | $ 1,340,856.09 |
| | |
| Total Remaining to All other Trades: | $ 1,032,733.32 |
| | |
| **TOTAL Remaining projected hard and soft costs, itemized:** | **$ 11,032,314.12** |

**If we take the existing balance owed to lenders $55mm and add the Cost to Complete of $11mm which includes TI/LC and taxes through 2023, the cost basis is $66mm. $66mm does not include Interest Reserve and any other transaction costs.