**TARTER KRINSKY & DROGIN LLP**
*Attorneys for ERBO Properties LLC, KOVA 521, LLC and Gold Mezz LLC*
*Debtors and Debtors-in-Possession*
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
Scott S. Markowitz, Esq.
smarkowitz@tarterkrinsky.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 11 |
| | : | |
| ERBO PROPERTIES LLC, et al.[1] | : | Case No.: 23-10210 (LGB) |
| | : | (Jointly Administered) |
| Debtors. | : | |

------------------------------------------------------------ x

## DEBTORS' JOINT CONSOLIDATED PLAN OF REORGANIZATION

---

[1] The Debtors are ERBO Properties LLC (EIN x9179), Case No.: 23-10210, with a mailing address at 551 Bedford Avenue, Brooklyn, NY 11211; KOVA 521, LLC (EIN x9972), Case No.: 23-10211, with a mailing address at 551 Bedford Avenue, Brooklyn, NY 11211; and Gold Mezz LLC (EIN x4741), Case No.: 23-10212, with a mailing address at 551 Bedford Avenue, Brooklyn, NY 11211.

# TABLE OF CONTENTS

I INTRODUCTION ..................................................................................................................1

II DEFINITIONS, INTERPRETATION AND RULES OF CONSTRUCTION ........................1

    A. **Definitions** ................................................................................................................1

    B. **Interpretation, Rules of Construction, Computation of Time, and Choice of Law** ................9

III DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS ........................11

    **Class 1 – NYC Secured Tax Claim** ....................................................................11

    **Class 2 – G-4 Secured Claim** ............................................................................11

    **Class 3 – Holders of Valid Mechanics Liens Against the Property** ....................11

    **Class 4 – SME Secured Claim** ..........................................................................11

    **Class 5 - Priority Tax Claims** ............................................................................11

    **Class 6 – General Unsecured Claims** ................................................................12

    **Class 7 – Equity Interests** ................................................................................12

IV TREATMENT OF CLASSES OF CLAIMS, EQUITY INTERESTS, AND UNCLASSIFIED CLAIMS OR INTERESTS ..................................................................................12

    A. **Unclassified Claims** ..........................................................................................12

        1. **United States Trustee Fees** ..................................................................12

        2. **Administrative Claims** ........................................................................12

    **Class 1 - NYC Secured Tax Claim** ....................................................................14

    **Class 2 – G-4 Secured Claim** ............................................................................14

    **Class 3 – Holders of Valid Mechanics Liens Against the Property** ....................14

    **Class 4 – SME Secured Claim** ..........................................................................15

    **Class 5 - Priority Tax Claims** ............................................................................15

    **Class 6 – General Unsecured Claims** ................................................................16

    **Class 7 – Equity Interests** ................................................................................16

    B. **Controversy with Respect to Impairment** ..........................................................16

V TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ................16

    A. **Treatment of Executory Contracts and Unexpired Leases** ..................................16

VI MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN ........................17

    A. **Source of Payments** ..........................................................................................17

    B. **Sale of the Property** ..........................................................................................17

    C. **Substantive Consolidation** ................................................................................17

    D. **Transfer Taxes** ................................................................................................17

    E. **Management of Reorganized Debtors** ................................................................18

VII CONDITIONS PRECEDENT TO THE OCCURRENCE OF THE EFFECTIVE DATE ........18

VIII OBJECTIONS TO CLAIMS AND PROCEDURES FOR RESOLVING AND TREATING CLAIMS ..18

    A. **Objections to Claims** ........................................................................................18

    B. **Resolution of Disputed Claims** ..........................................................................19

    C. **Estimation** ......................................................................................................19

    D. **Allowance of Disputed Claims** ..........................................................................19

IX PROVISIONS CONCERNING CAUSES OF ACTION ..................................................19

i

**X  PROVISIONS GOVERNING DISTRIBUTIONS** ...................................................................**20**

    **A. Disbursing Agent** .................................................................................................**20**

    **B. Unclaimed Distributions** ....................................................................................**20**

    **C. Professional Fees and Expenses** .......................................................................**21**

    **D. Rounding** ..............................................................................................................**21**

**XI  PROVISIONS CONCERNING DISCHARGE AND PROPERTY** ..............................**21**

**XII  CRAM DOWN** .............................................................................................................**23**

**XIII  RETENTION OF JURISDICTION** .........................................................................**23**

    **A. Retained Jurisdiction** .........................................................................................**23**

**XIV  NOTICES** ....................................................................................................................**25**

**XV  MISCELLANEOUS PROVISIONS** ...........................................................................**25**

    **A. Applicable Law** ....................................................................................................**25**

    **B. Unenforceability of Particular Provisions** ......................................................**26**

    **C. Revocation and Withdrawal Prior to Confirmation** ......................................**26**

    **D. Amendment and Modification** ...........................................................................**26**

    **E. Post-Confirmation Professional Fees** ...............................................................**26**

    **F. Successors and Assigns** .......................................................................................**27**

    **G. Binding Effect of Plan** ........................................................................................**27**

089896\1\170215787.v2

I

## INTRODUCTION

Erbo Properties LLC ("**Erbo**"), Gold Mezz LLC ("**Gold Mezz**") and Kova 521, LLC ("**Kova**"), debtors and debtors-in-possession (collectively, the "**Debtors**"), hereby propose the following consolidated joint plan of reorganization (the "**Plan**"). Reference is made to the Debtors' disclosure statement dated May 15, 2023 (the "**Disclosure Statement**"), for a discussion of the Debtors' history, business, and results of operations along with a summary and analysis of this Plan and certain related matters.

All holders of Claims and Equity Interests entitled to vote to accept or reject the Plan are encouraged to review the Disclosure Statement and this Plan before voting. To the extent the Plan is inconsistent with the Disclosure Statement, the terms of the Plan will govern. No materials other than the Disclosure Statement and related exhibits and schedules have been approved by the United States Bankruptcy Court for the Southern District of New York for use in soliciting acceptances or rejections of the Plan.

