**TARTER KRINSKY & DROGIN LLP**
*Attorneys for ERBO Properties LLC, KOVA 521, LLC and Gold Mezz LLC*
*Debtors and Debtors-in-Possession*
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
Scott S. Markowitz, Esq.
smarkowitz@tarterkrinsky.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------- x
In re:                                                      :
                                                            :    Chapter 11
                                                            :
ERBO PROPERTIES LLC, et al.[1]                              :    Case No.: 23-10210 (LGB)
                                                            :    (Jointly Administered)
                                      Debtors.              :
----------------------------------------------------------- x

### DEBTORS' DISCLOSURE STATEMENT TO ACCOMPANY THEIR JOINT CONSOLIDATED PLAN OF REORGANIZATION DATED MAY 15, 2023

THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN.  ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT.  THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE COURT.

---

[1] The Debtors are ERBO Properties LLC (EIN x9179), Case No.: 23-10210, with a mailing address at 551 Bedford Avenue, Brooklyn, NY 11211; KOVA 521, LLC (EIN x9972), Case No.: 23-10211, with a mailing address at 551 Bedford Avenue, Brooklyn, NY 11211; and Gold Mezz LLC (EIN x4741), Case No.: 23-10212, with a mailing address at 551 Bedford Avenue, Brooklyn, NY 11211.

# TABLE OF CONTENTS

I INTRODUCTION .................................................................................................................................1

CAUTIONARY STATEMENT ...........................................................................................................3

    A.    Summary of Classification and Treatment ...........................................................4

II VOTING INSTRUCTIONS AND CONFIRMATION OF PLAN ..................................................6

    A.    Manner of Voting on Plan ....................................................................................6
    B.    Claim Holders Entitled To Vote ..........................................................................7
    C.    Classes Impaired Under the Plan .........................................................................8
    D.    Vote Required For Class Acceptance ...................................................................8

III THE DEBTORS AND THEIR OPERATIONS .............................................................................8

    A.    The Property ..........................................................................................................8
    B.    The G-4 Loan(s) ....................................................................................................9
    C.    The Redevelopment of the Property and the Mezzanine Loan ...........................9
    D.    The UCC Sale .....................................................................................................11
    E.    Value of the Property ..........................................................................................12

IV THE CHAPTER 11 CASES ........................................................................................................13

    1.    The Chapter 11 Filings .......................................................................................13
    2.    Retention of Debtors' Counsel ...........................................................................13
    3.    Motion to Reject the DMA and the CMA ..........................................................13
    4.    Motion to Enter into Agreements with Irving and Mabe to Complete Construction of the Property ......14
    5.    Filed and Scheduled Claims ...............................................................................14

V SUMMARY OF THE PLAN .........................................................................................................17

    A.    General ................................................................................................................17

        1.    Brief Explanation of Chapter 11 ........................................................................17
        2.    Acceptance of the Plan .......................................................................................19
        3.    Classification of Claims and Equity Interests Generally ....................................19

    B.    Classification and Treatment of Claims and Equity Interests Under the Plan ...........20

        1.    Unclassified Claims ............................................................................................21
        2.    Class 1 – NYC Secured Tax Claim......................................................................23
        3.    Class 2 – G-4 Secured Claim .............................................................................23
        4.    Class 3 – Holders of Valid Mechanics Liens Against the Property ....................24
        5.    Class 4 - SME Secured Claim.............................................................................24
        6.    Class 5 - Priority Tax Claims ..............................................................................25
        7.    Class 6 – General Unsecured Claims ..................................................................25
        8.    Class 7 – Equity Interests....................................................................................25

    C.    Condition to and Means for Consummation of the Plan......................................26

        1.    Condition Precedent to Occurrence of the Effective Date ..................................26
        2.    Funding of the Plan .............................................................................................26
        3.    Sale of the Property.............................................................................................26
        4.    Substantive Consolidation ..................................................................................27

    D.    Objections to Claims ..........................................................................................27

i

E.    Resolution of Disputed Claims ........................................................................27
F.    Estimation ........................................................................................................27
G.    Allowance of Disputed Claims .........................................................................28
H.    Vesting of Property ...........................................................................................28
I.    Certain Other Provisions of The Plan ...............................................................28
  1.    Discharge of all Claims ..........................................................................28
  2.    Injunction and Stays ...............................................................................28
  3.    Exculpation .............................................................................................29
  4.    Causes of Action .....................................................................................30
  5.    Disbursing Agent ....................................................................................31
  6.    Payments by Cash ...................................................................................31
  7.    Unclaimed Distributions .........................................................................31
  8.    Executory Contracts and Unexpired Leases ...........................................31
  9.    Professional Fees and Expenses ..............................................................32
  10.   Retention of Jurisdiction .........................................................................32
  11.   Management of the Reorganized Debtors ................................................34

VI CONFIRMATION PROCEDURES ....................................................................................34
  A.    Solicitation of Votes; Acceptance ....................................................................34
  B.    Confirmation Hearing .......................................................................................35
  C.    Best Interests Test/Liquidation Analysis ..........................................................37
  D.    Risk Factors ......................................................................................................39

VII "CRAM DOWN" ...............................................................................................................39

VIII VOTING INSTRUCTIONS ..............................................................................................40

IX CERTAIN FEDERAL INCOME TAX CONSIDERATIONS ............................................40

X CONCLUSION ......................................................................................................................41

089896\1\170215790.v3

# I
## INTRODUCTION

On February 13, 2023 (the "**Petition Date**"), Erbo Properties LLC ("**Erbo**"), KOVA 521, LLC ("**Kova**") and Gold Mezz ("**Gold Mezz**") (collectively, the "**Debtors**") each filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") with the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), Case No. 23-10210 (LGB); Case No.: 23-10211 (LGB), and Case No.: 23-10212 (LGB).

Pursuant to § 1125 of the Bankruptcy Code, the Debtors submit this disclosure statement (the "**Disclosure Statement**") relating to the Debtors' consolidated joint plan of reorganization dated May 15, 2023 (the "**Plan**").

The Disclosure Statement is being provided to all known creditors and other parties in interest in order to provide "adequate information" to enable them to make an informed decision to accept or reject the Plan. You should read the Disclosure Statement and the Plan in their entirety before voting to accept or reject the Plan.

The summary of the Plan and the statements made in the Disclosure Statement about the Plan are qualified in their entirety by reference to the Plan (which accompanies the Disclosure Statement as **Exhibit A**).[2]

The Plan is premised upon Erbo completing construction of the Property and marketing and selling the Property either vacant or leased no later than 24 months from the Effective Date. From the Sale Proceeds, all holders of Allowed Claims asserted against any of the Debtors, shall be paid the full amount of their Allowed Claims (unless agreed otherwise) plus applicable post-Confirmation interest as further detailed in the Plan. The Plan is also premised on the substantive consolidation of Erbo's Chapter 11 estate with the estates of Kova and Gold Mezz. In short,

---

[2] Capitalized terms not otherwise defined in the Disclosure Statement have the meanings assigned to them in the Plan.

089896\1\170215790.v3

regardless of which of the Debtors, a particular Creditor may hold a Claim against, all assets of the Debtors shall be pooled, and holders of Allowed Claims shall be paid from the Sale Proceeds.

By Order dated June ___, 2023, the Bankruptcy Court approved the Disclosure Statement as containing "adequate information" of a kind and in sufficient detail to enable creditors to make an informed decision about the Plan.  The Bankruptcy Court's approval of the Disclosure Statement, however, does not constitute a recommendation by the Bankruptcy Court either for or against the Plan.

No statements or information concerning the Plan have been authorized by the Bankruptcy Court, other than the statements and information set forth in the Disclosure Statement.

The Bankruptcy Court has scheduled a hearing to consider Confirmation of the Plan for **July __, 2023 at 10:00 a.m.** The Confirmation Hearing will be held via Zoom Government at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, NY 10004-1408. The Confirmation Hearing may be adjourned from time to time without further notice other than by announcement in Bankruptcy Court on the scheduled date of such hearing or on the electronic case docket.  At the Confirmation Hearing, the Bankruptcy Court will consider whether the Plan satisfies the various requirements of the Bankruptcy Code.   The Bankruptcy Court will also receive and consider a ballot report prepared by the Debtors concerning the votes for acceptance or rejection of the Plan by the parties entitled to vote.

**No representations concerning the Debtors, the Plan, or the Debtors' Property are authorized by the Debtors other than as set forth in this Disclosure Statement.  Any representations or inducements made to secure your acceptance, which are other than as contained in the Disclosure Statement, should not be relied upon by you in casting your vote with respect to the Plan.**

089896\1\170215790.v3

**THE DEBTORSS BELIEVE THE PLAN PROVIDES THE GREATEST AND EARLIEST POSSIBLE RECOVERIES TO ALL CREDITORS UNDER THE CIRCUMSTANCES. THE DEBTORSS BELIEVE ACCEPTANCE OF THE PLAN IS IN THE BEST INTEREST OF EACH AND EVERY CLASS OF CREDITORS AND RECOMMENDS THAT YOU VOTE TO ACCEPT THE PLAN.**

The Disclosure Statement is based upon information available to the Debtors as of May 15, 2023 and does not reflect events that may occur subsequent to that date which may have a material impact on the information contained in the Disclosure Statement. The Debtors will not supplement or amend the Disclosure Statement to reflect these events.

