HEARING DATE: JUNE 6, 2023<br>
HEARING TIME: 10:00 A.M.

**TARTER KRINSKY & DROGIN LLP**
*Attorneys for ERBO Properties LLC, KOVA 521, LLC and Gold Mezz LLC*
*Debtors and Debtors-in-Possession*
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
Scott S. Markowitz, Esq.
smarkowitz@tarterkrinsky.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
In re:                                                    :
                                                          :     Chapter 11
                                                          :
ERBO PROPERTIES LLC, et al.[1]                            :     Case No.: 23-10210 (LGB)
                                                          :     (Jointly Administered)
                             Debtors.                     :
---------------------------------------------------------x

### DEBTORS' OBJECTION TO 541 W 21 SME LLC'S SUPPLEMENT TO MOTION FOR AN ORDER TERMINATING THE AUTOMATIC STAY AND RELATED RELIEF

Erbo Properties LLC ("Erbo"), KOVA 521, LLC ("KOVA"), and Gold Mezz LLC ("Gold Mezz", together with Erbo and KOVA, the "Debtors"), the above-captioned debtors and debtors-in-possession, hereby submit this objection (the "Objection") to the supplement to the motion (the "Lift Stay Motion") filed by 541 W 21 SME LLC ("SME") for an order terminating the automatic stay pursuant to 11 U.S.C. § 362 and other related relief [Dkt. No. 89] and respectfully state as follows:

---

[1] The Debtors are ERBO Properties LLC (EIN x9179), Case No.: 23-10210, with a mailing address at 551 Bedford Avenue, Brooklyn, NY 11211; KOVA 521, LLC (EIN x9972), Case No.: 23-10211, with a mailing address at 551 Bedford Avenue, Brooklyn, NY 11211; and Gold Mezz LLC (EIN x4741), Case No.: 23-10212, with a mailing address at 551 Bedford Avenue, Brooklyn, NY 11211.

089896\1\170229593.v1

## PRELIMINARY STATEMENT

1. SME's Lift Stay Motion, as modified by its supplement (the "Supplement"), seeks stay relief based upon § 362(d)(1) and § 362(d)(2) of the Bankruptcy Code. In the Supplement, SME, for the first time, attaches a draft appraisal of the Property.[2] Based upon the newly submitted draft appraisal, which specifically states on page 18, the appraisal is solely for internal business decisions and no other use, SME asserts that as of June 1, 2023, the Property has an "as is" value of $48 million and based upon the amount of G-4's mortgage, all other creditors, including SME, are unsecured pursuant to section 506(b) of the Bankruptcy Code.

2. SME then argues the Debtors' proposed plan of reorganization (the "Plan") is patently unconfirmable for a variety of reasons. The Debtors submit SME's arguments are without merit and for the reasons detailed below, the Plan is not patently unconfirmable and this Court should afford the Debtors a reasonable opportunity to attempt to confirm the Plan. The Debtors have complied with their statutory obligations to timely file the Plan and the Lift Stay Motion should be denied without prejudice, or adjourned pending the hearing on the Debtors' Disclosure Statement.

## OBJECTION TO SUPPLEMENT

3. In the Supplement, SME submits an appraisal from Newmark with a value of the Property on an "as is" basis in the amount of $48 million as of June 1, 2023 (the "Appraisal"). The Appraisal contains a letter dated May 21, 2023 to Eran Silverberg

---

[2] Unless capitalized in this Objection, capitalized terms shall have the meanings ascribed to such terms in the Lift Stay Motion.

which is marked as a draft. In the draft letter, there is a statement entitled *Client Reliance Statement* which states the intended use of the Appraisal, which is solely for internal business decisions and no other use. Similarly, on page 18 of the Appraisal under the heading *Intended Use and Users,* the Appraisal states, "the appraisal is for internal business decisions and no other user may rely on this appraisal report." Based upon the plain language of the Appraisal, the Debtor submits this "Restricted Appraisal Report" (see page 19 of the Appraisal), must be disregarded.

4. Even if this Court was to give some weight to the Appraisal, the Debtors must be given the opportunity to cross-examine the appraisers as the Appraisal is hearsay. SME, based upon the $48 million valuation, now relies upon § 362(d)(2) and argues Gold Mezz does not have any equity in the Pledged Interest because G-4's mortgage exceeds the value of the Property and equity has no value.[3] SME goes on to argue the Property is not necessary for an effective reorganization that is in prospect.

5. Starting on page 8, ¶ 19 of the Supplement, SME argues the Plan is patently unconfirmable for several reasons. The Debtors disagree for the following reasons. The Debtors will address SME's arguments in the order contained in the Supplement.

