## Supplemental Agreement

The Seller ERBO Properties LLC and the Purchaser American Environmental Energy, Inc. (AEEI) signed an "Option To Purchase Property" agreement for the transaction of the property at 541 W 21st Street, New York, NY 10011 on November 22, 2022 and stated that the closing date was December 20, 2022 (hereinafter referred to as the "Existing Agreement"). This Existing Agreement is still active until May 20, 2023, which means the closing date has been extended to around May 20, 2023.
The other terms are the same as the Existing Agreement.
The Purchaser is making efforts to close the deal soon.
This Supplemental Agreement constituted a part of the Existing Agreement.
【*This space is left intentionally blank*】

【Signature】

**Seller:** ERBO Properties LLC
Representative Signature: _[signature]_
Name: Enro Bodek
Date: March 14, 2023

**Purchaser:** American Environmental Energy, Inc. (symbol: AEEI)
Representative Signature: _[signature]_
Representative Name: Wenyi Yu
Date: March 14, 2023

## OPTION TO PURCHASE PROPERTY

**THIS OPTION TO PURCHASE PROPERTY** (the "Option") is made effective as of November 22, 2022 (the "Effective Date"), by and between ERBO PROPERTIES LLC, with a principal place of business located at 541 West 21st Street New York, NY 10011 ("Seller") and AMERICAN ENVIRONMENTAL ENERGY, INC., a corporation with a principal place of business located at 637 Oceanside Avenue, Staten Island, NY 10305 (hereinafter referred to as "Purchaser").

### WITNESSETH:

**WHEREAS**, Seller is the owner of that certain property located at 541 West 21st Street, New York, NY 10011 (the "Property"); and

**WHEREAS**, the building on the Property (the "Building") has been under renovation and the balance to the contractors has not paid off; and

**WHEREAS**, Seller has agreed to give Purchaser a non-exclusive option to purchase the Property or the Membership Interests (defined below) upon the terms and conditions set forth herein; and

**NOW, THEREFORE**, in consideration of the mutual promises contained herein, and for other good and valuable consideration, the sufficiency and receipt of which is hereby mutually acknowledged, and intending to be legally bound hereby, the parties agree as follows:

### ARTICLE 1.
### SETTLEMENT TERMS

1.1     Grant of Option. The Seller does hereby grant unto the Purchaser the option to purchase (the "Option") either (A) the Property in its "AS IS" "WHERE IS" condition upon the terms and conditions hereinafter set forth, together with all improvements located thereon, to wit: SEE ATTACHED EXHIBIT "A" FOR DESCRIPTION, or (B) One Hundred Percent (100%) of the membership interests that comprise the Seller (the "Membership Interests") upon the terms and conditions set forth herein.

1.2     Exercise of Option. The Option may be exercised by the Purchaser at any time prior to the earlier of (1) December 10, 2022 or (2) such time as Seller terminates this option in writing to the Purchaser (such earlier date, hereinafter, the "Expiration Date"), by notice in writing to the Seller addressed to the address of the Seller set forth in the first paragraph above. All notices will be deemed delivered to Seller or Purchaser, as applicable, upon deposit in the U.S. Mail certified, return receipt requested addressed to the above address. Upon written notice from Seller terminating the Option (the "Termination Notice"), this Agreement shall immediately terminate and Purchaser shall have no further rights or

1

obligations hereunder. Seller shall not have the right to send the Termination Notice and terminate the Agreement once the Option has been properly exercised and the Option Money has been paid to the Seller, unless Purchaser fails to Close by the Expiration Date. Purchaser agrees that TIME IS OF THE ESSENCE with respect to all dates set forth in this Agreement.

1.3     **Default by Purchaser.** In the event of the failure of the Purchaser to purchase the Property or the Membership Interests after exercising the Option, or in the event of any other default by the Purchaser after the exercise of the Option, all money paid by the Purchaser to the Seller shall be retained by the Seller as liquidated damages and as consideration for the granting of this Option to the Purchaser, this Agreement, and all rights of the Purchaser under this Agreement, shall terminate.

1.4     **Default by Seller.** In the event of a default by Seller under this Agreement of any nature, including, but not limited to, Seller's failure to act in good faith, Seller's failure to cooperate with Purchaser or Seller's failure to provide any information or documents of any kind whatsoever, Purchaser's sole remedy shall be to terminate this Agreement and receive a return of any money paid by the Purchaser to Seller. In no event shall Purchaser have the right to file any lien of any kind against the Property or the Membership Interests and Purchaser hereby waives any right to file any lien.