II

## DEFINITIONS, INTERPRETATION AND RULES OF CONSTRUCTION

A.    **Definitions**

In addition to those capitalized terms that are defined in other Articles of the Plan, the following terms (that appear in this Plan as capitalized terms) have the following meanings as used in this Plan.

1.    "**Administrative Claim**" means any cost or expense of administration of the Chapter 11 Case allowed under Section 503(b) of the Bankruptcy Code that is entitled to priority under Section 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the Debtors' estates, operating the Debtors' business,

and all compensation and reimbursement of expenses of professionals allowed by the Bankruptcy Court under §§ 330, 331 and 503 of the Bankruptcy Code.

**2.** **"Allowed Amount"** shall mean the dollar amount of an Allowed Claim.

**3.** **"Allowed Claim"** or **"Allowed"** in connection with a Claim means a Claim against the Debtors to the extent that the Claim is allowed pursuant to this Plan, or (a) a proof of such Claim was (i) timely Filed; or (ii) deemed timely Filed under applicable law or by reason of an order of the Bankruptcy Court; and (b)(i) after the applicable deadlines for filing an objection to the Claim in accordance with this Plan has passed, the Debtors have not Filed an objection or any such objection is withdrawn following the expiration of such applicable deadline(s); (ii) the Claim is allowed (but only to the extent allowed) by a Final Order, or (iii) the Claim is a Claim that was Scheduled by the Debtors in accordance with Rule 1007 of the Bankruptcy Rules and not listed as disputed, contingent or unliquidated.  Prior to the time that an objection has been or may be timely Filed, for the purposes of this Plan, a Claim shall be considered an Allowed Claim if (a) the Claim has been Scheduled; (b) the amount of the Claim specified in any Filed proof of claim equals or is less than the amount of the Claim Scheduled by the Debtors as other than disputed, contingent or unliquidated; (c) the priority of the Claim specified in any Filed proof of claim is of an equal or more junior priority than the priority of the Claim Scheduled by the Debtors; and (d) the Claim has not been Scheduled as disputed, contingent or unliquidated.

**4.** **"Bankruptcy Code"** means title 11 of the United States Code, as the same was in effect on the Petition Date, as amended from time to time.

**5.** **"Bankruptcy Court"** means the United States Bankruptcy Court for the Southern District of New York, or such other Court as may hereafter have competent jurisdiction over the Chapter 11 Cases.

089896\1\170215787.v2

6.    **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure, the local Bankruptcy Rules of the United States Bankruptcy Court for the Southern District of New York, and the guidelines and requirements of the Office of the United States Trustee for the Southern District of New York, as each may from time to time be in effect and applicable to the Reorganization Case and proceedings therein.

7.    **"Bar Date"** means (i) May 5, 2023 other than with respect to Governmental Units, and (ii) August 14, 2023 with respect to Governmental Units, which were the deadlines to file proofs of Claim in this Chapter 11 Case as provided by order of the Bankruptcy Court, or (iii) any other deadline to file proof of claims set by the Bankruptcy Court or agreed to by the Debtors.

8.    **"Bodek Family"** means Erno, Lazzer Bodek, and Rachel Bodek.

9.    **"Business Day"** means any day other than a Saturday, Sunday, or a "legal holiday" as such term is defined in Bankruptcy Rule 9006(a).

10.    **"Cash"** means lawful currency of the United States and cash equivalents.

11.    **"Cauldwell"** means Cauldwell Wingate Company, LLC, Erbo's construction manager with respect to the Property.

12.    **"Chapter 11"** means Chapter 11 of the Bankruptcy Code.

13.    **"Chapter 11 Cases"** means the Debtors' Chapter 11 Cases for reorganization under Chapter 11 of the Bankruptcy Code, Case No. 23-10210 (LGB) entitled *In re: Erbo Properties LLC*, Case No. 23-10211 (LGB) entitled *In re: KOVA 521, LLC* and Case No. 23-10212 (LGB) entitled *In re: Gold Mezz LLC, n*ow pending in the Bankruptcy Court.

14.    **"Claim"** means a claim against the Debtors or their property as defined in Section 101(5) and construed in Section 102(2) of the Bankruptcy Code.

15.    **"Claimant"** means the holder of a Claim.

16.    **"Claims Register"** means the list of Claims filed against the Debtor as maintained by the Clerk of the Court.

17.    **"Class"** means a group of Claims or Equity Interests consisting of Claims or Interests which are substantially similar to each other as classified pursuant to this Plan.

18.    **"Clerk of the Court"** means the Clerk of the United States Bankruptcy Court for the Southern District of New York located at One Bowling Green, New York, New York 10004.

19.    **"Closing"** means the closing of the Sale of the Property after the Confirmation Date.

20.    **"CMA"** means the Construction Management Agreement between Erbo and Cauldwell.

21.    **"Confirmation"** means entry, within the meaning of Bankruptcy Rules 5003 and 9021, of an order of the Bankruptcy Court confirming this Plan in accordance with the provisions of the Bankruptcy Code.

22.    **"Confirmation Date"** means the date upon which the Confirmation Order is entered by the Bankruptcy Court.

23.    **"Confirmation Hearing"** means the hearing to be held by the Bankruptcy Court pursuant to Section 1128 of the Bankruptcy Code to consider Confirmation of this Plan.

24.    **"Confirmation Order"** means the order of the Bankruptcy Court confirming this Plan pursuant to Section 1129 of the Bankruptcy Code.

25.    **"Creditor"** means the holder of a Claim against any of the Debtors.

26.    **"Debtors"** mean Erbo, Kova and Gold Mezz.