THIS DOCUMENT WAS COMPILED FROM INFORMATION OBTAINED BY THE DEBTORSS FROM NUMEROUS SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF THE DEBTORSS' KNOWLEDGE, INFORMATION AND BELIEF.

ALTHOUGH THE DEBTORSS' PROFESSIONAL ADVISORS HAVE ASSISTED IN THE PREPARATION OF THIS DISCLOSURE STATEMENT BASED UPON THE FACTUAL INFORMATION AND ASSUMPTIONS RESPECTING THE FINANCIAL, BUSINESS AND ACCOUNTING DATA PROVIDED BY THE DEBTORS, THE DEBTORSS' PROFESSIONAL ADVISORS HAVE NOT INDEPENDENTLY VERIFIED THE INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT AND MAKE NO REPRESENTATIONS OR WARRANTIES AS TO SUCH INFORMATION. SUCH PROFESSIONAL ADVISORS DO NOT REPRESENT OR WARRANT THAT THIS DISCLOSURE STATEMENT IS COMPLETE OR IS FREE FROM ANY INACCURACY OR OMISSION.

## CAUTIONARY STATEMENT

CERTAIN INFORMATION INCLUDED IN THE DISCLOSURE STATEMENT CONTAINS FORWARD-LOOKING STATEMENTS WITHIN THE MEANING OF THE

3

SECURITIES ACT OF 1933, AS AMENDED, THE SECURITIES EXCHANGE ACT OF 1934, AS AMENDED, AND THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995, AS AMENDED.    SUCH FORWARD-LOOKING INFORMATION IS BASED ON INFORMATION AVAILABLE WHEN SUCH STATEMENTS WERE MADE AND ARE SUBJECT TO RISKS AND UNCERTAINTIES THAT COULD CAUSE ACTUAL RESULTS TO DIFFER MATERIALLY FROM THOSE EXPRESSED IN THE DISCLOSURE STATEMENT.

A.    **Summary of Classification and Treatment**

Detailed elsewhere in this Disclosure Statement is a description of the technical aspects of the classification of Claims, the relative allocations of property to holders of such Claims, the methodology as to how such property is to be distributed, the risks inherent in the proposed Plan, and the applicable bankruptcy and tax consequences of the proposed reorganization.  However, the Debtors believe that a broad overview of what, in the Debtors' opinion, Creditors are likely to receive under the Plan, will be helpful for your consideration of whether you wish to accept or reject the Plan.

The following is a summary of the classification of all Claims under the Plan and the proposed treatment of each such Class under the Plan. This summary is qualified in its entirety by reference to provisions set forth in the Plan.

| CLASS | DESCRIPTION | KIND OF PROPERTY DISTRIBUTED TO CLASS | PROJECTED ULTIMATE DISTRIBUTION AS PERCENTAGE OF ALLOWED CLAIM | VOTING RIGHTS |
|---|---|---|---|---|
| Administrative (unclassified) | a.  Professional Fees and Expenses | Cash | 100% as allowed by the Bankruptcy Court or as agreed between the holder of such Claim and the Reorganized Debtors. | No |
| | b.  Accounts payable and other obligations which arose post-petition | Cash | 100% on the Effective Date or as may be paid in the ordinary course of business. | No |

089896\.1\170215790.v3

| CLASS | DESCRIPTION | KIND OF PROPERTY DISTRIBUTED TO CLASS | PROJECTED ULTIMATE DISTRIBUTION AS PERCENTAGE OF ALLOWED CLAIM | VOTING RIGHTS |
|-------|-------------|---------------------------------------|---------------------------------------------------------------|---------------|
| | c. Goods delivered to the Debtors within the twenty days prior to the Petition Date | Cash | 100% on the Effective Date. | No |
| Class 1 | NYC Secured Tax Claim | Cash | 100% of Allowed Secured Claim, plus statutory interest, shall be paid, in Cash, no later than two (2) years from the Effective Date from the Sale Proceeds. All real estate taxes incurred subsequent to the Effective Date shall be paid when due. | Yes |
| Class 2 | G-4's Secured Claim | Cash | 100% of Allowed Secured Claim plus simple interest at a rate of 7% per annum from the Effective Date until paid. G-4 shall be paid from the Sale Proceeds no later than two (2) years from the Effective Date. No payments shall be made to G-4 between the Effective Date and the Closing of the Sale of the Property. G-4 shall retain its Lien on the Property to the same extent and priority as existed on the Petition Date.<br><br>Any Deficiency Claim held by G-4, in connection with the Allowed G-4 Secured Claim, shall be treated as a Class 6 General Unsecured Claim. | Yes |
| Class 3 | Holders of valid Mechanics Liens against the Property | Cash | All holders of Allowed Claims with valid Mechanics Liens filed against the Property shall be paid 100% of the Allowed Amount of such Claims without interest no later than two (2) years from the Effective Date from the Sale Proceeds. In the event, the Property is determined to have a value less than the combined total of the Class 1 and Class 2 Claims, all holders of Class 3 Claims shall be treated as Class 6 Claims. | Yes |

089896\1\170215790.v3

| CLASS | DESCRIPTION | KIND OF PROPERTY DISTRIBUTED TO CLASS | PROJECTED ULTIMATE DISTRIBUTION AS PERCENTAGE OF ALLOWED CLAIM | VOTING RIGHTS |
|---|---|---|---|---|
| Class 4 | SME Secured Claim | Cash | The Allowed SME Secured Claim shall be paid 100%, in Cash, plus post Effective Date interest at 10% from the Sale Proceeds no later than two (2) years from the Effective Date. No payments shall be made to SME between the Effective Date and the Closing of the Sale of the Property. SME's Lien on KOVA's Equity Interest shall be transferred to a Lien on the Reorganized Debtors' Equity Interest. | Yes |
| Class 5 | Priority Tax Claims | Cash | The Allowed Priority Tax Claims shall be paid 100%, in Cash, no later than two (2) years from the Effective Date with statutory interest. | No |
| Class 6 | General Unsecured Claims | Cash | Allowed Class 6 Claims (including any Deficiency Claim held by G-4 and/or Class 3 Claimholders) shall be paid 100% of their Allowed Claims without interest no later than two (2) years from the Effective Date from the Sale Proceeds. | Yes |
| Class 7 | Equity Interest Holders | Retain Interest | No Distribution unless the Property is sold for a price greater than the amount of all Allowed Claims in Classes 1 through 6. The Equity Interest in the Reorganized Debtors shall be pledged to SME in place of SME's pledge of KOVA's Equity Interest. | No |

## II
## VOTING INSTRUCTIONS AND CONFIRMATION OF PLAN

### A.   Manner of Voting on Plan

Before voting, the Disclosure Statement as well as the Plan should be read in its entirety.

You should only use the ballot sent to you with the Disclosure Statement to cast your vote for or against the Plan.

6

If you hold a Claim in Classes 1, 2, 3, 4 or 6, included in the package of materials forwarded to you along with the Disclosure Statement and the Plan is the enclosed ballot for your acceptance or rejection of the Plan. You should complete, date and sign your ballot and return it to Tarter Krinsky & Drogin LLP, 1350 Broadway, New York, New York 10018, Attn: Scott S. Markowitz, Esq., attorneys for Debtors. All ballots must be received prior to **5:00 P.M. on July ___, 2023**.

## B.    Claim Holders Entitled To Vote

Under the Bankruptcy Code, holders of Claims in Classes that are "impaired" under the Plan are entitled to vote to accept or reject the Plan, unless such Class neither receives nor retains any property under the Plan (in which case such Class is deemed to have rejected the Plan). Bankruptcy Code § 1124 provides generally that a Class is impaired if the legal, equitable or contractual rights of the claims or equity interests in that Class are altered.

Subject to the exceptions provided below, any holder whose Claim is impaired under the Plan is entitled to vote if either (i) its Claim has been scheduled by the Debtors and such Claim was not scheduled as disputed, contingent or unliquidated, or (ii) such Claim holder has filed a proof of Claim which is not a Disputed Claim.

A holder of a Disputed Claim is not entitled to vote on the Plan unless such Claim is temporarily allowed by the Debtors or by an order of the Bankruptcy Court, in an estimated amount which is deemed proper for the purpose of voting to accept or reject the Plan. A Claim to which an objection has been filed by the Debtors, or a Claim (i) which is listed on the Schedules as disputed, unliquidated or contingent, and (ii) with respect to which a superseding proof of claim has not been filed, is not an Allowed Claim for voting purposes, unless the Claim is settled by agreement, or the Bankruptcy Court allows the Claim (in whole or in part) by a Final Order. Upon request of a party-in-interest, the Bankruptcy Court may temporarily allow or estimate a Disputed Claim for the purpose of voting on the Plan. Any Ballot cast in respect of Claims other than

089896\1\170215790.v3

Allowed Claims will not be counted. In addition, a vote may be disregarded if the Bankruptcy Court determines the acceptance or rejection of the Plan by the Creditor who cast such vote has not been solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

**C.      Classes Impaired Under the Plan**

Claim holders in Classes 1, 2, 3, 4 and 6 are impaired under the Plan and are eligible, subject to the limitations set forth above, to vote to accept or reject the Plan.  Classes 5 and 7 are not impaired. Class 5 is not impaired under the Plan because this class consists of Priority Tax Claims, which are required to be treated in accordance with § 1129(a)(9)(C) of the Bankruptcy Code and are statutorily impaired but not entitled to vote. Class 7 is not impaired because the Equity Interests holders shall retain their Equity Interests.