6. First, SME argues the Plan is patently unconfirmable because of the negative amortization feature. However, SME acknowledges, as it must, that bankruptcy courts have confirmed negative amortization plans. See Great W. Bank v. Sierra Woods Group, 953 F.2d 1174 (9th Cir. 1992); Federal Sav. & Loan Ins. Corp. v. D & F Constr. Inc. (In re D & F Constr. Inc.), 865 F.2d 673 (5th Cir. 1989). SME argues based upon the Appraisal that every creditor including SME is an unsecured creditor. As such, if the

---

[3] It is noteworthy, the Appraisal values the Property at $51,600,000 upon issuance of the TCO.

Appraisal is accurate, neither SME's claim nor G-4's claim has been accruing post-petition interest as generally only over secured creditors are entitled to post-petition interest. SME asserts in ¶ 13 of the Supplement that is owed almost $9 million when the amount of its loan was only $4.5 million. Presumably, SME has been making payments to G-4 but the amount of these payments have not been provided. Eran Silverberg's declaration, submitted with the Supplement, is silent with respect to the payments SME has made or been making to G-4.

7. The Debtor submits the Plan, which provides for the payment of the Allowed SME secured claim from the sale of the Property with an interest rate of 10% from the Effective Date, is fair and equitable and complies with the requirements to confirm a plan over a dissenting secured creditor under §1129(b)(2) of the Bankruptcy Code. It is worth noting, SME asserts that its plan will be similar to the Debtors' Plan in that SME intends to finish all constructions, obtain a temporary certificate of occupancy and stabilize the Property and pay itself from selling the Property once stabilized. Presumably, based upon the Appraisal which estimates the prospective market value of the Property "upon stabilization" (June 1, 2028), will be $83 million, SME believes in the Project and this is why SME is so anxious to take control and wipe out the Debtors' equity holders.

8. SME argues Plan is unconfirmable because there is no evidence to show the Property will be sold at a price sufficient to pay all secured claims. The Debtors are confused by this argument as the Plan is premised upon stabilizing the Property and selling the Property at the appropriate time. Again, the Debtors' Plan is similar to SME's proposed plan, the only difference is who will be entitled to a distribution as an equity interest holder

and who will be in charge of the Debtors. Presumably, SME believes that over a reasonable period of time, it will get paid from selling the Property. Why else would SME continue to pay G-4 when according to SME's own Appraisal, G-4 is not entitled to post-petition interest under § 506(b) of the Bankruptcy Code?

9. SME argues the Plan is patently unconfirmable because it is based upon the substantive consolidation of the Debtors which it claims is improper. SME goes on to state in ¶ 33 of the Supplement that without substantive consolidation, the Plan is patently unconfirmable because Gold Mezz, the mezzanine borrower, cannot satisfy § 1129(a)(10) of the Bankruptcy Code. The Debtors submit SME's argument is flawed. Even if the Debtors are unable to satisfy their burden with regard to substantive consolidation, the Debtors can still satisfy § 1129(a)(10) of the Bankruptcy Code. See, In re Transwest Resort Property, Inc., 881 F.3d, 724 (9th Cir. 2018). In Transwest Resort, the debtors owned two luxury resorts, the Westin La Paloma Resort and Spa in Arizona and the Westin Hilton Head Resort and Spa in South Carolina, each of which had mortgage debt and mezzanine financing like the Debtors have here. The debtors joint Chapter 11 plan did not provide for substantive consolidation but proposed restructuring and extending the term of the mortgage loan and provided no distribution on account of the mezzanine loan and extinguished the mezz debtors' existing ownership in the operating debtors.  At the confirmation hearing, the mortgage lender, who had also acquired the mezzanine loan claims, voted to reject the plan and argued the plan could not be confirmed because the mezz debtors lacked an accepting impaired class. The debtors argued the plan satisfied § 1129(a)(10) because several classes of impaired claims accepted the joint plan. The bankruptcy court confirmed the plan over the lenders' objection which was upheld by the

district court and the Ninth Circuit. The Ninth Circuit held the plain language of section 1129(a)(10) supports the "per plan" approach. Here, the Plan is not patently unconfirmable without substantive consolidation if this Court adopts the "per plan" approach.

10. SME argues the Plan is not feasible because the monies required to maintain the Property, pending the sale, will come from the Bodek family and the Bodek family has not demonstrated the financial wherewithal to maintain the Property, pending stabilization. The Debtors submit this feasibility issue can be addressed at the Disclosure Statement hearing and/or the confirmation hearing. Suffice to say, the Debtors and the Bodek family understand they must demonstrate to the Court feasibility of the Plan including the monies necessary to pay post-petition and post-confirmation real estate taxes pending the sale of the Property.