1.5     **Title.** Within five (5) days of execution of this Agreement, Purchaser shall order a title report covering the Property. The title report shall reflect that marketable fee simple title to the subject property is vested in Seller and that same is insurable by a title company of Purchasers choice. The Property shall be conveyed subject to: (a) Building and zoning regulations, (b) conditions, agreements, restrictions and easements of record, (c) any state of facts an inspection or survey of the Property may show so long as it does not make the title to the Property unmarketable, (d) existing tenancies and (e) unpaid assessments payable after the date of transfer of title. Should said title report reflect any other exceptions to the title unacceptable to Purchaser, Purchaser shall notify the Seller in writing of any defects within ten (10) days (the title review period) and the Seller shall have a reasonable time (but not more than 25 days) in which to make the title good and marketable or insurable, and shall use due diligence in an effort to do so, but shall not be required to spend any money to cure any such exceptions. If after using due diligence the Seller is unable to make the title acceptable to Purchaser within such reasonable time, it shall be the option of the Purchaser either to accept the title in its existing condition with no further obligation on the part of the Seller to correct any defect, or to cancel this Agreement. If this Agreement is thus canceled, all money paid by the Purchaser to the Seller upon the execution of this Agreement or upon any extension shall be returned to the Purchaser, and this Agreement shall terminate without further obligation of either party to the other. If title is acceptable to Purchaser, and Purchaser has exercised the Option, the closing shall occur within five (5) days after expiration of the "title review period". At Closing, Seller shall convey title to Purchaser by Warranty Deed subject only to exceptions as set forth in this Agreement.

1.6      Purchase Price. If Purchaser properly exercises the Option, the amount to be paid by the Purchaser to the Seller for the purchase of the Property or Membership Interests shall be Seventy Seven Million Five Hundred Thousand Dollars ($77,500,000.00) (the "Purchase Price"). The Purchase Price less the Option Money, shall be paid to Seller at the Closing (defined below) in cash in accordance with wiring instructions to be provided by Seller.

1.7      Option Money. Simultaneously with the exercise of the Option, Purchaser shall pay to Seller the sum of Seven Million Dollars ($7,000,000.00) as "Option Money". In the event that Purchaser exercises the Option prior to the Expiration Date and is not in default in any other terms of this Agreement, said Option Money shall apply toward the Purchase Price at closing.

1.8      Expenses of Sale. In the event of Closing, Seller agrees to pay all costs and expenses of the sale including recording fees, and any and other costs attributable to the preparation of the Warranty Deed or Assignment of Membership Interests, and any other closing documents to be delivered by Seller. All other expenses relating to the Property (including, but not limited to, taxes and water and sewer rents) will be apportioned at Closing in accordance with local customs where the Property is located.

1.9      Closing. The exchange of all documents and instruments and funds contemplated by this Agreement (the "Closing") shall occur on or before December 20, 2022 (the "Closing Date"). Closing shall take place at the office of Seller's attorney. If Closing does not take place prior to the Closing Date, this Agreement shall automatically terminate and be null and void, Seller shall return the Deposit and neither party shall have any further rights or remedies hereunder.

1.10     Further Actions. Each party will deliver, or caused to be delivered, to the other party hereto each other document or instrument reasonably required by such other party to be delivered at Closing or thereafter to consummate the transactions contemplated by this Agreement.

1.11     Expenses. The Purchaser shall be solely responsible for any costs incurred in obtaining financing for the transactions contemplated by this Agreement. Purchaser agrees that its ability to obtain financing is not a condition to Closing, and once it exercises the Option, Purchaser's failure to close for any reason (other than due solely to Seller's failure to perform) shall be a default under this Agreement and Seller shall be entitled to all rights and remedies hereunder.

1.12     Brokers. Purchaser represents that Purchaser has not dealt with any broker in connection with this Agreement.

3

## ARTICLE 2.
## REPRESENTATIONS AND WARRANTIES

2.1  Representations and Warranties of Seller. Seller hereby represents and warrants to the Purchaser as follows:

2.1.1  Authorizations, etc. Seller has the capacity and authority to execute and deliver this Agreement, to perform fully Seller's obligations hereunder, and to consummate the transactions contemplated herein and therein.

2.1.2  Ownership. Seller is the owner of the Property.

2.1.3  No Conflicts, etc. The execution, delivery and performance by Seller of this Agreement and the consummation of the transactions contemplated hereby do not and will not (with or without the giving of notice, the lapse of time, or both): conflict with; contravene; result in a violation or breach of; result in a default under; give rise to a right of, acceleration, amendment, cancellation, modification, termination or vesting under any material contract, indenture, loan agreement or note to which Seller is a party or by which Seller or any of Seller's material properties or assets may be bound or affected, except in each case where any such conflict, contravention, violation, breach, etc. would not, individually or in the aggregate, reasonably be expected to prevent, restrict, hinder or delay the consummation of the transactions contemplated by this Agreement.

2.2  Representations and Warranties of the Purchaser. The Purchaser hereby represents and warrants as follows:

2.2.1  Authorizations, etc. The Purchaser has the capacity and authority to execute and deliver this Agreement, to perform fully his obligations hereunder, and to consummate the transactions contemplated herein.