27.    **"Debtors-in-Possession"** means Erbo, Kova and Gold Mezz. as debtors-in-possession in their Chapter 11 Cases.

4

28.    "**Deficiency Amount**" shall mean, with respect to a Claim, the amount, if any, by which the Allowed Amount of the Claim exceeds the amount of such Claimant's Secured Claim.

29.    "**Deficiency Claim**" shall mean any Unsecured Claim against the Debtors representing a Deficiency Amount.

30.    "**Disbursing Agent**" shall mean Reorganized Debtor, or such other entity as may be designated by the Bankruptcy Court or by the Plan.

31.    "**Disclosure Statement**" means the Debtors' Disclosure Statement to accompany the Plan, and all annexes, schedules or exhibits attached thereto or referenced therein, that relate to the Plan and that is approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

32.    "**Disputed Claim**" means a Claim or a request for payment of an administrative expense, as the case may be, as to which: (a) a proof of claim or a request for payment of an administrative expense, as the case may be, has been filed with the Court or deemed filed under applicable law or order of the Court; (b) an objection has been timely filed; and (c) such objection has not been (i) withdrawn, (ii) overruled or denied in whole or part by a Final Order, or (iii) granted in whole or in part by a Final Order.  Prior to the time that an objection has been or may be timely filed, for purposes of this Plan, a Claim shall be considered a Disputed Claim: (i) to the extent and only to the extent the amount of the Claims specified in the proof of claim exceeds the amount of any corresponding Claim listed by the Debtors in its Schedules; (ii) any corresponding Claim listed by the Debtors in their Schedules as disputed, contingent or unliquidated, irrespective of the amount scheduled; or (iii) if no corresponding Claim has been listed by the Debtors in their Schedules.

33.    "**Distribution Date**" means any Business Day on or after the Effective Date on or by which Distributions of Cash are made pursuant to this Plan.

34.     **"Distributions"** means the payments of Cash to creditors and others (e.g., Professional Persons) pursuant to and required by the Plan and, as context requires, issuance of Equity Interests.

35.     **"DMA"** means the Development Management Agreement between Erbo and Higher Ground.

36.     **"Effective Date"** means the first business day after the Confirmation Order becomes a Final Order.

37.     **"Erno"** means Erno Bodek.

38.     **"Equity Interest"** means the rights and interests of a shareholder or membership interest in the Debtors.

39.     **"Equity Interest Holder(s)"** means the holder(s) of an Equity Interest.

40.     **"Estate"** means the estate created in a Chapter 11 Case under §541 of the Bankruptcy Code.

41.     **"Executory Contract"** means each agreement, contract or unexpired lease to which any Debtor is a party and which is executory within the meaning of §365 of the Bankruptcy Code.

42.     **"Final Order"** means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction, as entered on the docket of such court which, not having been reversed, modified, amended, or stayed, and the time for seeking review of which by way of appeal, petition for certiorari, motion for reargument and rehearing or other review having expired, and as to which no appeal, petition for certiorari, motion for reargument and rehearing or other review is pending, has become conclusive of all matters adjudicated thereby and is in full force and effect.

43.     **"G-4"** means G-418190, LLC, the holder of the Loan secured by a first mortgage on the Property.

44.    **"G-4 Claim"** means the secured Proof of Claim filed by G-4 denominated as Claim No. 16-1 on the Claims Register in the amount of $56,787,700.04.

45.    **"Gold Mezz"** means Gold Mezz LLC, the mezzanine borrower.

46.    **"Governmental Unit"** shall have the meaning set forth at §101(27) of the Bankruptcy Code.

47.    **"Higher Ground"** means Higher Ground 541 LLC, Erbo's development manager with respect to the Property.

48.    **"Insider"** shall have the meaning set forth in Section 101(31) of the Bankruptcy Code.

49.    **"Irving"** means Irving Oak Management LLC.

50.    **"Interest"** shall mean Equity Interest.

51.    **"KOVA"** means KOVA 521, LLC.

52.    **"Lien"** means any charge against, or interest in, property to secure payment of a debt or performance of an obligation and includes, without limitation, any judicial lien, security interest, mortgage, deed of trust or statutory lien.

53.    **"Loan"** means collectively the acquisition loan in the amount of $23,400,000, the building loan in the amount of $22,178,168, the original project loan in the amount of $10,421,832 and the additional project loan in the amount of $1,250,000 made by G-4 to Erbo.

54.    **"Mabe"** means Mabe Group Inc.

55.    **"Mezzanine Loan"** means the mezzanine loan made by SME to Gold Mezz in November 2021 secured by the membership interest in Kova in the amount of $4.7 million.

56.    **"NYC"** means the City of New York.

57.    **"NYC Secured Tax Claim"** means the proof of claim filed by NYC denominated as Claim No. 12-1 on the Claims Register in the amount of $821,792.61

7

58.     **"Person"** shall have the meaning ascribed to such term in §101(41) of the Bankruptcy Code.

59.     **"Petition Date"** means February 13, 2023, the date the Debtors filed their voluntary Chapter 11 petitions with the Bankruptcy Court.

60.     **"Plan"** means this Plan of Reorganization, as amended or modified, from time to time, and all attachments and exhibits thereto.

61.     **"Priority Claim"** means any Allowed Claim entitled to priority pursuant to Section 507(a) of the Bankruptcy Code, other than (a) an Administrative Claim, or (b) a Priority Tax Claim.

62.     **"Priority Tax Claim"** means a Claim by a Governmental Unit entitled to priority pursuant to any provision of Section 507(a)(8) of the Bankruptcy Code.

63.     **"Project"** means the redevelopment of the Property.

64.     **"Pro Rata"** means with respect to the holder of an Allowed Unsecured Claim or Equity Interest of a particular Class, the same proportion that the amount of such Allowed Claim or Equity Interest bears to the aggregate amount of all Allowed Claims or Equity Interests of such Class.