Any controversy as to whether any Claim or Class of Claims is impaired under the Plan shall, after notice of any hearing, be determined by the Bankruptcy Court.

**D.      Vote Required For Class Acceptance**

Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a Class of impaired Claims as acceptance by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of holders of Allowed Claims in that Class who cast ballots.

Section 1126(d) of the Bankruptcy Code defines acceptance of a plan by a Class of Equity Interest Holders as acceptance by holders of at least two-thirds (2/3) in amount of the Allowed Equity Interests of such Class who cast ballots.

### III
### THE DEBTORS AND THEIR OPERATIONS

**A.      The Property**

Erbo is a New York limited liability company and is the fee owner of the Property.

089896\1\170215790.v3

The Property is an eight-story building which was built in 1915. Erbo acquired the Property in 1985 for the primary use of merchandise storage and business operations for Erno's medical supply business.

In 1995, Erbo leased much of the Property to a single tenant who occupied the space until mid-2016. As the real estate market changed in the West Chelsea neighborhood of Manhattan and with the development of the High Line, Erbo after consulting with others, decided to reposition the Property and embark on a project to redevelop the Property into a first-class modern office building. The Property consists of approximately 65,000 sq. ft.

**B.      The G-4 Loan(s)**

In or about March 2019, Erbo borrowed $23,400,000 (the "**Initial Loan**") from G-4.  The Initial Loan was utilized primarily to pay off an existing mortgage on the Property and to fund certain pre-construction expenses related to the Project.

In or about August 2019, G-4 made a building loan to Erbo and an original project loan. The Initial Loan, the building Loan and the original project loan totaled approximately $56 million. These Loans were secured by consolidated mortgage on the Property. The purpose of the building loan and the original project loan was to fund the costs both hard and soft costs of redeveloping the Property. Finally, in or about June 2021, G-4 made an additional project loan to Erbo in the amount of $1,250,000 which was mainly utilized to pay G-4's interest on the Loan.  Erbo believes the total amount advanced on the Loan was approximately $50,500,000.

**C.      The Redevelopment of the Property and the Mezzanine Loan**

In connection with redevelopment of the Property, Erbo was introduced to Peter Cecora and his brother Ray Cecora (collectively, the "**Cecoras**").  The Cecoras represented to Erno they had experience in managing redevelopment of Manhattan buildings and were qualified to see the Project fruition. The Cecoras formed Higher Ground and in or about October 2018, Erbo and

9

Higher Ground signed the DMA. Pursuant to the DMA, the Cecoras agreed to oversee all aspects of the Property's redevelopment for a fee. The Cecoras also assisted Erbo in obtaining the G-4 Loans.

The Cecoras also recommended Erbo hire Cauldwell to act as a construction manager/general contractor for the redevelopment of the Property. Based upon the Cecoras' recommendation, Erbo entered into the CMA with Cauldwell. Pre-construction work including architecture, design and permit applications commenced in or about early 2019 followed by actual construction on the redevelopment of the Property, including demolition, in or about late September 2019 and substantial completion was estimated to be approximately one year from commencement of demolition. Unfortunately, the Project experienced problems virtually from the beginning. These problems included the initial demolition contractor under bidding the job, substantially raising their contract costs and ultimately walking off the job. The condominium building adjacent to the Property took a hard line with respect to allowing access and required substantial payments which Erbo paid mostly out-of-pocket. Cauldwell's initial electrical contractor failed to finish the Project and refused to attend scheduled inspections.

Additionally, in early 2020, the redevelopment was affected by multiple stop work orders and the Covid-19 pandemic. As a result of a variety of factors (which there is little agreement on), G-4 asserted the building loan was out of balance and demanded Erno to make additional equity contributions. The redevelopment suffered additional setbacks and increased costs which were not initially budgeted. As a result, Erbo was unable to complete the redevelopment of the Property on the timeline initially estimated. After some negotiations and Erbo making sizeable unexpected payments to G-4, G-4 extended the maturity date of the Loan.

In mid-2021, Erbo was required to take the additional project loan. With the redevelopment still delayed and substantially overbudget and the approaching extended maturity date of the G-4

089896\1\170215790.v3

Loan, the Cecoras assisted Erbo in securing the Mezzanine Loan. The Mezzanine Loan was divided into two tranches. The first tranche was $2,750,000 which was primarily used to cover interest under the G-4 Loan until up May 2022. The second tranche in the amount of $2,000,000 was earmarked for construction, tenant improvement and the like and to be funded after specific lease-up of the property and issuance of the temporary certificate of occupancy (the "**TCO**").  G-4 further extended the Loan until May 2022.

In or about February 2022, SME advised Erbo that it was willing to provide a $68 million loan to refinance G-4's Loan and finish construction and to stabilize the Property. SME prepared a term sheet and Erbo paid a $50,000 deposit. Unfortunately, SME, for unknown reasons, declined to make the loan. During this time, G-4 withheld certain funding under the building loan and the project loan which caused further delays.

In May 2022, SME permitted Erbo to use a portion of the second tranche of the Mezzanine Loan to mostly cover interest payments to G-4 and G-4 extended the Loan until September 2022. During this time, G-4 was still asserting the building loan and project loan was out of balance and declined to pay requisitions even though there were funds still available under the Loan.

In or about August 2022, Higher Ground and Cauldwell disengaged from the Project just prior to obtaining the TCO.  Other than providing security and temporary heating in order to protect the Property, neither Higher Ground or Cauldwell nor any of the subcontractors retained through Cauldwell or Higher Ground performed any material work after August 2022. SME advised Erbo's owners that it wanted to obtain ownership of Erbo's Equity Interests and fund the completion of the redevelopment and stabilization of the Property.

**D.    The UCC Sale**

In connection with the Mezzanine Loan, Gold Mezz and Kova were created. These two entities had no business operations other than the ownership interests in Erbo. The Mezzanine

Loan was secured by 100% of the Equity Interests in Kova which in turn owns 100% of the Equity Interests in Erbo.

In or about October 2022, SME issued a default letter to Gold Mezz and scheduled a UCC sale for January 16, 2023 (the "**UCC Sale**"). The UCC Sale was postponed until February 14, 2023, to enable the parties to attempt to reach a consensual resolution. When the parties were unable to reach a resolution, Erbo, Gold Mezz and Kova, each filed Chapter 11 petitions on February 13, 2023, which automatically stayed the UCC Sale.

**E.      Value of the Property**

It is extremely difficult in the current environment to value Property. Currently, the market for office buildings in NYC is extremely challenging due to the slow return of office workers. In addition, it is difficult to obtain quality tenants in the current environment without delivering built out space. While the Debtors believe the Property has or will have equity upon completion of construction and stabilization, it is possible the current value of the Property, as is, may not be greater than all of the Secured Claims. Erbo is unaware of any current appraisal of the Property. Pursuant to section 506(a) of the Bankruptcy Code, a Claim is only treated as a Secured Claim if the value of the collateral is greater than the Claim. Any shortfall is considered an Unsecured Claim. As an example, if a lender is owed $10 million secured by a mortgage on a property worth $8 million, the lender holds a Secured Claim for $8 million and Unsecured Claim for $2 million. If Erbo and G-4 are unable to agree upon G-4's treatment under the Plan, the Bankruptcy Court may need to hold a valuation hearing to determine the amount of G-4's Allowed Secured Claim.

089896\1\170215790.v3

# IV
# THE CHAPTER 11 CASES

1.    **The Chapter 11 Filings**

The Debtors' Chapter 11 Cases were filed on February 13, 2023.  They are pending before the Honorable Lisa G. Beckerman, United States Bankruptcy Judge.  On the Petition Date, the Debtors filed the Schedules. Between February 28, 2023, and March 1, 2023, the Debtors filed their Statements of Financial Affairs [ECF Dkt. Nos.: 25, 27 &28]. The Debtors' Chapter 11 cases have been administratively consolidated under Erbo's Chapter 11 case.

2.    **Retention of Debtors' Counsel**

Pursuant to order of the Bankruptcy Court dated March 30, 2023 [ECF Dkt. No. 49], the Debtors retained Tarter Krinsky & Drogin LLP (**"TKD"**) to act as bankruptcy counsel during the Chapter 11 Cases.

3.    **Motion to Reject the DMA and the CMA**

Shortly after the Petition Date, Erbo filed a motion pursuant to section 365(a) of the Bankruptcy Code to reject the DMA and the CMA (the "**Rejection Motion**"). One of the benefits of Chapter 11 is a debtor can reject unfavorable or burdensome contracts which it entered into before the Chapter 11 case and any damages from the rejection are treated as pre-petition Claims. Objections to Erbo's Rejection Motion were filed by SME, G-4 and Higher Ground. On May 10, 2023, the Bankruptcy Court held a five-hour evidentiary hearing on the Rejection Motion. The hearing on the Rejection Motion has been carried out until May 22, 2023. Absent a settlement, the Bankruptcy Court will determine whether Erbo has met its burden (business judgment standard) to reject the CMA and the DMA.