11. SME argues the Plan cannot be confirmed because current management is incapable of managing the Property, and effectuating the Plan. Here, the Debtors submit the Court should address these arguments at the confirmation hearing. The Debtors recognize SME, as the mezzanine lender, would like to exercise its state law rights and wipe out the Bodek family's equity so it can control the process and potentially earn a substantial windfall from completing the Project and selling the Property. However, the Bankruptcy Code is designed to permit a debtor's equity/management to be given the first shot at confirming a plan which should not be prematurely cutoff based upon arguments such as the creditors are unlikely to vote in favor of the Debtors' Plan.

12. The SME argues, starting on ¶ 39 of the Supplement, the Debtors are unlikely to obtain even one impaired accepting class. SME argues the City of New York, typically, does not vote. However, it is without dispute, the City is an impaired class and

can vote. See Tree of Life Church, 522 B.R. 849; In re K Lunde, LLC, 513 B.R. 587 (Bankr. D. Colo. 2014); In re RAMZ Real Estate Co., LLC, 510 B.R. 712 (Bankr. S.D.N.Y. 2014). In past cases, the City has voted in favor of plans and bankruptcy judges have counted the City's vote for purposes of § 1129(a)(10) of the Bankruptcy Code. See, In re 8315 Fourth Ave. Corp., 172 B.R. 728 (Bkrtcy. E.D.N.Y. 1994). Additionally, the Court should not presume Class 3, the holders of Mechanics Liens, will reject the Plan. In short, the Debtor should be given an opportunity upon approval of the Disclosure Statement to solicit acceptances to the Plan and the Court can address the statutory requirements of § 1129 of the Bankruptcy Code at the confirmation hearing.

13. Finally, SME argues the Plan is unconfirmable because it provides that its lien on the Pledged Interest will be transferred to a lien on the Reorganized Debtors' equity interest. The Debtors disagree as the holder of a secured claim must be treated in accordance with § 1129(b)(2) of the Bankruptcy Code which includes the realization of the indubitable equivalence of its claim. Here, the Plan provides SME with essentially the same collateral it has now, a pledge of the ownership interest in the fee owner of the Property. In the Transwest Resort case (cited above), the Ninth Circuit affirmed confirmation of a plan which provided no distribution to the holder of the mezzanine loan and extinguished the mezz debtor's ownership interest in the operating debtors. The Ninth Circuit specifically commented on the mezz lender's concerns the ruling may jeopardize mezzanine lending which is reliant on maintaining separateness of estates of the mezzanine borrower and the entity it owns. The Ninth Circuit held that it was for the legislature to address these concerns voiced by the mezzanine lender.

14. SME continues to argue the Court should grant the Lift Stay Motion based

upon § 362(d)(1) of the Bankruptcy Code and lack of adequate protection. Commencing on page 20 of the Supplement, SME argues it lacks adequate protection because G-4's senior loan is accruing post-petition at either the default rate or the contract rate. However, if SME's Appraisal is correct, G-4's secured claim is accruing no post-petition interest. There is simply no evidence to demonstrate the Property, which is insured and well-maintained, is declining in value. Erbo has complied with its obligations under § 362(d)(3) of the Bankruptcy Code and has filed the Plan which has a reasonable possibility of being confirmed within a reasonable time. The Disclosure Statement hearing is currently scheduled or June 28, 2023 and the Court can consider these types of arguments at the Disclosure Statement hearing. This Court can always shorten notice with respect to the confirmation hearing.

15. SME continues to argue cause exists to terminate the Debtors' exclusivity. First, the Debtors have filed the Plan within its initial exclusivity period and the Debtors are afforded an additional sixty (60) days to obtain acceptances to the Plan. Second, SME continues to assert that if the Court terminates exclusivity, SME is prepared to proceed immediately with filing its own plan to bring the Project to a close, locate tenants to occupy the Property, maintain responsibility for any required tenants fit-ups, make payments on allowed claims as soon as practicable and explore possibilities of utilizing or selling the Property to realize profits that would be available for distribution to other creditors of the Debtors' estates. See paragraph 50 of the Supplement.

16. This is exactly what the Debtors' Plan provides for. The only issue is who will be in control of the Reorganized Debtors and how will the claims be treated. In short, the Debtors should be given their statutory time to obtain confirmation of the Plan.

**WHEREFORE**, the Debtors respectfully request the Court deny the Lift Stay Motion and grant such other and further relief as this Court deems just and proper.

Dated:  New York, New York
       May 31, 2023

                                              **TARTER KRINSKY & DROGIN LLP**
*Attorneys for Erbo Properties LLC, Kova 521, LLC and Gold Mezz LLC*
*Debtors and Debtors-in-Possession*

By: /s/ Scott S. Markowitz
Scott S. Markowitz, Esq.
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
smarkowitz@tarterkrinsky.com