2.2.2  No Conflicts, etc. The execution, delivery and performance by Purchaser of this Agreement and the consummation of the transactions contemplated hereby do not and will not (with or without the giving of notice, the lapse of time, or both): conflict with; contravene; result in a violation or breach of; result in a default under; give rise to a right of, acceleration, amendment, cancellation, modification, termination or vesting under any material contract, indenture, loan agreement or note to which Purchaser are, jointly or severally, a party or by which Defendant or any of Purchaser material properties or assets may be bound or affected, except in each case where any such conflict, contravention, violation, breach, etc. would not, individually or in the aggregate, reasonably be expected to prevent, restrict, hinder or delay the consummation of the transactions contemplated by this Agreement.

# ARTICLE 3.
## MISCELLANEOUS

3.1      Severability. If any provision of this Agreement is inoperative or unenforceable for any reason, such circumstances shall not have the effect of rendering the provision in question inoperative or unenforceable in any other case or circumstance, or of rendering any other provision or provisions herein contained invalid, inoperative, or unenforceable to any extent whatsoever. The invalidity of any one or more phrases, sentences, clauses, sections or subsections of this Agreement shall not affect the remaining portions of this Agreement.

3.2      Notices. All notices and other communications made in connection with this Agreement shall be in writing and shall be deemed to have been duly given if (a) mailed by first-class, registered or certified mail, return receipt requested, postage prepaid, (b) transmitted by hand delivery, or (c) sent by next-day or overnight mail or delivery charges prepaid by a nationally recognized overnight courier. Notices sent by mail shall be deemed given three (3) business days after being deposited in the mail; notice hand delivered shall be deemed given the day of delivery; notices sent by next-day or overnight delivery shall be deemed given the next business day; and notices sent by telecopy shall be deemed given upon confirmation of transmission. All parties shall provide each other with change of address information.

3.3      Entire Agreement. This Agreement constitutes the entire agreement and supersede all prior agreements and understandings, both written and oral, between the parties with respect to the subject matter hereof and thereof. The parties agree that this Agreement may not be recorded.

3.4      Counterparts; Headings. This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall together constitute one and the same instrument. The headings contained in this Agreement are for purposes of convenience only and shall not affect the meaning or interpretation of this Agreement.

3.5      Governing Law, Etc. This Agreement shall be governed in all respects, including as to validity, interpretation and effect, by the laws of the State of New York, without giving effect to the conflict of laws rules thereof.

3.6      Binding Effect; No Third Party Beneficiaries. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their heirs, respective successors and permitted assigns. Nothing in this Agreement shall confer any rights upon any person or entity other than the parties hereto and their respective heirs, successors and permitted assigns.

3.7      Acknowledgments. The parties acknowledge that: (a) they have read, understand, and are knowingly and voluntarily executing this Agreement; and (b) they have been advised to consult with their own attorney and professional advisors prior to executing this Agreement and have, in fact, done so, or by executing this Agreement, hereby waive this right.

5

3.8     Interpretation. The parties hereto acknowledge and agree that (a) each party hereto and its counsel reviewed and negotiated the terms and provisions of this Agreement and have contributed to its revision; (b) the rule of construction to the effect that any ambiguities are resolved against the drafting party shall not be employed in the interpretation of this Agreement; and (c) the terms and provisions of this Agreement shall be construed fairly as to all parties, regardless of which party was generally responsible for the preparation of this Agreement.

3.9     Amendment; Waivers, etc. No amendment, modification or discharge of this Agreement, and no waiver hereunder, shall be valid or binding unless set forth in writing and duly executed by the party against whom enforcement of the amendment, modification, discharge or waiver is sought. Any such waiver shall constitute a waiver only with respect to the specific matter described in such writing and shall in no way impair the rights of the party granting such waiver in any other respect or at any other time. Neither the waiver by any of the parties hereto of a breach of or a default under any of the provisions of this Agreement, nor the failure by any of the parties, on one or more occasions, to enforce any of the provisions of this Agreement or to exercise any right or privilege hereunder, shall be construed as a waiver of any other breach or default of a similar nature, or as a waiver of any of such provisions, rights or privileges hereunder.

3.10    The Seller will pay off all liabilities at closing and the Purchaser will NOT take any liabilities related to the Property, the Building, the renovation, the owner, the ERBO Properties LLC, and all related interests. The Purchase Price covers everything that Purchaser shall be responsible. Exhibit A shall list all liabilities.

**[THE   REMAINDER   OF   THIS   PAGE   INTENTIONALLY   LEFT   BLANK]**

**IN WITNESS WHEREOF**, the parties hereto have duly executed this Agreement in one or more counterparts, each of which shall be deemed an original, as of the Effective Date.

**SELLER:**

**ERBO PROPERTIES LLC**

By: _____
Erno Bodek, Manager


**PURCHASER:**

**AMERICAN ENVIRONMENTAL ENERGY, INC.**

By: _____
Wenyi Yu, President/CEO

7