65.     **"Property"** means the real property known as and located at 541 West 21st Street, New York, NY 10011 and all improvements thereon.

66.     **"Professional"** or **"Professional Person"** means all attorneys, accountants, consultants or other Persons retained under an order of the Court on behalf of the Debtors in accordance with Section 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered pursuant to Sections 327, 328, 330 and 331 of the Bankruptcy Code.

67.     **"Reorganized Debtors"** shall mean the Debtors on or after the Effective Date.

68.     **"Sale"** means the sale of the Property pursuant to §1123(a)(5)(D) of the Bankruptcy Code by the Reorganized Debtors subsequent to the Effective Date.

089896\1\170215787.v2

69.     **"Sale Proceeds"** shall mean the net sale proceeds from the Sale.

70.     **"SME"** means the 541 W 21 SME LLC, the holder of the Mezzanine Loan.

71.     **"SME Claim"** means the secured Proof of Claim filed by SME denominated as Claim No. 17-1 on the Claims Register in the amount of $7,582,658.14.

72.     **"Schedules"** means the Schedules of Assets and Liabilities and the Statement of Financial Affairs filed by the Debtors.

73.     **"Secured Claim"** means a Claim that is either (a) secured by a valid perfected and enforceable Lien on property of the Debtors that is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, but only to the extent of the value as set forth in an Allowed Claim or as determined by Final Order in accordance with Section 506(a) or 1111(b) of the Bankruptcy Code, of the interest of the claimant in the Debtor's property securing such Claim, or (b) for which the holder asserts a valid setoff under Section 553 of the Bankruptcy Code.  To the extent that the amount claimed by the holder of a Secured Claim exceeds the value (as determined by the Court pursuant to Section 506 of the Bankruptcy Code and Bankruptcy Rules 3012, 7001 and 9014 or as otherwise agreed to by the holder of such Claim and the Debtors) of the property securing such Claim, the holder of such Secured Claim shall have an Unsecured Claim equal to the amount of the excess.

74.     **"Secured Tax Claim"** means a Tax Claim that is a Secured Claim.

75.     **"Unsecured Claim"** means a Claim against the Debtors that is not an Administrative Claim, Priority Tax Claim, Priority Claim or Secured Claim.

**B.**     **Interpretation, Rules of Construction, Computation of Time, and Choice of Law**

In the event of a conflict between this Plan and the Disclosure Statement, the contents of this Plan shall control over the contents of the Disclosure Statement.  The provisions of the Confirmation Order shall control over the contents of this Plan.

089896\1\170215787.v2

Any term used in this Plan that is not otherwise defined in this Plan either in Article II(A) (Definitions) or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning assigned to that term in (and shall be construed in accordance with the rules of construction under) the Bankruptcy Code or the Bankruptcy Rules. Without limiting the foregoing, the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply.  The definitions and rules of construction contained herein shall also apply to the Disclosure Statement and to the exhibits of this Plan except to the extent expressly so stated in the Disclosure Statement or in each particular exhibit to this Plan.

The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to this Plan as a whole and not to any particular Article, Section, Subsection, or Clause contained in this Plan.  The word "including" shall mean "including, without limitation" and shall be interpreted in accordance with Section 102(3) of the Bankruptcy Code.

Any reference in this Plan to an existing document or exhibit means such document or exhibit, as it may have been amended, restated, modified, or supplemented as of the Effective Date.

Captions and headings to Articles, Sections, Subsections, and Clauses in this Plan are inserted for convenience of reference only and shall neither constitute a part of this Plan nor in any way affect the interpretation of the provisions hereof.

Whenever from the context it is appropriate, each term stated in either the singular or the plural shall include both the singular and the plural.

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

All exhibits to this Plan are incorporated into this Plan and shall be deemed to be included in this Plan, regardless of when they are filed.

089896\1\170215787.v2

Subject to the provisions of any contract, certificate, bylaws, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with federal law, including the Bankruptcy Code and Bankruptcy Rules.

**III**

**DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS**

A designation of the Classes of Claims and Equity Interests under this Plan is set forth below. Administrative Claims (including fees and expenses of Professional Persons allowed in a Final Order of the Bankruptcy Court) and statutory fees due to the United States Trustee have not been classified, in accordance with Bankruptcy Code § 1123(a)(1). A Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and is classified in a different Class to the extent that any remainder of the Claim or Equity Interest qualifies within the description of such different Class.

**Class 1 – NYC Secured Tax Claim**

Class 1 consists of the Allowed NYC Secured Tax Claim.

**Class 2 – G-4 Secured Claim**

Class 2 consists of the Allowed G-4 Secured Claim.

**Class 3 – Holders of Valid Mechanics Liens Against the Property**

Class 3 consists of all holders of Allowed Claims with valid Mechanics Liens against the Property.

**Class 4 – SME Secured Claim**

Class 4 consists of the Allowed SME Secured Claim.

**Class 5 - Priority Tax Claims**

Class 5 consists of Allowed Priority Tax Claims.

089896\1\170215787.v2

**Class 6 – General Unsecured Claims**

Class 6 consists of the holders of Allowed Unsecured Claims.

**Class 7 – Equity Interests**

Class 7 consists of the Debtors' Equity Interests holders.

IV

**TREATMENT OF CLASSES OF CLAIMS, EQUITY INTERESTS, AND UNCLASSIFIED CLAIMS OR INTERESTS**

A.    **Unclassified Claims**

1.    **United States Trustee Fees**

All fees payable by the Debtors under Section 1930 of Title 28 of the United States Code that have not been paid prior to the Effective Date shall be paid by the Debtors, the Reorganized Debtors or the Disbursing Agent on the Effective Date. In addition, the Debtors, or any successor thereto by merger, consolidation or otherwise, on or after the Effective Date, shall be liable for, and the Disbursing Agent on behalf of the Reorganized Debtors shall pay, such fees until the entry of a final decree in this case or until the case is converted or dismissed. The Disbursing Agent shall file post-confirmation operating reports with the Bankruptcy Court and the United States Trustee until a final decree is entered.