089896\1\170215790.v3

4.    **Motion to Enter into Agreements with Irving and Mabe to Complete Construction of the Property**

In addition to the Rejection Motion, Erbo filed a separate motion for authority to enter into an agreement with Irving and Mabe to essentially replace Higher Ground and Cauldwell to complete the construction to the extent necessary to obtain the TCO. G-4, SME, Cauldwell and Higher Ground filed objections to Erbo's motion to hire Irving and Mabe essentially arguing Irving and Mabe lack the proper qualifications to complete the Project and Erbo should continue to utilize Higher Ground and Cauldwell due to their familiarity with the redevelopment and the relationship with the subcontractors. The Bankruptcy Court conducted an evidentiary hearing on Erbo's motion to retain Irving and Mabe in parallel with the Rejection Motion. The next hearing is scheduled for May 22, 2023. At the conclusion of the hearing, the Bankruptcy Court will determine whether Erbo has articulated sound business judgment in hiring Irving and Mabe.

5.    **Filed and Scheduled Claims**

By order, dated March 23, 2023 (the "**Bar Order**"), the Bankruptcy Court established May 5, 2023 as the last date for the Debtors' Creditors to file a proof of Claim for prepetition Claims (the "**Bar Date**").  In accordance with the Bar Order, the Debtorss' bankruptcy counsel served a copy of the notice of the Bar Date upon all known Creditors and other parties-in-interest.  The Debtorss' management has reviewed the Claims filed by Creditors.

To the extent the Debtors deem it prudent and/or cost effective to object to Claims, the Plan provides the Debtors have thirty (30) days from the Effective Date to file objections to filed Claims. If the Debtors fail to object to a properly filed proof of Claim on or before thirty (30) days from the Effective Date, then such Claim will be deemed Allowed and will be entitled to the Distribution under the Plan applicable to the particular class such Claim is a member of.  Below is a chart listing all filed proofs of claims to date in all three Chapter 11 Cases.

**Erbo:**

| Claim No. | Claimant | Amount | Type |
|---|---|---|---|
| 1 | Consolidated Edison Company of New York Inc. | $303.56 | General Unsecured Claim |
| 2 | New York State Department of Taxation & Finance | $1,039.99 | Secured Claim |
|  |  | $69.91 | Priority Unsecured Claim |
|  |  | $750.00 | General Unsecured Claim |
| 3 | Lilker Associates Consulting Engineers P.C. | $65,670.00 | Secured Claim (Mechanics Lien) |
| 4 | NYC Water Board | $3,533.16 | Secured Claim |
| 5 | Liker Energy Solutions LLC | $2,700.00 | Secured Claim (Mechanics Lien) |
| 6 | Emerald Mechanical Solutions, Inc. | $93,856.71 | Secured Claim (Mechanics Lien) |
| 7 | D.N.A. Controlled Inspections | $40,525.00 | General Unsecured Claim |
| 8 | Internal Revenue Service | $21,600.89 | General Unsecured Claim |
| 9 | United Electric Power | $1,884.99 | General Unsecured Claim |
| 10 | High Concrete Group | $142,762.09 | General Unsecured Claim |
| 11 | BRW Contracting, Inc. | $80,945.50 | Secured Claim (Mechanics Lien) |
| 12 | New York City Dept of Finance | $821,792.61 | Secured Claim (Real Estate Taxes) |
| 13 | Higher Ground 541 LLC | $1,195,315.52 | Secured Claim (Mechanics Lien) |
|  |  | $619,714.05 | General Unsecured Claim |
| 14 | The Board of Managers of the 551 West 21st Street | $590,673.76 | General Unsecured Claim |
| 15 | IM Insurance Brokerage Inc. | $25,176.37 | General Unsecured Claim |
| 16 | G4 18190, LLC | $56,787,700.04 | Secured Claim |

089896\1\170215790.v3

| 17 | 541 W 21 SME LLC | $7,582,658.14 | Secured Claim |
| 18-2 | Advanced Facade Inc. | $97,184.32 | General Unsecured Claim |
| 19 | FIRST Insurance Funding | $84,601.44 | Secured Claim |
| 20 | Paul Rachmuth Law Office, PLLC | $60,125.00 | General Unsecured Claim |
| 21 | Eisenberg & Baum, LLP | $27,278.00 | General Unsecured Claim |
| 22 | Cauldwell Wingate Company, LLC | $2,202,185.04 | Secured Claim (Mechanics Lien) |
| | | $69,621.10 | General Unsecured Claim |

**Gold Mezz:**

| Claim No. | Claimant | Amount | Type |
|---|---|---|---|
| 1 | IM Insurance Brokerage Inc. | $25,176.37 | General Unsecured Claim |
| 2 | 541 W 21 SME LLC | $7,582,658.14 | Secured Claim |
| 3 | Paul Rachmuth Law Office, PLLC | $60,125.00 | General Unsecured Claim |
| 4 | Eisenberg & Baum, LLP | $27,278.00 | General Unsecured Claim |

**Kova:**

| Claim No. | Claimant | Amount | Type |
|---|---|---|---|
| 1 | IM Insurance Brokerage Inc. | $25,176.37 | General Unsecured Claim |
| 2 | 541 W 21 SME LLC | $7,582,658.14 | Secured Claim |
| 3 | Paul Rachmuth Law Office, PLLC | $60,125.00 | General Unsecured Claim |
| 4 | Eisenberg & Baum, LLP | $27,278.00 | General Unsecured Claim |

089896\1\170215790.v3

A total of twenty-two (22) Claims were filed prior to the Bar Date against Erbo. Four (4) of the Creditors who filed Claims against Erbo, also filed same Claims against Gold Mezz and Kova. Because Higher Ground and Cauldwell managed the redevelopment of the Property and had regular contact with the various subcontractors, Erbo's Schedules listed all potential Creditors as unliquidated and/or disputed. Erbo is in the process of reviewing all of the filed Claims.  Absent a settlement, Erbo intends to file objections to several of the filed Claims including Cauldwell's Claim, Higher Ground's Claim and Claim No. 14 filed by the Board of Managers 551 West 21st Street Condominium.  In addition, Cauldwell's Claim includes monies owed to subcontractors Cauldwell contracted with. Erbo believes several of the Claims filed by subcontractors are either duplicative of the Claims asserted by Cauldwell or inflated. Erbo intends to attempt to reach a consensual resolution of the Disputed Claims.

**V**
## SUMMARY OF THE PLAN

The Debtors submit the treatment of Creditors under the Plan is more favorable than the treatment Creditors would receive if the Chapter 11 Cases were converted to Chapter 7. Therefore, the Debtors submit the Plan is in the best interests of the Creditors and the Debtors and recommends acceptance of the Plan by holders of Claims in Classes 1, 2, 3, 4 and 6.

**THE SUMMARY OF THE PLAN SET FORTH BELOW IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PROVISIONS SET FORTH IN THE PLAN, THE TERMS OF WHICH CONTROL.**

A. **General**

1. **Brief Explanation of Chapter 11**

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor can reorganize its business for the benefit of itself, its creditors and its equity interest holders.

089896\1\170215790.v3

Upon the filing of a petition for reorganization under Chapter 11 and during the pendency of the bankruptcy case, the Bankruptcy Code imposes an automatic stay of all attempts to collect on claims against the debtors and to enforce liens against the debtors' property.

Confirmation and consummation of a plan is the principal objective of a Chapter 11 reorganization. A plan, in general, divides the claims and equity interests into separate "classes" and allocates distributions of property (usually cash) among those classes.

An important concept, in connection with a plan, is whether a class is "impaired" or "unimpaired." If the legal, equitable and contractual rights of a class are unaffected by the Plan, such class is considered "unimpaired." If a class is unimpaired, it is deemed to have <u>accepted</u> the Plan. Therefore, there is no need for it to actually vote.

On the other hand, any class of claims or equity interests that does not receive or retain <u>any</u> property under the Plan, is deemed to have <u>rejected</u> the Plan, pursuant to Bankruptcy Code §1126(g). All other Classes of Claims and Equity Interests are considered "impaired" and are entitled to vote on the Plan.

Under the Bankruptcy Code, acceptance of the Plan is determined by Class; therefore, it is not required that each holder of a Claim or Equity Interest in an impaired Class vote in favor of the Plan in order for the Bankruptcy Court to confirm the Plan.

Generally, each impaired Class must vote to accept the Plan.

However, the Bankruptcy Court may confirm the Plan in certain circumstances without the acceptance of all impaired Classes if at least one (1) impaired Class votes to accept the Plan and certain other statutory tests are satisfied. Many of these tests are designed to protect the interests of creditors and equity interest holders who either do not vote or vote to reject the Plan but who will nonetheless be bound by the Plan if it is confirmed by the Bankruptcy Court. A further

explanation of the requirements for confirmation if an Impaired Class rejects the Plan is set forth below.