2.    **Administrative Claims**

a.    **Generally**

Except as provided otherwise in this Article IV of this Plan, each holder of an Allowed Administrative Claim (*including*, without limitation, the fees and expenses incurred by Professional Persons) allowed by a Final Order of the Bankruptcy Court) and Allowed Administrative Claims arising under Bankruptcy Code §503(b)(9)) shall be paid 100%, in Cash, (i) on the later to occur of the Effective Date or the date the order allowing such Administrative Claim becomes a Final Order, or (ii) upon such other terms as may exist in the Debtor's or the

12

Reorganized Debtors' ordinary course of business; or (iii) upon such terms as may exist pursuant to Order of the Bankruptcy Court or an agreement between the holder of an Allowed Administrative Claim and the Debtors or Reorganized Debtors.

### b.  **Accounts Payable and Other Obligations Which Arose Post-Petition**

Administrative Claims representing obligations incurred by the Debtors or the Reorganized Debtors after the Confirmation Date may be paid by the Reorganized Debtors in the ordinary course of business and without further Bankruptcy Court approval.

### c.  **Professional Fees and Expenses**

As more fully set forth herein, after the Confirmation Date, the Reorganized Debtors shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of the Professional Persons employed by the Reorganized Debtors in connection with the implementation and consummation of this Plan, the claims reconciliation process and any other matters as to which the Reorganized Debtors shall engage or retain such Professional Persons.  The fees and expenses of such Professional Persons shall be submitted monthly to the Reorganized Debtors by such Professional Persons in the form of a detailed invoice and shall be paid by the Disbursing Agent within ten (10) Business Days after such submission.

If the Reorganized Debtors dispute the reasonableness of any such invoice within the lesser of (a) ten (10) days of receipt of such proposed fees or (b) fourteen (14) days after transmittal to the Reorganized Debtors, the Disbursing Agent shall timely pay the undisputed portion of such invoice, and the Reorganized Debtors, or the affected Professional Person may, after attempting to resolve the dispute, submit such dispute to the Bankruptcy Court for a determination of the reasonableness of such invoice.

13

**Class 1 - NYC Secured Tax Claim**

Class 1 consists of the Allowed NYC Secured Tax Claim. The City of New York filed a proof of claim for $821,792.61, as a Secured Claim, designated Claim No. 12-1.

The Allowed NYC Secured Tax Claim plus statutory interest pursuant to section 511 of the Bankruptcy Code, shall be paid, in Cash, no later than two (2) years from the Effective Date from the Sale Proceeds.

Class 1 is impaired and is entitled to vote for or against the Plan.

**Class 2 – G-4 Secured Claim**

Class 2 consists of the Allowed G-4 Secured Claim. G-4 filed a proof of claim in the amount of $56,787,700.04, as a Secured Claim, designated as Claim No. 16-1.  G-4 shall be paid 100%, plus simple interest at a rate 7% per annum from the Effective Date until G-4's Class 2 Claim is fully paid.  G-4 shall be paid from the Sale Proceeds no later than two (2) years from the Effective Date. No payments shall be made to G-4 between the Effective Date and the Closing of the Sale of the Property. G-4 shall retain its Lien on the Property to the same extent and priority as existed on the Petition Date. Any Deficiency Claim held by G-4, in connection with the Allowed G-4 Secured Claim, shall be treated as a Class 6 General Unsecured Claim.

If the Debtors and G-4 are unable to agree to the amount of G-4 Allowed Secured Claim and the value of the Property, the Bankruptcy Court will determine the value of the Property and the amount of G-4's Allowed Class 2 Secured Claim.

Class 2 is impaired, and G-4 may vote to accept or reject the Plan.

**Class 3 – Holders of Valid Mechanics Liens Against the Property**

Class 3 consists of the Holders of valid Mechanics Liens against the Property. All Holders of Allowed Class 3 Claims with a valid Mechanics Lien filed against the Property shall be paid 100% of the Allowed Amount of such Claims without interest no later than two (2) years from the

14

Effective Date from the Sale Proceeds. In the event, the Property is determined to have a value

less than the combined total of the Class 1 and Class 2 Claims, all Holders of Class 3 Claims shall

be treated as Class 6 Claims.

Class 3 is impaired and is entitled to vote for or against the Plan.

### Class 4 – SME Secured Claim

Class 4 consists of the Allowed SME Secured Claim. SME filed a proof of claim against all

three Debtors in the amount of $7,582,658.14, as a Secured Claim.  The Allowed SME Secured

Claim shall be paid 100%, in Cash, plus post Effective Date interest at 10% until the Class 4 Claim

is paid from the Sale Proceeds no later than two (2) years from the Effective Date.  No payments

shall be made to SME between the Effective Date and the Closing of the Sale of the Property. SME's

Lien on KOVA's Equity Interest shall be released and transferred to a Lien on the Reorganized

Debtors' Equity Interests.

Class 4 is impaired and is entitled to vote for or against the Plan.

### Class 5 - Priority Tax Claims

Class 5 consists of the Allowed Priority Tax Claims. Each holder of an Allowed Priority

Tax Claim shall be paid 100%, in Cash, with interest at the statutory rate, pursuant to Bankruptcy

Code § 1129(a)(9)(C), in equal monthly payments, no later than two (2) years from the Effective

Date.

The holder of an Allowed Priority Tax Claim shall not be entitled to receive any payment

on account of interest, or on account of any penalty arising with respect to or in connection with

the Allowed Priority Tax Claim, except to the extent Allowed as a part of an Allowed Priority Tax

Claim pursuant to § 507(a)(2) of the Bankruptcy Code.