### 2.      **Acceptance of the Plan**

As a condition to confirmation, Bankruptcy Code § 1129(a) requires that: (a) each impaired Class of Claims or Equity Interests votes to accept the Plan; and (b) the Plan meets the other requirements of § 1129(a).  As explained above, Classes that are unimpaired are deemed to have accepted the Plan, and therefore, are not entitled to vote thereon, and Classes that do not receive or retain any property under the Plan are deemed to have rejected the Plan, and likewise, do not vote.  Accordingly, acceptances of the Plan are being solicited only from those parties who hold Claims or Equity Interests classified in impaired Classes and that are to receive Distributions under the Plan.

An impaired Class of Claims will be deemed to have accepted the Plan if holders of at least two-thirds in dollar amount, and a majority in number, of Claims in such Class who cast timely ballots vote to accept the Plan.  An impaired Class of Equity Interests will be deemed to have accepted the Plan if the Plan is accepted by Equity Interest Holders holding at least two-thirds in dollar amount of the allowed interests in such Class who cast timely ballots vote to accept the Plan.

Holders of Claims who are entitled to vote on the Plan, but who do not timely vote, are not counted.

### 3.      **Classification of Claims and Equity Interests Generally**

Bankruptcy Code § 101(5) defines a Claim as: (a) a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured;" or (b) a "right to an equitable remedy for breach or performance if such breach gives rise to a right to payment, whether or not such right

19

to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured."

Bankruptcy Code § 1123 provides that a plan of reorganization shall designate Classes of Claims against and Equity Interests in a Debtors.  Bankruptcy Code § 1122 further requires that each Class of Claims and Equity Interests contain only Claims or Equity Interests that are "substantially similar" to each other.  The Debtors believe they have classified all Claims and Equity Interests in compliance with the requirements of §§ 1122 and 1123.  However, it is possible that a holder of a Claim or Equity Interest may challenge such classification and the Bankruptcy Court may find that a different classification is required for the Plan to be confirmed.  In such event, the Debtors would, to the extent permitted by the Bankruptcy Court, modify the classifications in the Plan as required and use the acceptances received in this solicitation for the purpose of obtaining the approval of a Class or Classes of which the accepting holder is ultimately deemed to be a member.  Any such reclassification could adversely affect the Class of which such holder was initially a member, or any other Class under the Plan, by changing the composition of such Class and the vote required of that Class for approval of the Plan.  Furthermore, a reclassification of Claims or Equity Interests may necessitate a re-solicitation of votes.

**B.**      **Classification and Treatment of Claims and Equity Interests Under the Plan**

The following describes the classification of Claims and Equity Interests under the Plan and the treatment that holders of Allowed Claims and Allowed Equity Interests are to receive if the Plan is confirmed and becomes effective.  A Claim or Equity Interest is classified in a particular Class only to the extent the Claim or Equity Interest fits within the description of that Class and is classified in a different Class to the extent that any remainder of the Claim or Equity Interest fits within the description of such different Class.

089896\1\170215790.v3

As a general rule, Secured Claims are classified in separate Classes based upon the priority of their security interest in a Debtors' assets.[3]  However, to the extent the underlying collateral securing a Secured Claim is determined to have a value less than the amount of the Secured Claim, such claimant is considered to be "undersecured" and may hold both a Secured Claim and an Unsecured Claim.

Accordingly, if the value of the Property is determined to be less than the amount of G-4's Allowed Secured Claim, after deducting the City of New York's senior Lien, then G-4 will hold a Secured Claim in the amount of the value of the underlying collateral (the Property) less the amount of the senior lien of the City of New York and an Unsecured Claim for the balance.

### 1.   **Unclassified Claims**

Administrative Claims for statutory fees due to the United States Trustee are not classified for voting purposes but will receive the following treatment under the Plan.

(a)  <u>United States Trustee Fees</u>.  All fees payable by the Debtors under § 1930 of Title 28 of the United States Code that have not been paid prior to the Effective Date shall be paid by the Debtors on the Effective Date.  In addition, the Debtors, or any successor thereto by merger, consolidation or otherwise, on or after the Effective Date, shall be liable for, and the Reorganized Debtors shall pay, such fees until the entry of a final decree in this case or until the case is converted or dismissed.  The Reorganized Debtors shall file post-confirmation operating reports with the Bankruptcy Court and the United States Trustee until a final decree is entered.

(b)  <u>Administrative Claims</u>.  An "Administrative Claim" is a Claim for payment of an administrative expense of a kind specified in Bankruptcy Code § 503(b) and referred to in Bankruptcy Code § 507(a)(2), including the actual and necessary costs and expenses of preserving the estate or operating the Debtors' business after the commencement of the Chapter 11 cases,

---

[3] Here, Erbo has classified all holders of the filed Mechanics Liens in the same Class regardless of the date filed.

loans and advances made to the Debtors after the Petition Date, compensation for legal and other professional services and reimbursement of expenses awarded or allowed under Bankruptcy Code § 330(a) or § 331, certain retiree benefits (if applicable), certain reclamation claims arising under Bankruptcy Code § 503(b)(9) , and all fees and charges against the estate pursuant to Chapter 123 of Title 28 of the United States Code.

The Plan provides that each holder of an Allowed Administrative Claim (including, without limitation, the professionals' fees and expenses incurred by the Professional Persons) allowed in a Final Order of the Bankruptcy Court, and claims allowed pursuant to Bankruptcy Code § 503(b)(9), shall be paid, in cash, in full, by the Debtors (a) upon the later of the Effective Date or the date upon which the Bankruptcy Court enters a Final Order allowing such Administrative Expense Claim or (b) upon such other terms as may exist in accordance with the ordinary course of business of the Debtors or (c) upon such less favorable terms as may be agreed between any holder of such Administrative Expense Claim and the Reorganized Debtors.  The Plan further provides that holders of Administrative Claims, including Professional Persons holding Claims for services rendered during the Chapter 11 case, must file requests for payment within forty-five (45) days after the Confirmation Date.

The Debtors estimates the aggregate amounts due to Professional Persons shall total approximately $250,000 and shall consist of the professional fees of Debtors' counsel, TKD.

Administrative Claims representing obligations incurred by the Debtors after the date and time of the entry of the Confirmation Order may be paid by the Reorganized Debtors in the ordinary course of business without further Bankruptcy Court approval, including the reasonable fees and expenses of Professional Persons, in connection with the implementation and consummation of the Plan, the claims reconciliation process, and any other matters as to which such Professionals may be engaged.  If the Reorganized Debtors dispute the reasonableness of any

invoice and such dispute cannot be resolved by the parties, the dispute shall be submitted to the Bankruptcy Court.

**2.**      <u>**Class 1 – NYC Secured Tax Claim**</u>

Class 1 consists of the Allowed NYC Secured Tax Claim. The City of New York filed a proof of claim for $821,792.61, as a Secured Claim, designated Claim No. 12-1. Erbo has filed tax protest and hopes to receive some relief from NYC.

The Allowed NYC Secured Tax Claim plus statutory interest pursuant to section 511 of the Bankruptcy Code, shall be paid, in Cash, no later than two (2) years from the Effective Date from the Sale Proceeds.

Class 1 is impaired and is entitled to vote for or against the Plan.

**3.**      <u>**Class 2 – G-4 Secured Claim**</u>

Class 2 consists of the Allowed G-4 Secured Claim. G-4 filed a proof of claim in the amount of $56,787,700.04, as a Secured Claim, designated as Claim No. 16-1. Erbo disputes portions of G-4's filed Claim for variety of reasons including the fact SME has been paying interest to G-4 and G-4 is asserting default interest and other fees. In addition, Erbo believes it has claims against G-4 based upon its failure to fund the Loan when money was still available under the Loan.

The Plan provides G-4 shall be paid 100% of the Allowed G-4 Secured Claim, plus simple interest at a rate of 7% per annum from the Effective Date until G-4's Class 2 Claim is fully paid.

G-4's Allowed Class 2 Claim shall be paid from the Sale Proceeds no later than two (2) years from the Effective Date. No payments shall be made to G-4 between the Effective Date and the Closing of the Sale of the Property. G-4 shall retain its Lien on the Property to the same extent and priority as existed on the Petition Date. Any Deficiency Claim held by G-4, in connection with the Allowed G-4 Secured Claim, shall be treated as a Class 6 General Unsecured Claim.

089896\1\170215790.v3

If the Debtors and G-4 are unable to agree to the amount of G-4 Allowed Secured Claim and the value of the Property, the Bankruptcy Court will determine the value of the Property and the amount of G-4's Allowed Class 2 Secured Claim.

Class 2 is impaired, and G-4 may vote to accept or reject the Plan.

4.    **Class 3 – Holders of Valid Mechanics Liens Against the Property**

Class 3 consists of the Holders of valid Mechanics Liens against the Property. All Holders of Allowed Class 3 Claims with a valid Mechanics Lien filed against the Property shall be paid 100% of the Allowed Amount of such Claims without interest no later than two (2) years from the Effective Date from the Sale Proceeds. In the event, the Property is determined to have a value less than the combined total of the Class 1 and Class 2 Claims, all Holders of Class 3 Claims shall be treated as Class 6 Claims.

Class 3 is impaired and is entitled to vote for or against the Plan.