Class 5 is not impaired under the Plan and is deemed to have voted in favor of the Plan.

**Class 6 – General Unsecured Claims**

Class 6 consists of the holders of Allowed Unsecured Claims.

Allowed Class 6 Claims (including any Deficiency Claim held by G-4 and/or Holders of Class 3 Claims) shall be paid 100% of their Allowed Claims without interest no later than two (2) years from the Effective Date from the Sale Proceeds.

The Debtors project the amount of Allowed Class 6 - General Unsecured Claims will be approximately $2.5 million excluding any Deficiency Claims.

Class 6 is impaired and is entitled to vote on the Plan.

**Class 7 – Equity Interests**

Class 7 consists of the following. Erbo's sole Equity Interest Holder is Kova. Kova's sole Equity Interest Holder is Gold Mezz. Gold Mezz is owned by the Bodek Family. There will be no Distribution to any of the Equity Interests Holders unless the Property is sold for a price greater than the amount of all Allowed Claims in Classes 1 through 6. The Equity Interests in the Reorganized Debtors (as substantively consolidated) shall be pledged to SME in place of SME's pledge of Kova's Equity Interest.

**B.    Controversy with Respect to Impairment**

In the event of a controversy as to whether a Claimant or holder of an Equity Interest is impaired, the Court shall, after notice and a hearing, determine such controversy.

**V**

**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**A.    Treatment of Executory Contracts and Unexpired Leases**

As of the Confirmation Date, unless rejected by a notice of rejection filed and served by the Debtors at least 10 days prior to the initial Confirmation Hearing, any executory contract or unexpired leases entered into by the Debtors that has not yet been (a) assumed and assigned, or (b)

16

assumed, shall be deemed to be assumed by the Debtors as of the Confirmation Date. The Confirmation Order shall be deemed an order under § 365(a) of the Bankruptcy Code assuming any such executory contracts or leases.

## VI

## MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

### A.    Source of Payments

The Plan will be funded from the Sale of the Property and any monies contributed from the Bodek Family or from exit financing.

### B.    Sale of the Property

Pursuant to section 1123(a)(5)(D) of the Bankruptcy Code, the Reorganized Debtors shall list the Property for Sale after obtaining the partial TCO. The Property will be sold either leased or vacant depending upon market feedback. The Reorganized Debtors intend to retain SVN| Angelic, as a broker to market and sell the Property.

### C.    Substantive Consolidation

The Plan contemplates and is predicated upon entry of a Final Order of the Bankruptcy Court providing for the substantive consolidation of all three Debtors. On the Effective Date, all three Debtors shall be substantively consolidated. Case law has approved, under certain circumstances, the consolidation of Chapter 11 Debtor entities.  As a result of the substantive consolidation: (i) all inter-company claims will be charged off, written off, or otherwise extinguished; (ii) all assets and liabilities of Erbo, Kova and Gold Mezz will be merged or treated as though they were merged; and (iii) any obligation of Erbo, Kova and Gold Mezz will be deemed to be obligations of the substantive consolidated estates.

### D.    Transfer Taxes

There will be no transfer taxes owed on any transaction in connection with or in

089896\1\170215787.v2

contemplation of the Plan, including the Sale of the Property to the fullest extent permitted by Section 1146(a) of the Bankruptcy Code.  This includes any New York City Real Property Transfer Tax or New York State Real Estate Transfer Tax which may be triggered by the Sale of the Property, as well as any recording tax imposed under Article 11 of the New York State Tax Law or any similar law triggered by the purchaser placing a mortgage on the Property at the Closing to fund the purchase of the Property.

**E.**     **Management of Reorganized Debtors**

The Reorganized Debtors will be managed by Erno Bodek. The Debtors believe the management of the Reorganized Debtors is consistent with the interests of Creditors and Equity Interest Holders.

## VII

## CONDITIONS PRECEDENT TO THE OCCURRENCE OF THE EFFECTIVE DATE

The Effective Date will occur immediately after the Confirmation Order shall become a Final Order.

## VIII

## OBJECTIONS TO CLAIMS AND PROCEDURES
## FOR RESOLVING AND TREATING CLAIMS

**A.**     **Objections to Claims**

All objections to Claims shall be filed by the Debtors and served on the holders of such Claims within thirty (30) days after the Confirmation Date. If the objection to a proof of Claim that relates to a Disputed Claim has not been filed by the applicable date, the Claim to which the proof of Claim relates shall be treated as an Allowed Claim for purposes of Distributions under the Plan.  For the avoidance of doubt, no objection shall be made to the G-4 Claim or SME Claim, which shall be deemed Allowed as set forth in the Plan.

**B.**    **Resolution of Disputed Claims**

Disputed Claims shall be divided into two (2) portions: the "non-disputed portion" and the "disputed portion." The Reorganized Debtors shall pay the non-disputed portion of a Disputed Claim in accordance with Plan provisions for payment of a Claim in its Class. There will be no reserve for Disputed Claims.

**C.**    **Estimation**

The Debtors or the Reorganized Debtors may, at any time, request the Court estimate any Disputed Claim pursuant to § 502(c) of the Bankruptcy Code regardless of whether the Debtors or the Reorganized Debtors have previously objected to such Claim. The Court will retain jurisdiction to estimate any Claim at any time, including during litigation concerning any objection to such Claim.

**D.**    **Allowance of Disputed Claims**

If, on or after the Effective Date, any Disputed Claim becomes an Allowed Claim, the Disbursing Agent shall, within thirty (30) days after the date on which the Claim becomes an Allowed Claim, or as soon thereafter as is practicable, pay to the holder of such Allowed Claim the amount of Cash that such holder would have been entitled to receive under the Plan if such disputed portion of such Claim had been an Allowed Claim on the Effective Date.