5.    **Class 4 - SME Secured Claim**

Class 4 consists of the Allowed SME Secured Claim. SME filed a proof of claim in the amount of $7,582,658.14, as a Secured Claim against Erbo designated as Claim No. 17-1 as well as Claim No. 2-1 against Gold Mezz and Claim No. 2-1 against Kova.  The Debtors dispute portions of SME's filed proof of claim. Additionally, SME has failed to provide proof of its protective advances to G-4.

The Allowed SME Secured Claim shall be paid 100%, in Cash, plus post Effective Date interest at 10% until the Class 4 Claim is paid from the Sale Proceeds no later than two (2) years from the Effective Date. No payments shall be made to SME between the Effective Date and the Closing of the Sale of the Property. SME's Lien on KOVA's Equity Interest shall be transferred to a Lien on the Reorganized Debtors' Equity Interests.

Class 4 is impaired and is entitled to vote for or against the Plan.

6.    **Class 5 - Priority Tax Claims**

Class 5 consists of Allowed Priority Tax Claims. The New York State Department of Taxation and Finance filed a proof of claim in the amount of $69.91 designated as Claim No. 2-1.

Each holder of an Allowed Priority Tax Claim shall be paid 100%, in Cash, with interest at the statutory rate, pursuant to Bankruptcy Code § 1129(a)(9)(C), in equal monthly payments, no later than two (2) years from the Effective Date.

The holder of an Allowed Priority Tax Claim shall not be entitled to receive any payment on account of interest, or on account of any penalty arising with respect to or in connection with the Allowed Priority Tax Claim, except to the extent allowed as a part of an Allowed Priority Tax Claim pursuant to § 507(a)(2) of the Bankruptcy Code.

Class 5 is not impaired under the Plan and is deemed to have voted in favor of the Plan.

7.    **Class 6 – General Unsecured Claims**

Class 6 consists of the holders of Allowed Unsecured Claims.

Allowed Class 6 Claims (including any Deficiency Claim held by G-4 and/or Holders of Class 3 Claims) shall be paid 100% of their Allowed Claims without interest no later than two (2) years from the Effective Date from the Sale Proceeds.

The Debtors project the amount of Allowed Class 6 - General Unsecured Claims will be approximately $2 million excluding any Deficiency Claims.

8.    **Class 7 – Equity Interests**

Class 7 – Erbo's sole Equity Interest Holder is Kova. Kova's sole Equity Interest Holder is Gold Mezz. Gold Mezz is owned by the Bodek Family.  There will be no Distribution to any of the Equity Interests Holders unless the Property is sold for a price greater than the amount of all Allowed Claims in Classes 1 through 6. The Equity Interests in the Reorganized Debtors (as

substantively consolidated) shall be pledged to SME in place of SME's pledge of Kova's Equity Interest.

## C.    **Condition to and Means for Consummation of the Plan**

### 1.    **Condition Precedent to Occurrence of the Effective Date**

The Effective Date will occur immediately after the Confirmation Order shall become a Final Order.

### 2.    **Funding of the Plan**

The Plan will be funded primarily via the Sale of the Property. Pending the Sale of the Property, the Bodek Family shall either contribute the monies necessary to pay for the remaining construction costs and carrying costs on the Property pending the stabilization and Sale or seek to obtain exit financing in the nature of debtor-in-possession loan to fund these costs.

### 3.    **Sale of the Property**

Pursuant to § 1123(a)(5)(D) of the Bankruptcy Code, the Reorganized Debtors shall list the Property for Sale after obtaining the partial TCO. The Property will be sold either leased or vacant depending upon market feedback. The Reorganized Debtors intend to retain SVN| Angelic, as a broker to market and sell the Property. There will be no transfer taxes owed on any transaction in connection with or in contemplation of the Plan, including the Sale of the Property to the fullest extent permitted by § 1146(a) of the Bankruptcy Code.  This includes any New York City Real Property Transfer Tax or New York State Real Estate Transfer Tax which may be triggered by the Sale of the Property, as well as any recording tax imposed under Article 11 of the New York State Tax Law or any similar law triggered by the purchaser placing a mortgage on the Property at the closing to fund the purchase of the Property.

089896\1\170215790.v3

4.      **Substantive Consolidation**

The Plan contemplates and is predicated upon entry of a final order of the Bankruptcy Court providing for the substantive consolidation of all three Debtors. On the Effective Date, all three Debtors shall be substantively consolidated. Case law has approved, under certain circumstances, the consolidation of Chapter 11 Debtor entities.  As a result of the substantive consolidation: (i) all inter-company claims will be charged off, written off, or otherwise extinguished; (ii) all assets and liabilities of Erbo, Kova and Gold Mezz will be merged or treated as though they were merged; and (iii) any obligation of Erbo, Kova and Gold Mezz will be deemed to be obligations of the substantive consolidated estates.

D.      **Objections to Claims**

The Plan provides that all objections to Claims shall be filed by the Debtors and served on the holders of such Claims within thirty (30) days after the Confirmation Date. If no objection to a proof of Claim has been filed by the applicable date, the Claim to which the proof of Claim relates shall be treated as an Allowed Claim for purposes of distributions under the Plan.

E.      **Resolution of Disputed Claims**

The Plan provides that Disputed Claims may be divided into two (2) portions: the "non-disputed portion" and the "disputed portion."  The Reorganized Debtors shall pay the non-disputed portion of a Disputed Claim in accordance with the Plan provisions for payment of a Claim in its Class.

F.      **Estimation**

The Debtors may request the Bankruptcy Court estimate any contingent, unliquidated or Disputed Claim, pursuant to Bankruptcy Code § 502(c).

089896\1\170215790.v3

### G.   Allowance of Disputed Claims

The Plan provides that if, on or after the Effective Date, any Disputed Claim becomes an Allowed Claim, the Disbursing Agent shall, within thirty (30) days after the date on which the Claim becomes an Allowed Claim, or as soon thereafter as is practicable, pay to the holder of such Allowed Claim the amount of Cash that such holder would have been entitled to receive under the Plan if such disputed portion of such Claim had been an Allowed Claim on the Effective Date. Notwithstanding anything to the contrary contained in the Plan, the Disbursing Agent shall make a Distribution on the non-disputed portion of an Unsecured Claim in accordance with the provisions of the Plan.

### H.   Vesting of Property

As of the Effective Date, all assets of the Debtors shall vest in the Reorganized Debtors, free and clear of all Liens, Claims and Interests, except for the NYC Tax Lien, the G-4 Loan, the Mezzanine Loan and Holders of Class 3 Allowed Claims.

### I.   Certain Other Provisions of The Plan

The Plan contains other provisions consistent with the requirements of Chapter 11 of the Bankruptcy Code, including provisions for the Distribution of Cash and the collection and disposition of assets of the Debtors' Estates.

#### 1.   Discharge of all Claims

Except as otherwise provided by the Plan, pursuant to § 1141 of the Bankruptcy Code, the Confirmation Order shall act as a discharge of all Claims that arose prior to the Confirmation Date.

#### 2.   Injunction and Stays

Except as otherwise expressly provided herein and related documents, all persons or entities who have held, hold or may hold claims against the Debtors are, with respect to any such Claims, permanently enjoined on and after the Confirmation Date from: (a) commencing,

089896\1\170215790.v3

conducting or continuing in any manner directly or indirectly, any suit, action or other proceeding of any kind (including without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors or the Reorganized Debtors, any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor-in-interest to, any of the foregoing persons or entities, (b) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means, whether directly or indirectly, of any judgment, award, decree or order against the Debtors or the Reorganized Debtors, any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor-in-interest to, any of the foregoing persons or entity, or any property of any such transferee or successor, (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance or lien of any kind against the Debtors or the Reorganized Debtors, any of their property, or any direct or indirect transferee of any property of, or successor-in-interest to, any of the foregoing persons or entities, and (d) asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation due the Debtors or the Reorganized Debtors, any of their property, or any direct or indirect transferee of any property of, or successor-in-interest to, any of the foregoing persons or entities.

### 3.    <u>Exculpation</u>

To the extent permitted under 11 U.S.C. § 1125(e), neither the Debtors nor any of their respective officers, directors, employees and other agents, financial advisors, attorneys, and accountants shall have any liability to any holder of any Claim or Equity Interest for any act or omission in connection with or arising out of the negotiation, preparation, and pursuit of confirmation of the Plan, the consummation of the Plan, the administration of the Plan, the Chapter 11 Cases, or the property to be distributed under the Plan, except for liability based upon willful misconduct or gross negligence as determined by the Bankruptcy Court.  For the avoidance of

089896\1\170215790.v3

doubt, nothing in the Plan shall limit the liability of attorneys to their respective clients pursuant to Rule 1.8(h) of the New York Rules of Professional Conduct.

### 4.    **Causes of Action**

Except as otherwise provided herein or in any contract, instrument, release or other agreement entered into in connection with the Plan, the Reorganized Debtors shall retain, and may, with its determination of the best interest of the estate, enforce any claims, rights and causes of action that have been or may be commenced by the Debtors including, but not limited to, those arising under §§ 544 through 550 of the Bankruptcy Code.