**IX**

**PROVISIONS CONCERNING CAUSES OF ACTION**

Except as otherwise provided herein or in any contract, instrument, release or other agreement entered into in connection with the Plan, the Reorganized Debtors shall retain, and may, with its determination of the best interest of the estate, enforce any claims, rights and causes of action that have been or may be commenced by the Debtors including, but not limited to, those arising under §§ 544 through 550 of the Bankruptcy Code.

19

The Debtors have performed a preliminary analysis of possible clawback claims, including voidable preferential transfers, and has concluded that there were no payments made within 90 days of the Petition Date that the Debtors should seek to avoid and recover. The Debtors are not aware of any potential fraudulent transfers of the Debtors' property prior to the Petition Date.

Erbo believes it holds valid claims and/or offsets against Cauldwell and Higher Ground based upon the substantial cost overruns and delay in completing the redevelopment of the Property. Erbo will attempt to reach a global resolution of these claims as well as the Allowed Amount of the Claims asserted by Cauldwell and Higher Ground. Erbo retains all rights to assert its claims and/or its counterclaims against Higher Ground and Cauldwell arising from the DMA and the CMA. Similarly, Erbo retains the right to assert claims against G-4 based upon G-4's refusal to fund the full amount of the Loan proceeds.

## X

## PROVISIONS GOVERNING DISTRIBUTIONS

### A.    Disbursing Agent

The Reorganized Debtors shall act as Disbursing Agent under the Plan. Erno Bodek shall be in charge of all matters relating to the Distributions required by the Plan. In the event the Disbursing Agent changes prior to the entry of an order of final decree closing the Debtors' Chapter 11 cases, the Bankruptcy Court and the United States Trustee shall be notified in writing of the identity and address of the new Disbursing Agent.

### B.    Unclaimed Distributions

Distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth on the proofs of Claim filed by such holders unless no Proof of Claim has been filed, in which case then to the address set forth on the Schedules filed with the Court, unless superseded by a written notice to the Disbursing Agent providing actual knowledge to the Disbursing Agent

20

of a change of address.

If any holder's Distribution is returned as undeliverable, no further Distributions to such holder shall be made unless and until the Disbursing Agent is notified in writing of such holder's then current address, at which time all Distributions shall be made to such holder, without interest.

**C.    Professional Fees and Expenses**

Each of the Professionals requesting compensation for services rendered and reimbursements disbursed in the Chapter 11 Cases shall file an application for an allowance of final compensation and reimbursement of expenses in the Chapter 11 Cases incurred through the Confirmation Date within forty five (45) days after entry of the Confirmation Order.

**D.    Rounding**

Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect the rounding of such fraction to the nearest whole cent with the one-half cent being rounded up to the nearest whole cent.

**XI**

**PROVISIONS CONCERNING DISCHARGE AND PROPERTY**

**1.    Vesting of Property**

As of the Effective Date, all of the Debtors' assets shall vest in the Reorganized Debtors, free and clear of all Liens, Claims and Interests, except for the Claims and Liens of G-4, SME, NYC and the Allowed Class 3 Claim Holders and as otherwise provided herein or the Confirmation Order.

**2.    Discharge of all Claims**

Except as otherwise provided by the Plan, pursuant to § 1141 of the Bankruptcy Code, the Confirmation Order shall act as a discharge of all Claims that arose prior to the Confirmation Date, other than the Claims and Liens of G-4, SME, NYC and the Allowed Class 3 Claimholders.

21

### 3. **Injunction and Stays**

**Except with respect to the Claims and Liens of G-4, SME, NYC and Allowed Class 3 Claimholders or as otherwise expressly provided herein and related documents, all persons or entities who have held, hold or may hold claims against the Debtors are, with respect to any such Claims and Liens, permanently enjoined on and after the Confirmation Date from: (a) commencing, conducting or continuing in any manner directly or indirectly, any suit, action or other proceeding of any kind (including without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors or the Reorganized Debtors, any of its property, or any direct or indirect transferee of any property of, or direct or indirect successor-in-interest to, any of the foregoing persons or entities, (b) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, whether directly or indirectly, of any judgment, award, decree or order against the Debtors or the Reorganized Debtors, any of its property, or any direct or indirect transferee of any property of, or direct or indirect successor-in-interest to, any of the foregoing persons or entity, or any property of any such transferee or successor, (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance or lien of any kind against the Debtors or the Reorganized Debtors, any of their property, or any direct or indirect transferee of any property of, or successor-in-interest to, any of the foregoing persons or entities, and (d) asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation due the Debtors or the Reorganized Debtors, any of their property, or any direct or indirect transferee of any property of, or successor-in-interest to, any of the foregoing persons or entities.**

### 4. **Exculpation**

To the extent permitted under 11 U.S.C. § 1125(e), neither the Debtors, G-4, nor any of

their respective officers, directors, employees and other agents, financial advisors, attorneys and accountants, or their respective successors in interest, shall have any liability to any holder of any Claim or Interest for any act or omission in connection with or arising out of the negotiation, preparation and pursuit of Confirmation of the Plan, the consummation of the Plan, the administration of the Plan, the Chapter 11 Cases or the property to be distributed under the Plan except for liability based upon willful misconduct or gross negligence as finally determined by the Bankruptcy Court.  For the avoidance of doubt, nothing in this Plan shall limit the liability of attorneys to their respective clients pursuant to Rule 1.8(h) of the New York Rules Professional Conduct.

## XII

## CRAM DOWN

In the event Classes of Claims do not vote to accept this Plan, the Debtors reserve their right to invoke the "Cram Down" provisions of Bankruptcy Code §1129(b).  In the event the Debtors exercise such right, the Debtors reserve the right to modify this Plan to the extent, if any, the confirmation of this Plan under §1129(b) of the Bankruptcy Code requires modification.