The Debtors have performed a preliminary analysis of possible clawback claims, including voidable preferential transfers, and has concluded that there were no payments made within 90 days of the Petition Date that the Debtors should seek to avoid and recover.  The Debtors are not aware of any potential fraudulent transfers of the Debtors' property prior to the Petition Date.

Erbo believes it holds valid claims and/or offsets against Cauldwell and Higher Ground based upon the substantial cost overruns and delay in completing the redevelopment of the Property. Erbo will attempt to reach a global resolution of these claims as well as the Allowed Amount of the Claims asserted by Cauldwell and Higher Ground. Erbo retains all rights to assert its claims and/or its counterclaims against Higher Ground and Cauldwell arising from the DMA and the CMA. Similarly, Erbo retains the right to assert claims against G-4 based upon G-4's refusal to fund the full amount of the Loan proceeds. The Debtors also reserve the right to assert Claims and/or offset against SME based upon SME's conduct with respect to issuing February 17, 2022 $68 million refinance proposal when SME knew it did not have $68 million to refinance the Property and Erbo turned down potential refinancing options based upon SME's February 17, 2022 term sheet.

089896\1\170215790.v3

5.    **Disbursing Agent**

The Reorganized Debtors shall act as Disbursing Agent under the Plan.  Erno Bodek shall be in charge of all matters relating to the Distributions required by the Plan. In the event the Disbursing Agent changes prior to the entry of an order of final decree closing the Debtors' Chapter 11 cases, the Bankruptcy Court and the United States Trustee shall be notified in writing of the identity and address of the new Disbursing Agent.

6.    **Payments by Cash**

Payments to be made by the Disbursing Agent pursuant to the Plan shall be made by check drawn on a domestic bank.

7.    **Unclaimed Distributions**

The Plan provides that Distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth on the proofs of Claim filed by such holders unless no Proof of Claim has been filed, in which case then to the address set forth on the Schedules filed with the Bankruptcy Court, unless superseded by a written notice to the Disbursing Agent providing actual knowledge to the Disbursing Agent of a change of address.

The Plan further provides that if any holder's Distribution is returned as undeliverable, no further Distributions to such holder shall be made unless and until the Disbursing Agent is notified in writing of such holder's then current address, at which time all Distributions shall be made to such holder, without interest.

8.    **Executory Contracts and Unexpired Leases**

    (a)    Assumption and Rejection are Generally Subject to Approval of the Bankruptcy Court

The Bankruptcy Code empowers a debtor-in-possession to assume or reject executory contracts and unexpired leases.  As a general matter, an "executory contract" is a contract under which material performance (other than the payment of money) remains due by each party thereto.

089896\1\170215790.v3

If an executory contract is rejected, the non-Debtors party to that contract may file a Claim for damages incurred by reason of the rejection.  In the case of rejection of leases for non-residential real property, resulting damage Claims are subject to certain limitations imposed by the Bankruptcy Code.  If an executory contract or unexpired lease is assumed, the debtor-in-possession is bound to perform its obligations arising thereunder in accordance with the terms of such agreement.

(b)  Assumption of Executory Contracts and Unexpired Real Property Leases

As of the date the Plan is confirmed, unless expressly rejected by the Debtors or a motion to reject its pending, any executory contract or unexpired lease of entered into by the Debtors that has not yet been (a) assumed and assigned, or (b) assumed, shall be deemed to be assumed by the Debtors as of the Confirmation Date.

The Debtors are not aware of any executory contracts that have an unpaid amount of monies owed by the Debtors.  Any counterparty to an executory contract asserting a cure amount must file an objection to confirmation of the Plan and set forth the cure amount.

### 9.    Professional Fees and Expenses

The Plan provides that each of the Professionals requesting compensation in the Chapter 11 Cases shall file an application for an allowance of final compensation and reimbursement of expenses in the Chapter 11 Cases incurred through the Confirmation Date within forty-five (45) days after the Confirmation Order. The only professional retained in this case, to date, is TKD.

### 10.    Retention of Jurisdiction

The Plan provides that, from and after the Confirmation Date and until such time as all payments and Distributions required to be made by the Debtors have been made, the Bankruptcy Court shall retain jurisdiction over the Debtors' Chapter 11 Cases for all purposes permitted under the Code, including, without limitation, the following:

089896\1\170215790.v3

(a)      To hear and determine any dispute relating to the Plan or any property described in the Plan and to enforce its provisions.

(b)      To hear and determine all issues arising out of any motions, applications, adversary proceedings or contested or litigated matters in the Chapter 11 Cases pending at the Confirmation Date or commenced thereafter.

(c)      To order recovery of any assets of the Debtors, whether title is presently held in the name of the Debtors or a third party.

(d)      To hear and determine motions to approve the Sale of the Property of the Debtors under § 1123(a)(5)(D) of the Bankruptcy Code and/or the rejection or assumption of executory contracts under § 365 of the Bankruptcy Code.

(e)      To hear and determine all issues relating to any purchases, sales or contracts made or undertaken by the Debtors during the pendency of the Chapter 11 Cases.

(f)      To hear and determine all objections to Claims and all controversies concerning classification, allowance, valuation, liquidation, estimation, or satisfaction of Claims.

(g)      To make orders allowing amendment of the schedules filed in the Chapter 11 Cases for any purpose including, without limitation, to prosecute objections to Claims not previously listed as disputed, contingent or unliquidated.

(h)      To hear and determine all applications for compensation of professional and similar fees and reimbursement of expenses arising out of or relating to the case or any Claims.

(i)      To hear and determine any and all motions to abandon property of the Debtors' Estates.

(j)      To make such other orders or give such directions as permitted by § 1142 of the Bankruptcy Code.

089896\1\170215790.v3

(k)      To consider and order any modifications or amendments requested to the Plan.

(l)      To remedy any defect or omission or reconcile any inconsistency in the Plan or the Confirmation Order in such manner as may be necessary or desirable to carry out the purposes and intent of the Plan.

(m)      To make all orders necessary or appropriate to carry out the provisions of the Plan.

(n)      To enforce all orders previously entered by the Bankruptcy Court.

(o)      To determine such other matters as may be provided for in the Confirmation Order or as may be authorized under the Bankruptcy Code.

## 11.    Management of the Reorganized Debtors

The Reorganized Debtors will be managed by Erno. The Debtors believe the management of the Reorganized Debtors is consistent with the interests of Creditors and Equity Interest Holders.

## VI
## CONFIRMATION PROCEDURES

For the Plan to be confirmed by the Bankruptcy Court, all of the applicable requirements of Bankruptcy Code § 1129 must be met.  These include, among others, requirements that the Plan: (i) is accepted by all impaired Classes or, if rejected by an impaired Class, "does not discriminate unfairly" and is "fair and equitable" as to each rejecting Class; (ii) is feasible; and (iii) is in the best interests of holders of Claims or Interests in each impaired Class.

## A.    Solicitation of Votes; Acceptance

The Debtors are soliciting the acceptance of the Plan from all holders of Claims in Classes that are impaired under the Plan and receiving Distributions thereunder.

Classes 5 and 7 are not impaired under the Plan.  Since these Classes are unimpaired, they are deemed to have accepted the Plan and therefore not entitled to vote thereon.

089896\1\170215790.v3

Classes 1, 2, 3, 4 and 6 are impaired Classes and are entitled to vote on the Plan.  Classes 1, 2, 3, 4 and 6 will be deemed to have accepted the Plan if the Plan is accepted by holders of at least two thirds in dollar amount and more than one half in number of the Claims in that Class that have cast ballots on the Plan.

A vote may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that such vote was not solicited or procured or made in good faith or in accordance with the applicable provisions of the Bankruptcy Code.

### B.   Confirmation Hearing

Bankruptcy Code § 1128(a) requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of the Plan (the "**Confirmation Hearing**") after the period for submission of Ballots has expired.  The Confirmation Hearing may be postponed from time to time by the Bankruptcy Court without further notice except for an announcement of the postponement made at the Confirmation Hearing.  Bankruptcy Code § 1128(b) provides that any party in interest may object to confirmation of the Plan.  Objections must be made in writing, specifying in detail the name and address of the person or entity objecting, the grounds for the objection and the nature and amount of the Claim held by the objector, and must otherwise comply with the requirements of the Bankruptcy Rules and the Local Bankruptcy Rules.  Objections must be filed with the Clerk of the Bankruptcy Court, with a courtesy copy delivered to the chambers of the Honorable Lisa G. Beckerman, United States Bankruptcy Judge, and served upon the parties so designated in the Order and Notice accompanying the Disclosure Statement on or before the time and date designated in such Order and Notice.  **FAILURE TO TIMELY FILE AND SERVE AN OBJECTION TO CONFIRMATION MAY BE DEEMED BY THE BANKRUPTCY COURT TO BE CONSENT TO CONFIRMATION OF THE PLAN.**

089896\1\170215790.v3

At the Confirmation Hearing, the Bankruptcy Court will determine, among other things, whether the following confirmation requirements specified in Bankruptcy Code § 1129 have been satisfied:

1.      The Plan complies with the applicable provisions of the Bankruptcy Code.

2.      The Debtors have complied with the applicable provisions of the Bankruptcy Code.

3.      The Plan has been proposed in good faith and not by any means proscribed by law.

4.      Any payment made or promised by the Debtors for services or for costs and expenses in, or in connection with, the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to approval of, the Bankruptcy Court as reasonable.