## XIII

## RETENTION OF JURISDICTION

**A.    Retained Jurisdiction**

From and after the Confirmation Date and until such time as the Chapter 11 Cases are closed, the Bankruptcy Court shall retain jurisdiction over the Debtors' Chapter 11 Cases for all purposes permitted under the Code, including, without limitation, the following:

1.    To hear and determine any dispute relating to the Plan, including without limitation those with respect to the implementation and execution of the Plan and the acts, transactions, and occurrences contemplated thereby.

089896\1\170215787.v2

2.      To hear and determine all issues arising out of any motions, applications, adversary proceedings or contested or litigated matters in the Chapter 11 Cases pending at the Confirmation Date or commenced thereafter.

3.      To order recovery of any assets of the Debtors, whether title is presently held in the name of the Debtors or a third party.

4.      To hear and determine motions to approve the Sale of the Property of the Debtors under § 1123(a)(5)(D) of the Bankruptcy Code and/or the rejection or assumption of executory contracts under § 365 of the Bankruptcy Code.

5.      To hear and determine all issues relating to any purchases, sales or contracts made or undertaken by the Debtors during the pendency of the Chapter 11 Cases.

6.      To hear and determine all objections to Claims and all controversies concerning classification, allowance, valuation, liquidation, estimation, or satisfaction of Claims.

7.      To make orders allowing amendment of the schedules filed in the Chapter 11 Cases for any purpose including, without limitation, to prosecute objections to Claims not previously listed as disputed, contingent or unliquidated.

8.      To hear and determine all applications for compensation of professional and similar fees and reimbursement of expenses arising out of or relating to the case or any Claims.

9.      To hear and determine any and all motions to abandon property of the Debtors' Estates.

10.     To make such other orders or give such directions as permitted by § 1142 of the Bankruptcy Code.

11.     To consider and order any modifications or amendments requested to the Plan.

12.     To remedy any defect or omission or reconcile any inconsistency in the Plan or the Confirmation Order in such manner as may be necessary or desirable to carry out the purposes and

24

intent of the Plan.

13.    To make all orders necessary or appropriate to carry out the provisions of the Plan.

14.    To enforce all orders previously entered by the Bankruptcy Court.

15.    To determine such other matters as may be provided for in the Confirmation Order or as may be authorized under the Bankruptcy Code.

## XIV

## **NOTICES**

Except as otherwise herein provided, all notices required to be made in or under this Plan shall be in writing and shall be mailed by registered or certified mail, return receipt requested:

If to the Debtors or the Disbursing Agent:

> Erbo Properties LLC, et al.
> 551 Bedford Avenue
> Brooklyn, NY 11211
> Attn: Erno Bodek

With a copy to:    Tarter Krinsky & Drogin LLP
1350 Broadway, 11th Floor
New York, New York 10018
Attn: Scott S. Markowitz, Esq.

Any person may change the address at which he, she or it is to receive notices for purposes of this Plan by sending written notice pursuant to this provision to the Debtors (or the Disbursing Agent) as provided in this Article.

## XV

## **MISCELLANEOUS PROVISIONS**

A.    **Applicable Law**

Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights and obligations arising under this Plan are governed under New York Law.

089896\1\170215787.v2

B.       **Unenforceability of Particular Provisions**

Should any provision in this Plan be determined to be unenforceable in whole or in part, such determination shall in no way limit or affect the enforceability and operative effect of the remainder of this Plan, including any of its provisions to the extent not determined to be unenforceable.

C.       **Revocation and Withdrawal Prior to Confirmation**

The Debtors reserve the right to revoke and withdraw this Plan prior to the Confirmation Date.  If the Debtors revoke or withdraw this Plan, or if the Confirmation Date or the Effective Date does not occur, then this Plan shall be deemed null and void, and in such event nothing contained herein shall be deemed to constitute a waiver or release of any claim by or against the Debtors, or any other entity or to prejudice in any manner the rights of the Debtors, or any entity in any further proceedings involving the Debtors.

D.       **Amendment and Modification**

The Debtors may propose amendments to, or modification of, this Plan at any time at or before Confirmation.  After Confirmation of this Plan, the Debtors may, with the approval of the Bankruptcy Court and so long as it does not materially adversely affect the treatment of any Claim or Equity Interest, amend this Plan to remedy any defect or omission or reconsider any inconsistencies in this Plan or in the order of Confirmation as necessary or desirable to carry out the purpose and effect of this Plan.

E.       **Post-Confirmation Professional Fees**

Subsequent to the Confirmation Date, the Debtors or the Reorganized Debtors shall be authorized and directed to pay reasonable professional fees and expenses relating to the post-confirmation administration of its estate and this Plan incurred by its Professionals.

089896\1\170215787.v2

**F.**    **Successors and Assigns**

The rights, duties and obligations of any Person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

**G.**    **Binding Effect of Plan**

Upon the Effective Date, all of the provisions of this Plan shall be binding on the Debtors, on all holders of Claims and Liens, on all holders of Equity Interests, and on all other entities who are affected (or whose interests are affected) in any manner by this Plan.

Dated:  New York, New York
       May 15, 2023

ERBO PROPERTIES LLC, ET AL.                TARTER KRINSKY & DROGIN LLP
*Debtors and Debtors-in-Possession*        *Attorneys for Erbo Properties LLC, Kova 521,*
                                           *LLC and Gold Mezz LLC*
                                           *Debtors and Debtors-in-Possession*


By:  /s/ Erno Bodek                        By:  /s/ Scott S. Markowitz
    Erno Bodek                                 Scott S. Markowitz, Esq.
    Manager                                    1350 Broadway, 11th Floor
                                               New York, New York 10022
                                               (212) 216-8000
                                               smarkowitz@tarterkrinsky.com

27