5.      The Debtors have disclosed the identity and affiliations of all individuals proposed to serve, after confirmation, as directors or officers of the Debtors and the appointment to or continuance in such positions by those individuals is consistent with the interests of creditors and Interest holders and with public policy; and (b) the Debtors have disclosed the identities of any insider(s) that will be employed or retained by the Reorganized Debtors and the nature of any proposed compensation for such insider(s).

6.      Each holder of a Claim in an impaired Class either has accepted the Plan or will receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the amount that such entity would receive or retain if the Debtors were liquidated on such date under Chapter 7 of the Bankruptcy Code.  See "Best Interests Test" below.

7.      Unless the Debtors are required to seek nonconsensual confirmation of the Plan, each Class of Claims and Interests has either accepted the Plan or is not impaired under the Plan.

8.      Except to the extent that the holder of a Claim has agreed to different treatment, the Plan provides that: (a) Allowed Administrative Claims will be paid in full on the later of the

Effective Date, or the date the Claim is Allowed; (b) other Priority Claims will be paid in full on the Effective Date; and (c) Priority Tax Claims will receive payment in full plus interest over five (5) years.

9.     At least one impaired Class has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim in such Class.

10.     Confirmation of the Plan is not likely to be followed by the liquidation of or the need for further financial reorganization by the Debtors or the Reorganized Debtors.

### C.     Best Interests Test/Liquidation Analysis

The "best interests of creditors" test requires that the Bankruptcy Court find either that all members of each impaired class have accepted the plan or that each holder of an Allowed Claim or interest of each impaired class of claims or interests will receive or retain under the plan on account of such Claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on such date.

To calculate what holders of Claims would receive if the Debtors were hypothetically liquidated under Chapter 7 of the Bankruptcy Code, the Bankruptcy Court must first determine the dollar amount that would be realized from the liquidation (the **"Chapter 7 Liquidation Fund"**). The Chapter 7 Liquidation Fund would consist of the net proceeds from the disposition of the Debtors' assets (after satisfaction of all valid liens) augmented by the Cash held by the Debtors and recoveries on actions against third parties, if any.

The Chapter 7 Liquidation Fund would then be reduced by the costs of the liquidation. The costs of liquidation under chapter 7 would include the fees and expenses of a trustee, as well as those of counsel and other professionals that might be retained by the trustee, selling expenses, any unpaid expenses incurred by the Debtors during their Chapter 11 cases (such as fees for

attorneys, financial advisors and accountants) which would be allowed in the Chapter 7 proceedings, interest expense on secured debt and Claims incurred by the Debtors during the pendency of the case. These Claims would be paid in full out of the Chapter 7 Liquidation Fund before the balance of the Chapter 7 Liquidation Fund, if any, would be made available to holders of Unsecured Claims.

In addition, other Claims which would arise upon conversion to a Chapter 7 case would dilute the balance of the Chapter 7 Liquidation Fund available to holders of Claims. Moreover, additional claims against the Debtors' estates might arise as the result of the establishment of a new bar date for the filing of claims in a Chapter 7 case for the Debtors. The present value of the distributions out of the Chapter 7 Liquidation Fund (after deducting the amounts described above) are then compared with the present value of the property offered to each of the Classes of Claims and holders of Interests under the Plan to determine if the Plan is in the best interests of each holder of a Claim.

The Debtors believe a Chapter 7 liquidation (*i.e.*, foreclosure sale or sale by trustee) of the Property would result in diminution in the value to be realized under the Plan by holders of Claims. That belief is based upon, among other factors: (a) the additional administrative expenses involved in the appointment of a trustee, attorneys, accountants, and other Chapter 7 professionals; and (b) the substantial time which would elapse before Creditors would receive any distribution in respect of their Claims due to a trustee's need to become familiar with the Chapter 11 cases and the Debtors' books and records, and the trustee's duty to conduct independent investigations. The Debtors' estimated liquidation analysis and the assumptions upon which it is based are annexed hereto as **Exhibit "B"**. As indicated in the Debtors' liquidation analysis, the Debtors believe a liquidation of the Debtors' assets would result in lesser recovery for holders of Class 6 Claims than the Plan provides for.

D.    **Risk Factors**

Certain substantial risk factors are inherent in most Chapter 11 plans which provide for payments over time.  If such plans are accepted, it is usually because it represents a greater hope for return than a dividend in a liquidating Chapter 7 case. Here, there is uncertainty as to the ability to sell the Property for a price sufficient to pay all Allowed Claims. However, the Debtors' management believe the best course is to complete the redevelopment of the Property, stabilize the Property and market the Property in an orderly fashion and not under the constraints of a pending Chapter 11 case.

VII
**"CRAM DOWN"**

The Bankruptcy Code provides a mechanism by which a plan may be confirmed even if it has been rejected by an impaired class of claims.  Under the "cram down" provisions of the Bankruptcy Code (§1129(b)), the proponent of the Plan (in this case the Debtors) may request that it be confirmed despite its rejection by an impaired class, and the Bankruptcy Court will confirm the Plan if it (i) does not discriminate unfairly against a dissenting impaired class, and (ii) is fair and equitable with respect to such class.

The Bankruptcy Code sets forth specific guidelines for determining whether a plan is fair and equitable with respect to a particular class of Claims.  For Unsecured Claims, as are those in Class 6, a plan must provide that Equity Interest Holders do not receive or retain any property on account of their interest.  Therefore, if Class 6 votes to reject the Plan, the Bodek Family would not be able to retain their Equity Interests in the Reorganized Debtors.

For Secured Claims, as are in Class  1, 2, 3, and 4, a plan must provide, *inter alia*, the holders of such Secured Claim retain the Lien securing such Claim to the extent of the Allowed Amount of such Claim and the holder of such Claim receive on account of such Claim of a value, as of the Effective Date of the Plan, of at least the value of such holder's interest in the estate's interest in the property securing the Lien.  In other words, the secured creditor must receive the

present value of the Allowed Amount of its Secured Claim which Allowed Amount is dependent upon the value of the property securing the Claim.

Under the Plan, Claim Holders in Classes 1, 2, 3, and 4 are retaining their Liens and being paid the full amount of their Allowed Secured Claim over-time.  In the event the Bankruptcy Court declines to impose a "cram-down" on the rights of a non-consenting class unless certain modifications are made to the terms and conditions of such non-consenting class treatment under the Plan, the Debtors reserves the right, without re-solicitation, to propose such modification to such non-consenting class treatment and to confirm the Plan.

## VIII
## VOTING INSTRUCTIONS

Creditors should complete and sign the enclosed Ballot and return it to Tarter Krinsky & Drogin LLP, 1350 Broadway, New York, New York 10018, Attn: Scott S. Markowitz, Esq., attorneys for Debtors.  A ballot is enclosed with each copy of the Disclosure Statement being sent to all holders of Impaired Claims that filed proof of Claims or were scheduled by the Debtors.  Ballots must be received on or before 5:00 p.m. Eastern Daylight Time on **July ___, 2023**.

If a ballot is damaged or lost, or if you have any questions concerning any voting procedures, you may contact Tarter Krinsky & Drogin LLP, 1350 Broadway, New York, New York 10018, Attn: Scott S. Markowitz, Esq., (212) 216-8000

## IX
## CERTAIN FEDERAL INCOME TAX CONSIDERATIONS

In view of the fact Erbo will retain ownership of the Property, the transactions contemplated by the Plan will have no federal tax consequences to the Debtors.

**CREDITORS AND EQUITY INTEREST HOLDERS ARE ADVISED TO CONSULT WITH THEIR OWN TAX ADVISORS REGARDING THE TAX CONSEQUENCES TO THEM AND TO THE DEBTORS OF THE TRANSACTIONS**

CONTEMPLATED BY THE PLAN, INCLUDING FEDERAL, STATE, LOCAL AND
FOREIGN TAX CONSEQUENCES.

Since the tax consequences for each creditor will depend to a considerable extent upon its particular situation, the Debtors recommend that each creditor review the entire Plan and the Disclosure Statement to best determine the effect of the Plan on it.

## X
## CONCLUSION

The Debtors believe that confirmation and implementation of the Plan is preferable to any other alternative. Accordingly, the Debtors urge holders of Claims to vote to accept the Plan by so indicating on their Ballots and returning them as specified in the Order and Notice accompanying the Disclosure Statement.

Dated: New York, New York
      May 15, 2023

| | |
|---|---|
| **ERBO PROPERTIES LLC, ET AL.** | **TARTER KRINSKY & DROGIN LLP** |
| *Debtors and Debtors-in-Possession* | *Attorneys for Erbo Properties LLC, Kova 521, LLC and Gold Mezz LLC* |
| | *Debtors and Debtors-in-Possession* |
| | |
| By: __/s/ Erno Bodek_____ | By:___/s/ Scott S. Markowitz_____ |
|     Erno Bodek |     Scott S. Markowitz, Esq. |
|     Manager |     1350 Broadway, 11th Floor |
| |     New York, New York 10022 |
| |     (212) 216-8000 |
| |     smarkowitz@tarterkrinsky.com |